ORAL ARGUMENT NOT YET SCHEDULED

No. 22-1235 (L), 22-1267

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

SIERRA CLUB and PUBLIC CITIZEN,

*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

_____

CHENIERE CORPUS CHRISTI PIPELINE, L.P. AND CORPUS
CHRISTI LIQUEFACATION, LLC,

*Intervenors for Respondent.*

_____

On Petition for Review of Order of the
Federal Energy Regulatory Commission,
179 FERC ¶ 61,087 (May 6, 2022) & 181 FERC¶ 61,033 (Oct. 14, 2022)

_____

**JOINT APPENDIX**

**VOLUME I OF I**

_____

**COUNSEL LISTED ON INSIDE COVER**

Dated: March 28, 2023

*Attorneys for Sierra Club, Petitioner*:

Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org


*Attorneys for Respondent, FERC:*

Matthew R. Christiansen
General Counsel
Robert H. Solomon
Solicitor
Matthew J. Glover
Attorney for Respondent
Federal Energy Regulatory Commission
Washington, D.C. 20426

*Attorneys for Intervenors, Corpus Christi Liquefaction, LLC and Cheniere Corpus Christi Pipeline, L.P.:*

Janna Romaine Chesno
Cheniere Energy, Inc.
701 8th Street, N.W.
Suite 810
Washington, D.C. 20001
(202) 442-3050

Catherine E. Stetson
Sean Marotta
Michael J. West
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

# TABLE OF CONTENTS

| Record Materials | Record No. | Page No. |
|---|---|---|
| Order Granting Extension of Time Request re Corpus Christi Liquefaction Stage III, LLC et al. under CP18-512 et al. (May 6, 2022) | R34 | JA001 |
| Order on Rehearing re Corpus Christi Liquefaction Stage III, LLC et al. under CP18-512 et al. (October 14, 2022) | R68 | JA014 |
| Corpus Christi Liquefaction Stage III, LLC, et al. submits Request for an Extension of Time to Complete Construction of the Stage 3 Project under CP18-512, et al. (December 7, 2021) | R01 | JA026 |
| Motion to Intervene and Protest of Public Citizen and Sierra Club under CP18-512 et al. (December 29, 2021) | R03 | JA031 |
| Corpus Christi Liquefaction Stage III, LLC submits Monthly Construction Report for the period January 2022 for the Corpus Christi Liquefaction Project under CP18-512 (February 18, 2022) | R06 | JA034 |
| Letter Order Granting Corpus Christi Liquefaction Stage III, LLC's March 2, 2022, supplemented on March 8, 2022, Request to Proceed with Additional Early Works within the Corpus Christi Liquefaction Project etc., under CP18-512 (March 9, 2022) | R11 | JA043 |

| | | |
|---|---|---|
| Corpus Christi Liquefaction Stage III, LLC submits Implementation Plan-B and Request for Authorization to Commence Site Preparation Activities for the Corpus Christi Liquefaction Project under CP18-512 (March 31, 2022) | R13 | JA044 |
| Letter Order granting Corpus Christi Liquefaction Stage III, LLC's 03/31/2022, as supplemented on April 5, 2022 et al., Request to Proceed with Site Preparation Activities described in Implementation Plan B under CP18-512 (April 28, 2022) | R29 | JA071 |
| Public Citizen and Sierra Club submits Request for Rehearing of the May 6, 2022 Order under CP18-512 (June 6, 2022) | R39 | JA073 |
| Corpus Christi Liquefaction, LLC submits Monthly Construction Report for May 2022 under CP18-512 (July 1, 2022) | R48 | JA086 |
| Notice of Denial of Rehearing by Operation of Law and Providing Further Consideration re Corpus Christi Liquefaction Stage III, LLC et al. under CP18-512 (July 7, 2022) | R50 | JA096 |
| Corpus Christi Liquefaction, LLC submits its Monthly Construction Report for August 2022 for the Corpus Christi Liquefaction Stage 3 Project under CP18-512 (September 23, 2022) | R64 | JA097 |

| Material from the FERC Docket Not Included in the Index to Record | FERC Accession No. | Page No. |
|---|---|---|
| Environmental Assessment, Corpus Christi Stage 3 Project, Dkts. CP18-512, CP18-513 (March 29, 2019) | 20190329-3010 | JA108 |
| Order Granting Authorizations Under Sections 3 and 7 of the Natural Gas Act, Dkts. CP18-512, CP18-513, 169 FERC ¶ 61,135 (November 22, 2019) | 20191122-3017 | JA111 |
| Letter Order, Dkt. CP18-512 (January 10, 2020) | 20200110-3016 | JA136 |
| Letter Order, Dkt. CP18-513 (January 17, 2020) | 20200117-3032 | JA138 |
| Letter Order, Dkt. CP18-512 (February 14, 2020) | 20200214-3047 | JA140 |
| Letter Order, Dkt. CP18-513 (December 18, 2020) | 20201218-3039 | JA142 |

**Certificate of Service**

179 FERC ¶ 61,087
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | | |
|---|---|---|
| Corpus Christi Liquefaction Stage III, LLC | Docket Nos. | CP18-512-001 |
| Corpus Christi Liquefaction, LLC | | |
| | | |
| Cheniere Corpus Christi Pipeline, LP | | CP18-513-001 |

ORDER GRANTING EXTENSION OF TIME REQUEST

(Issued May 6, 2022)

1.      On December 7, 2021, Corpus Christi Liquefaction Stage III, LLC (CCL Stage III), Corpus Christi Liquefaction, LLC (Corpus Christi Liquefaction), and Cheniere Corpus Christi Pipeline, LP (Cheniere Pipeline) filed a motion requesting a 31-month extension of time, until June 30, 2027, to construct and place into service the Stage 3 LNG and Pipeline Projects.[1]  The projects were to have been constructed and made available for service by November 22, 2024.  For the reasons discussed below, the extension of time request is granted.

## I.      **Background**

2.      On November 22, 2019, the Commission issued an order authorizing CCL Stage III and Corpus Christi Liquefaction to construct and operate additional facilities for the liquefaction and export of domestically-produced natural gas at Corpus Christi Liquefaction's existing liquefied natural gas (LNG) terminal[2] on the northern shore of

---

[1] CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline December 7, 2021 Request for Extension of Time (Request for Extension of Time).

[2] The Commission authorized the siting, construction, and operation of the LNG terminal in 2014.  *Corpus Christi Liquefaction, LLC*, 149 FERC ¶ 61,283 (2014), *reh'g denied*, 151 FERC ¶ 61,098 (2015).  The LNG terminal began export activities in March 2019.

Corpus Christi Bay in San Patricio and Nueces Counties, Texas (Authorization Order).[3] The project, known as the Stage 3 LNG Project, consists of the addition of seven midscale liquefaction trains and one full containment LNG storage tank. In the same order, the Commission authorized Cheniere Pipeline to construct and operate the Stage 3 Pipeline Project. That project includes the construction of a 21-mile-long, 42-inch-diameter interstate natural gas pipeline, additional compressor units at the existing Sinton Compressor Station, meter stations, and appurtenant facilities to transport 1.5 billion cubic feet per day (Bcf/d) of natural gas bi-directionally between the Stage 3 LNG Project facilities and interconnections with existing pipeline systems.[4] The Authorization Order requires the companies to construct the projects and make them available for service by November 22, 2024.[5]

3.       On December 7, 2021, the companies filed a motion requesting a 31-month extension of time -- until June 30, 2027 -- to complete construction and place the projects into service.[6] Specifically, the companies state the pandemic's adverse effects on global market conditions have impacted CCL Stage III's ability to achieve a final investment decision on the Stage 3 LNG Project.[7] Notwithstanding these concerns, the companies cite to the approximately 6 million tonnes of LNG per annum of long-term contracts recently entered into by Cheniere Energy, Inc. and its affiliates as indicators that, along with prior contracts, commercialization of the project is close to completion.[8] The companies intend to make a positive investment decision and restart construction efforts in 2022.[9]

---

[3] *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC & Cheniere Corpus Christi Pipeline, L.P.*, 169 FERC ¶ 61,135 (2019) (Authorization Order).

[4] *Id.*

[5] *Id.* at ordering para. (B) and (D)(1).

[6] Request for Extension of Time at 2.

[7] *Id.* at 1-2.

[8] *Id.*

[9] After the companies received approval from FERC in early 2020, they conducted preliminary activities on the project site, including road improvements, pile testing, soil stabilization tests, and tests of dewatering techniques, but suspended further activities in March 2020. *Id.* at 2.

## II.     Notice, Interventions, and Comments

### A.     Notice

4.     Notice of the companies' Request for Extension of Time was issued on December 14, 2021, and published in the *Federal Register* on December 21, 2021, with interventions, comments, and protests due on December 29, 2021.[10]  On December 29th, Public Citizen and the Sierra Club (together NGO Parties) filed a joint, timely motion to intervene and comments opposing the extension.

5.     Public Citizen was a party to the underlying proceeding.  Because Sierra Club was not a party to the underlying proceeding, Sierra Club's motion to intervene included a motion to intervene out of time in the underlying docket.  The Commission recently announced in *Adelphia Gateway, LLC*, a revised policy allowing interventions in extension of time proceedings by entities who were not parties to the underlying proceeding.[11]  Accordingly, Sierra Club's argument challenging the Commission's prior policy regarding late interventions is moot, and Sierra Club's and Public Citizen's timely, unopposed motions to intervene are granted by operation of Rule 214 of the Commission's rules of Practice and Procedure.[12]

### B.     Intervention in Extension of Time Proceedings

6.     Public Citizen argues that the intervention policy first specified in *Algonquin Gas Transmission, LLC* (*Algonquin*), requiring parties to an underlying authorization proceeding to intervene again to be a party in an extension of time proceeding, serves no purpose and places an unnecessary burden on existing parties.[13]  It argues that the *Algonquin* intervention policy was announced without supporting legal authority and asks the Commission to clarify that repeated intervention by those granted party status is not required.[14]

---

[10] 86 Fed. Reg. 72,230 (Dec. 21, 2021).

[11] *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030, at P 10 (2022).

[12] 18 C.F.R. § 385.214(c) (2021).

[13] Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments at 2 (citing *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144, at PP 39-40 (2020)).

[14] *Id.*

Document Accession #: 20220506-3076          Filed Date: 05/06/2022

7.     We decline to do so.  As we explained in *Algonquin*, party status in the original docket does not automatically extend to subsequent proceedings concerning the authorized project.[15]  However, the Commission decided in *Algonquin* that public input would help increase transparency and the durability of its orders.  Commission staff was directed to notice all requests for extensions of time to complete construction of facilities authorized under the Natural Gas Act to allow for comment and intervention.[16]  Public Citizen has not shown there was any undue burden in requiring parties to the underlying proceeding here to indicate their continued interest in the extension of time proceeding by moving to intervene.

## III.  Discussion

8.     The completion date specified in a certificate or authorization order provides what the Commission believes—based on the applicant's initial project schedule and the Commission's assessment of circumstances relevant to the specific project—to be a reasonable period of time for the project sponsor to complete construction and make the project available for service.[17]  However, construction deadlines may be extended for good cause.[18]  The Commission generally will grant an extension of time if the movant files for an extension of time within a timeframe during which the environmental findings

---

[15] *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144 at P 38 (citing *Const. Pipeline Co. LLC*, 165 FERC ¶ 61,081, at P 23 (2018) (explaining that Commission regulations do not require an opportunity for notice and comment for extension of time requests)).  *See e.g.*, *Bangor Hydro-Elec. Co.*, 87 FERC ¶ 61,035 (1999) (grant of extension of time is an administrative matter between Commission and licensee; intervention denied and request for rehearing rejected); *Wis. Valley Improvement Co.*, 88 FERC ¶ 61,054 (1999) (motion to intervene and request for rehearing in proceeding granting extension of time for post-license compliance dismissed; proceeding not type in which intervention and rehearing lie); *Felts Mills Energy Partners, L.P.*, 86 FERC ¶ 61,120, *reh'g denied*, 87 FERC ¶ 61,094 (1999) (motions to intervene and requests for rehearing regarding extensions of time generally are not entertained).

[16] *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144 at P 39.

[17] *Const. Pipeline Co., LLC*, 165 FERC ¶ 61,081, at P 9 (2018) (citing *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165, at P 8 (2016)).

[18] 18 C.F.R. § 385.2008(a) (2021) (allowing the relevant decisional authority to extend for good cause the time by which any person is required or allowed to act under any statute rule or order).

Document Accession #: 20220506-3076          Filed Date: 05/06/2022

underlying the Commission's authorization can be expected to remain valid.[19]  Good cause can be shown by a project sponsor demonstrating that it made good faith efforts to meet its deadline but encountered circumstances that prevented it from doing so.[20]

### A.  Good Cause for Granting an Extension of Time

9.    The NGO Parties argue the companies failed to demonstrate good cause for granting an extension of time.[21]  The NGO Parties allege that the companies' delay is market driven rather than a response to the difficulties of the COVID-19 pandemic.[22] They assert that the companies chose to not proceed with construction to wait for natural gas prices to rise.[23]  They argue that market-related setbacks are not the type of unforeseeable barriers worthy of an extension.[24]

10.    The companies explain that good cause exists because the adverse economic and logistical impacts of the COVID-19 pandemic prevented them from making a timely investment decision on the project to meet construction deadlines.[25]  They note that economic conditions are recovering from the COVID-19 pandemic, leading to an improvement in the LNG markets and commercial momentum.[26]  The companies state they are closer to completing the commercialization of the Stage 3 LNG Project as evidenced by the long-term contracts Cheniere Energy and its affiliates already

---

[19] *See Const. Pipeline Co., LLC*, 165 FERC ¶ 61,081 at P 9; 18 C.F.R. § 385.2008(a).

[20] *See, e.g.*, *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at P 15.

[21] Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments at 8.

[22] *Id.* at 9-10.

[23] *Id.* at 9.

[24] *Id.*

[25] Request for Extension of Time at 1.

[26] *Id.* at 2.

executed.[27]  Finally, they explain that an extension is integral to maintaining the project schedule and receiving a positive investment decision.[28]

11.      With respect to the NGO Parties' argument that delay is market driven, as we recently noted in *Delfin LNG LLC*, an extension of time to construct a project may be denied where the record indicates that a project is no longer commercially viable.[29]  A change in commercial viability may constitute a significant change in the circumstances underlying the original public interest findings.[30]  However, the record in this case does not support a finding that the Stage 3 LNG Project is no longer commercially viable.  The companies continue to pursue the project and remain optimistic that the COVID-19 pandemic's impact on LNG market conditions is waning.  We note that since the companies filed the request there has been evidence of an increase in demand for LNG, demonstrated, for example, by the recently announced  partnership with the European Union seeking to ensure additional LNG volumes for the E.U. import market of at least 15 billion cubic meters in 2022, with expectations of increased demand going forward.[31]

12.      As stated above, the Commission will find good cause exists for an extension of time where the certificate holder makes a good faith effort to complete certificated actions within the time allotted but encountered circumstances that prevent it from doing so.  The Commission has previously found good cause exists for an extension of time

---

[27] *Id.*

[28] *Id.*

[29] *See Delfin LNG LLC*, 178 FERC ¶ 61,031, at P 12 (2022) (citing *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149).

[30] *Id.*  The Commission specifies the time period for authorized action as a condition in a certificate to "diminish[] the potential that the public interest might be compromised by significant changes occurring between the issuance of the certificate and commencement of the project."  *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, 62,103 (1996).

[31] *See* Fact Sheet: United States and European Commission Announce Task Force To Reduce Europe's Dependence On Russian Fossil Fuels (March 25, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/25/fact-sheet-united-states-and-european-commission-announce-task-force-to-reduce-europes-dependence-on-russian-fossil-fuels/, 2022 WL 884707.

where a certificate holder requested more time to secure contracts with potential customers.[32]

13.     Here, the companies have made progress in preparing the site for the Stage 3 LNG Project facilities for eventual construction and continues to make efforts to secure long-term contracts.  The companies have demonstrated continued interest in the project and have made a good faith effort to meet the 2024 deadline.  The unforeseeable impacts of the COVID-19 pandemic combined with the companies' continued interest in the project satisfy the Commission's good cause inquiry.

### B.     The Authorization Order's Public Interest Findings Are Still Valid

14.      The NGO Parties assert that the Commission should deny the companies' request for an extension of time because circumstances have changed since the Commission's issuance of the Authorization Order.  They argue that when the Authorization Order was issued, the Commission did not have the mechanisms to measure the significance of the project's greenhouse gas emissions and, thus, refrained from making a determination on the matter. [33]  They assert that in light of the nation's newly adopted emissions standards, the reinstated social cost of carbon protocol, and mitigation efforts such as carbon capture and sequestration, the Commission should assess the project's greenhouse gas emissions and consider whether mitigation efforts are appropriate.[34]  Last, the NGO Parties argue that no federal agency has evaluated whether LNG export-driven price increases are consistent with the public interest.[35]  They suggest that the Commission should consider the Stage 3 LNG Project's upstream impacts on LNG prices and supply before granting an extension.[36]

---

[32] *See, e.g.*, *Delfin LNG LLC*, 178 FERC ¶ 61,031 at PP 22-23 (highlighting attempts to secure long-term offtake agreements as a sign of continued interest in a project and good faith efforts to meet a deadline); Letter Order to LA Storage, LLC, Docket No. CP08-454-000 (issued Nov. 14, 2013) (granting a certificate holder a second extension of time due to changing market conditions and difficulty in finding customers, providing LA Storage six years from the issuance of the certificate to place the project facilities into service).

[33] Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments at 13-16.

[34] *Id.* (citing Executive Order 14,008, 86 Fed. Reg. 7619 (Jan. 27, 2021)).

[35] *Id.* at 19.

[36] *Id.*

15.     The Commission will not consider the NGO Parties' arguments regarding reconsideration of GHGs and the impact on exports on domestic natural gas prices because they seek to re-litigate the issuance of an authorization or certificate order, including whether the Commission properly found the project to be in the public convenience and necessity or public interest.[37]  We include in-service deadlines in our authorization orders to, in part, ensure the information supporting our public convenience and necessity determinations does not go stale with the passage of time. [38]  While we recognize that environmental policy and market conditions are subject to change, extension of time proceedings are not an invitation to re-open the dockets.[39]

16.     Here, the companies request only to change the timing, not the nature, of the project.  Extending the deadline to construct the Stage 3 LNG Project and place it into service within seven and a half years of the original in-service deadline will not undermine the Commission's findings in the Authorization Order that the project is required by the public convenience and necessity and not inconsistent with the public interest.[40]  The facts underlying the Authorization's conclusions have not significantly changed.  Moreover, the Commission has authorized projects and granted extensions

---

[37] *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at P 10.  *See also*, *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144 at P 40 (explaining that the Commission will address arguments relating to whether the applicant has demonstrated there is good cause to grant the extension but will not consider arguments that re-litigate whether the project is in the public convenience and necessity); *see also Transcon. Gas Pipe Line Co., LLC*, 175 FERC ¶ 61,148, at P 18 (2021).

[38] *See, e.g.*, *Mountain Valley Pipeline, LLC*, 173 FERC ¶ 61,026, at P 17 (2020),

[39] *See, e.g.*, *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at P 10 (emphasizing that the Commission will not relitigate whether the Commission properly found the project to be in the public convenience and necessity); *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144 at P 40.

[40] Authorization Order, 169 FERC ¶ 61,135 at P 29 (concluding that, based on the benefits the project will provide and the lack of adverse impacts on other pipelines and their captive customers, and landowners and surrounding communities, the project is consistent with the Certificate Policy Statement); *id.* P 23 (concluding LNG facilities are not inconsistent with the public interest).

Document Accession #: 20220506-3076     Filed Date: 05/06/2022

setting the in-service deadline of four, five, or six years without expressing concerns about the basis for the Authorization Order's findings becoming stale.[41]

### C.      The Authorization Order's Environmental Analysis Regarding Special Status Species Remains Valid

17.     The NGO Parties state that new information regarding the project's impacts on threatened and endangered species render the project's environmental review invalid.[42] They argue that new information about the listing of the Gulf of Mexico Bryde's Whale and the northern oceanic white tip shark requires the Commission to reinitiate consultation under section 7 of the ESA.[43]   The NGO Parties also argue that FERC must conduct a supplemental EIS.[44]

18.     We agree that the information regarding newly listed threatened and endangered species requires consideration and that the ESA regulations[45] require a determination whether the project may have impacts on the newly listed species.  Specifically, if a new species is listed after the Commission's issuance of a certificate and before the completion of project construction, Commission staff will determine whether the project may affect the species.  If the project will not affect the species, the Commission has no further ESA obligation.  If the project may affect the species, the Commission must consult with NMFS or FWS, as appropriate, if the effects are reasonably certain to occur.[46]

---

[41] *See, e.g.*, *Mountain Valley Pipeline, LLC*, 173 FERC ¶ 61,026 (five years to complete pipeline project); *Golden Triangle Storage, Inc.*, 121 FERC ¶ 61,313, at ordering para. (M) (2007) (six years to complete gas storage project).

[42] Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments at 17.

[43] *Id.*

[44] *Id.* at 20.  The NGO Parties state, without further justification, that the Commission should apply the Council on Environmental Quality's proposed NEPA regulations.  *Id.* (citing Council on Environmental Quality, Proposed Rule: National Environ mental Policy Act Implementing Regulations Revisions, 86 Fed. Reg. 55, 757 (Oct. 7, 2021)).

[45] *Endangered and Threatened Wildlife and Plans; Regulations for Interagency Cooperation*, 84 Fed. Reg. 44,976 (Aug. 27, 2019).

[46] 50 C.F.R. § 402.02 (2021).

19.    However, the potential need to re-initiate consultation on newly listed species does not render the environmental analysis stale or trigger the need for a supplemental EIS.[47] A determination as to whether additional NEPA analysis is needed cannot be made prior to determining whether further ESA consultation is required and obtaining the results of such consultation.[48]  Neither of those determinations is germane to our action here on the requested extension of time.  We note that, should it become necessary based on ESA consultation with NMFS, we will supplement our environmental review under NEPA prior to authorizing the companies to commence construction.

20.    Because we find that CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline have demonstrated good cause for the delay, we will grant the request for a 31-month extension to complete construction of the Stage 3 LNG Project.

21.    The Commission on its own motion received and made a part of the record in this proceeding all evidence, including the motion and exhibits thereto, and upon consideration of the record,

<u>The Commission orders</u>:

    Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC, and Cheniere Corpus Christi Pipeline, LP are granted a 31-month extension of time to June 30, 2027, to construct and make available for service the Stage 3 LNG Project as authorized in CP19-512-000 and CP19-513-000.

By the Commission.  Commissioner Danly is concurring with a separate statement
            attached.

( S E A L )




                            Debbie-Anne A. Reese,
                            Deputy Secretary.

---

[47] *See, e.g.*, *Delfin LNG LLC*, 178 FERC ¶ 61,031, at P 14 (2022); *Mountain Valley Pipeline, LLC*, 173 FERC ¶ 61,027, at P 41 (2020) (discussing the effect of continued consultation under section 7 of the ESA and noting that consultation is separate from the processes established under NEPA).

[48] If additional ESA consultation results in proposed new measures with impacts not previously studied or if an amendment is necessary to incorporate new measures, the Commission would supplement its NEPA review.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| Corpus Christi Liquefaction Stage III, LLC | Docket Nos. | CP18-512-001 |
| Corpus Christi Liquefaction, LLC | | |
| | | |
| Cheniere Corpus Christi Pipeline, LP | | CP18-513-001 |

(Issued May 6, 2022)

DANLY, Commissioner, *concurring*:

1.      I concur in today's decision[1] to grant the requested extension of time to construct and place into service the facilities authorized by the Commission in its November 2019 order.[2] I write separately to state that the Commission should exercise caution when inquiring into whether a prior authorization order's public interest findings and environmental analysis remain valid.

2.      Although the Commission's practice of establishing project deadlines in authorization orders is in order to "diminish the potential that the public interest might be compromised by significant changes occurring between issuance of the [authorization order] and commencement of the project,"[3] our inquiry when reviewing a request for extension of time is narrow—it is not an opportunity to revisit the determinations made in certificate proceedings after orders have become final and unappealable.

3.      While I take comfort in the Commission's statement that, "extension of time proceedings are not an invitation to re-open the dockets,"[4] I remain wary. And with good

---

[1] *See Corpus Christi Liquefaction, LLC*, 179 FERC ¶ 61,087 (2022) (Extension of Time Order).

[2] *See Corpus Christi Liquefaction, LLC*, 169 FERC ¶ 61,135 (2019) (Authorization Order).

[3] *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, at 62,103 (1996).

[4] Extension of Time Order, 179 FERC ¶ 61,087 at P 15 (citation omitted); *see also id.* ("The Commission will not consider the NGO Parties' arguments regarding reconsideration of GHGs and the impact on exports on domestic natural gas prices because they seek to re-litigate the issuance of an authorization or certificate order, including whether the Commission properly found the project to be in the public

JA011

Document Accession #: 20220506-3076    Filed Date: 05/06/2022

reason.  Recent Commission orders on extensions of time, some of which I have voted for, have included language that I believe reinforces the Commission's misguided view in *Algonquin Gas Transmission, LLC*,[5] issued in 2021, that it may revisit determinations made in final, unappealable certificate orders.[6]  In that proceeding, in the face of more than 80 years of contrary precedent, the Commission reopened the record of a judicially-final certificate order without even an *attempt* to offer a statutory basis for its action.[7]  Although the Commission has since terminated the proceeding,[8] in doing so it refused to identify the authority that would permit it to reopen a certificate proceeding once final,

---

convenience and necessity or public interest.") (citation omitted).

[5] 174 FERC ¶ 61,126 (2021) (Danly, Comm'r, dissenting).

[6] For example, recently in *Delfin LLG LLC*, the Commission stated, "[i]n *Chestnut Ridge*, we explained that when we act on an application, we rely on information available at that time but that the data that underpin our conclusions on the need for a project, its commercial prospects, and its environmental impacts are subject to change.  As we stated there, 'the validity of our conclusions and environmental mitigation conditions *cannot be sustained indefinitely.*'"  178 FERC ¶ 61,031, at P 12 (2022) (quoting *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, at PP 11, 25 (2012)) (emphasis added).  As I note above the line, I have voted for other orders that have included similar language.  *See, e.g.*, *Transcon. Gas Pipe Line Co.*, 175 FERC ¶ 61,148, at P 17 (2021).  In my concurrence in part and dissent in part in *Delfin LNG LLC*, I explained how that language reinforces the misguided view in *Algonquin Gas Transmission, LLC*.  *See* 178 FERC ¶ 61,031 (Danly, Comm'r, concurring in part and dissenting in part at P 3).

[7] *See Algonquin Gas Transmission, LLC*, 174 FERC ¶ 61,126; *id.* (Danly, Comm'r, dissenting at PP 18, 22); Former Commissioners Mike Naeve, Elizabeth A. Moler, Donald F. Santa, Jr., Pat Wood, III, Nora Mead Brownell, Joseph T. Kelliher, and Suedeen G. Kelly April 12, 2021 Letter to the Commission, Docket No. CP16-9-000, et al., at 1 ("We are troubled by the novel assertion of authority to reconsider a long-since-final certificate order, without any suggestion that the terms of that order were violated, and long after a private company built and placed into service the facilities in question, at a cost of approximately a half billion dollars.  We are unaware of any other instance, in the eight-decade history of the Natural Gas Act, where the Commission has taken such a step.").  *Cf. U.S. v. Seatrain Lines, Inc.*, 329 U.S. 424 (1947) (affirming district court's holding that the Interstate Commerce Commission had exceeded its statutory authority in reopening the proceeding and altering the certificate).

[8] *Algonquin Gas Transmission, LLC*, 178 FERC ¶ 61,029 (2022) (Danly, Comm'r, concurring in part and dissenting in part).

Docket Nos.CP18-512-001, et al.                                           - 3 -

while still leaving the door open to later revisit whether an approved project is still in the public convenience and necessity.[9]

4.      To be clear:  the Commission lacks authority to revisit its public convenience and necessity determinations once the order is final and unappealable.


        For these reasons, I respectfully concur.


_____
James P. Danly
Commissioner

---

[9] *Id.* (Danly, Comm'r, concurring in part and dissenting in part at P 9) ("The majority's refusal to explain the Commission's authority only highlights the obvious fact that it had none.  And instead of acknowledging this plain fact, the majority leaves the door open to revisit whether a project is in the public convenience and necessity at its whim.").

JA013

181 FERC ¶ 61,033
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Corpus Christi Liquefaction Stage III, LLC | Docket Nos.  CP18-512-002 |
| Corpus Christi Liquefaction, LLC | |
| | |
| Cheniere Corpus Christi Pipeline, LP | CP18-513-002 |

ORDER ON REHEARING

(Issued October 14, 2022)

1.      On May 6, 2022, the Commission granted a 31-month extension of time, until June 30, 2027, for Corpus Christi Liquefaction Stage III, LLC (CCL Stage III),[1] Corpus Christi Liquefaction, LLC (Corpus Christi Liquefaction), and Cheniere Corpus Christi Pipeline, LP (Cheniere Pipeline) to construct and place into service the Stage 3 LNG and Pipeline Projects.[2]

2.      On June 6, 2022, Public Citizen and Sierra Club (together, the NGO Parties) filed a timely request for rehearing of the Extension Order.

3.      Pursuant to *Allegheny Defense Project v. FERC*,[3] the rehearing request filed in this proceeding may be deemed denied by operation of law.  However, as permitted by

---

[1] On July 6, 2022, counsel for Corpus Christi Liquefaction notified the Commission that CCL Stage III had merged into Corpus Christi Liquefaction.

[2] *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC & Cheniere Corpus Christi Pipeline, L.P.*, 179 FERC ¶ 61,087 (2022) (Extension Order).

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

Document Accession #: 20221014-3096     Filed Date: 10/14/2022

section 19(a) of the Natural Gas Act,[4] we are modifying the discussion in the Extension Order and continue to reach the same result in this proceeding, as discussed below.[5]

## I.    **Background**

4.     On November 22, 2019, the Commission authorized CCL Stage III and Corpus Christi Liquefaction to construct and operate additional facilities for the liquefaction and export of domestically-produced natural gas at Corpus Christi Liquefaction's existing liquefied natural gas (LNG) terminal (Stage 3 LNG Project)[6] on the northern shore of Corpus Christi Bay in Texas (Authorization Order).[7]  At the same time, the Commission authorized Cheniere Pipeline to construct and operate the Stage 3 Pipeline Project, which includes the construction of an interstate natural gas pipeline, additional compressor units at an existing compressor station, and related facilities to transport 1.5 billion cubic feet per day (Bcf/d) of natural gas bi-directionally between the Stage 3 LNG Project facilities and interconnections with existing pipeline systems.[8]  The Authorization Order required the companies to construct the projects and place them in service by November 22, 2024.[9]

5.     On December 7, 2021, the companies filed a motion requesting a 31-month extension of time—until June 30, 2027—to complete construction and place the projects

---

[4] 15 U.S.C. § 717r(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[5] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Extension Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[6] The Commission authorized the siting, construction, and operation of the LNG terminal in 2014.  *Corpus Christi Liquefaction, LLC*, 149 FERC ¶ 61,283 (2014), *reh'g denied*, 151 FERC ¶ 61,098 (2015).  The LNG terminal began export activities in March 2019.

[7] *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC & Cheniere Corpus Christi Pipeline, L.P.*, 169 FERC ¶ 61,135 (2019) (Authorization Order).

[8] *Id.*

[9] *Id.* at ordering para. (B) and (D)(1).

into service.[10]  The companies cited the COVID-19 pandemic's adverse effects on global market conditions as the need for an extension,[11] but nevertheless stated that commercialization of the project is close to completion[12] and the companies intend to make a positive investment decision and restart construction efforts in 2022.[13]

6.      In the Extension Order, the Commission granted the requested extension. Specifically, the Commission found that the unforeseeable impacts of the COVID-19 pandemic combined with the companies' continued interest in the project satisfy the Commission's good cause inquiry,[14] the public interest findings in the Authorization Order remain valid,[15] and no further National Environmental Policy Act (NEPA) analysis is necessary prior to granting the extension of time.[16]

## II.    **Procedural Matters**

7.      On June 21, 2022, Corpus Christi Liquefaction and Cheniere Pipeline filed a motion to answer and an answer to the NGO Parties' rehearing request.  Rule 713(d) of the Commission's Rules of Practice and Procedure,[17] prohibits an answer to a request for rehearing.  Accordingly, we deny Corpus Christi Liquefaction's and Cheniere Pipeline's motion to answer and reject their answer.

## III.   **Discussion**

8.      The NGO Parties raise four alleged errors in the Extension Order, asserting: (1) that the Commission has the legal authority and obligation to revisit conclusions from

---

[10] Request for Extension of Time at 2.

[11] *Id.* at 1-2.

[12] *Id.*

[13] After the companies received approval from the Commission in early 2020, they conducted preliminary activities on the project site, including road improvements, pile testing, soil stabilization tests, and tests of dewatering techniques, but suspended further activities in March 2020.  *Id.* at 2.

[14] Extension Order, 179 FERC ¶ 61,087 at P 13.

[15] *Id.* P 16.

[16] *Id.* P 19.

[17] 18 C.F.R. § 713(d)(1) (2021).

the Authorization Order in the Extension Order; (2) that the record does not support the Commission's conclusion that the companies demonstrated good cause for the delay; (3) that the Commission should have conducted additional NEPA review prior to granting the extension; and (4) that the Commission should have determined whether further consideration under the Endangered Species Act (ESA) was required.[18]

## A.    <u>Summary Denial</u>

9.    We find that in the Extension Order, the Commission adequately addressed the NGO Parties' arguments regarding the Commission's conclusion that the companies demonstrated good cause for the delay[19] and the Commission's obligations under the ESA.[20]  For the reasons previously articulated in the Extension Order as to each of these matters, we deny the request for rehearing.

## B.    <u>Consideration of Public Interest Findings</u>

10.    The NGO Parties argue that the Commission can, if not must, revisit the public interest findings made in connection with the certificate order when considering whether to grant an extension.[21]  They request that the Commission specify the statutory authority the Commission exercises when applying Rule 2008 of the Commission's Rules of Practice and Procedure to decide whether it will extend deadlines set forth in a certificate.[22]  Moreover, NGO Parties assert that "[i]f an applicant were to demonstrate a change in market conditions that could plausibly justify failure to proceed with a project,

---

[18] Rehearing Request at 2-3.

[19] *Compare* Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments at 8-11 *with* Rehearing Request at 5-8; *see* Extension Order, 179 FERC ¶ 61,087 at PP 11-13.

[20] *Compare* Public Citizen and Sierra Club December 29, 2021 Motion to Intervene and Comments ("Intervention") at 17-19 *with* Rehearing Request at 11; *see* Extension Order, 179 FERC ¶ 61,087 at PP 18-19.

[21] Rehearing Request at 4.

[22] *Id.* (citing 15 U.S.C. § 717o; 18 C.F.R. § 385.2008 (2021) (allowing the relevant decisional authority to extend for good cause the time by which any person is required or allowed to act under any statute, rule, or order)).

JA017

. . . the same facts that constituted good cause would also demonstrate that the findings underlying the initial certificate were stale."[23]

11.    Neither the NGA nor the Commission's regulations establish a particular time period to complete construction of an authorized natural gas facility.[24]  The Commission uses its broad conditioning authority under NGA sections 3 and 7(e)[25] to set completion dates.  As explained in the Extension Order, the Commission sets deadlines, in part, because the information supporting our public convenience and necessity determinations can go stale with the passage of time.[26]  The purpose of conditioning certificate authority with a deadline for completion of construction is to "diminish[] the potential that the public interest might be compromised by significant changes occurring between the issuance of the certificate and commencement of the project."[27]  The completion date specified in the Authorization Order[28] provides what the Commission believes—based on its assessment of circumstances relevant to the specific project—to be a reasonable period of time for the project sponsor to complete construction and make the project available for service.[29]

---

[23] Rehearing Request at 7.

[24] 18 C.F.R. § 157.20(b) (2021) (requiring, among other things, that authorized construction be completed and made available for service within the period of time to be specified by the Commission in each order).

[25] 15 U.S.C. § 717f(e) ("The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."); *see also id.* § 717b(a) (stating that the Commission may "grant such application, in whole or in part, with such modification and upon such terms and conditions as the Commission may find necessary or appropriate"); *id.* § 717b(e)(3)(A) (providing the authority to approve an application for an LNG Terminal, "in whole or part, with such modifications and upon such terms and conditions as the Commission find[s] necessary or appropriate").

[26] Extension Order, 179 FERC ¶ 61,087 at P 15 (citing *Mountain Valley Pipeline, LLC*, 173 FERC ¶ 61,026, at P 17 (2020)).

[27] *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, at 62,103 (1996).

[28] Authorization Order, 169 FERC ¶ 61,135 at ordering paras. (B) & (D)(1).

[29] *Const. Pipeline Co., LLC*, 165 FERC ¶ 61,081, at P 9 (2018) (citing *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165, at P 8 (2016)).

12.     In support of their argument on rehearing that the Commission must specify the source of its statutory authority to extend the construction deadline under Rule 2008, the NGO Parties argue that they "are not aware of any principle that would permit the Commission to extend a certificate deadline but would not permit (or, indeed, *require*) the Commission to consider the validity of the certificate's underlying findings in deciding whether to do so."[30]  Therefore, they urge that the Commission "cannot issue a new order reconsidering one part of a prior order (the deadline) without reconsidering other elements of that prior order," including a finding that the project will be in the public interest.[31]

13.     While the NGO Parties urged the Commission to reconsider the findings underlying the public interest determination in both their rehearing request and prior intervention,[32] they raise the argument that the Commission must define its statutory authority to issue an extension of time for the first time on rehearing.  The Commission looks with disfavor on parties raising issues for the first time on rehearing that could have been raised earlier[33] and generally will not consider these issues.[34]  Accordingly, we reject this argument.

14.     However, even if considered, we find the NGO Parties' argument unavailing.  The Commission acted within the scope of its authority in granting Corpus Christi's extension of time request.  The NGA contemplates that the Commission has the authority to condition a certificate authorizing facility construction and operation,[35] and to enforce

---

[30] Rehearing Request at 4.

[31] *Id.* at 5.

[32] *See* Intervention at 12.

[33] *See Balt. Gas & Elec. Co.*, 91 FERC ¶ 61,270, at 61,922 (2000) ("We look with disfavor on parties raising on rehearing issues that should have been raised earlier.  Such behavior is disruptive to the administrative process because it has the effect of moving the target for parties seeking a final administrative decision.").

[34] *NRG Power Mktg, LLC v. FERC*, 862 F.3d. 108, 116-117 (D.C. Cir. 2017) (citing *PJM Interconnection, LLC*, 108 FERC ¶ 61,187 at P 49 (2004)).  Rule 713 of the Commission's Rules of Practice and Procedure permits raising new information on rehearing only if that information is "based on matters not available for consideration by the Commission at the time of the final decision or final order."  18 C.F.R. § 385.713(c)(3) (2021).

[35] 15 U.S.C. § 717f(e).

those conditions.[36]  Accordingly, the Commission has a continuing responsibility to oversee the construction of authorized projects after the issuance of a certificate of public convenience and necessity.  As explained above, the Commission set a construction deadline as a condition of Corpus Christi's authorization and may extend that deadline as part of its ongoing oversight of the construction of the authorized projects.  Furthermore, NGA section 16[37] provides the Commission with administrative authority to manage compliance with our conditions, as is necessary to allow the Commission to oversee construction of authorized projects.[38]

15.     While we recognize that environmental policy, environmental conditions, and market conditions are subject to change, extension of time proceedings are not an invitation to re-open closed proceedings.[39]  Here, the companies are not asking to change the nature of their projects, rather they only request to change the timing of their deadlines to complete construction and place the facilities in service.[40]  Nor have the NGO Parties adduced substantial evidence that calls into question the Commission's finding of good cause to grant the extension of time.  We continue to find that an extension of time proceeding is not an opportunity to revisit the public interest determination in the Authorization Order.

---

[36] *Id.* § 717s.

[37] 15 U.S.C. § 717o.

[38] *See Niagara Mohawk Power Corp. v. Federal Power Comm'n*, 379 F.2d 153, 158 (D.C. Cir. 1967) (finding that the Commission's authority under section 309 of the Federal Power Act (FPA) to "perform any and all acts, and to prescribe . . . such orders . . . as it may find necessary and appropriate to carry out the provisions of the [Act]" does not limit an agency's action to procedural minutiae, but it can use means of regulation that conforms with the purposes and policies of Congress, consistent with the terms of the Act); *see also Verso Corp. v. FERC*, 898 F.3d 1, 10, 11 (D.C. Cir. 2018) (affirming the Commission's exercise of authority to "effectuate" a remedy and explaining that "[s]ection 309 permits [the Commission] to advance remedies not expressly provided by the FPA, as long as they are consistent with the Act").  Although these cases were decided under the FPA, we note that FPA section 309 and NGA section 16 are identical and read in *pari materia.*

[39] *See, e.g.*, *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at PP 10, 16 (2022) (emphasizing that the Commission will not relitigate whether the Commission properly found the project to be in the public convenience and necessity); *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144 at P 40.

[40] Extension Order, 179 FERC ¶ 61,087 at P 16.

Docket Nos. CP18-512-002 and CP18-513-002                                    - 8 -

### C.     Additional NEPA Review

16.     The NGO Parties argue that the Commission erred by approving the extension request without evaluating whether the environmental findings in the Authorization Order remain valid.[41]  They assert that granting the extension should be considered a major Federal action requiring a renewed NEPA analysis,[42] or, in the alternative, be analyzed under the NEPA supplementation framework.[43]  Specifically, the NGO Parties claim that supplemental NEPA analysis is required to analyze "new developments regarding climate change, endangered species, and impacts on domestic gas prices and supply."[44]

17.     With respect to potential new developments regarding endangered species and impacts on domestic gas prices and supply, the Extension Order explained that the Commission's public interest finding remains valid[45] and the potential need to re-initiate consultation on newly listed species does not trigger the need for a supplemental EIS.[46]  Moreover, the NGO Parties fail to provide a detailed explanation of any potential new developments regarding endangered species and domestic gas prices and supply and why they should trigger a supplemental NEPA analysis.[47]  The parties are obligated to "set forth specifically the ground or grounds upon which" its request for rehearing is based.[48]  Simply making blanket allegations without any analysis or explanation does not meet this requirement.

---

[41] Rehearing Request at 8.

[42] *Id.*

[43] *Id.* at 9.

[44] *Id.*

[45] Extension Order, 179 FERC ¶ 61,087 at PP 14-16.

[46] *Id*. P 19.  Should any future consultation result in proposed measures that might have environmental impacts not previously analyzed, consistent with 40 C.F.R. § 1502.9(d)(1), the Commission will determine whether it should supplement its environmental review.

[47] *See* Rehearing Request at 9.

[48] 15 U.S.C. § 717r(a).  *See also Constellation Energy Commodities Grp., Inc. v. FERC*, 457 F.3d 14, 22 (D.C. Cir. 2006) ("Each quoted passage states a conclusion; neither makes an argument.  Parties are required to present their arguments to the Commission in such a way that the Commission knows 'specifically . . . the ground on

18.    The NGO Parties focus on potential new information related to climate change as a trigger for supplemental NEPA analysis, including "federal re-adoption of a modeling tool, the social cost of carbon protocol, and announcement of federal greenhouse gas emission reduction targets."[49]  However, the NGO Parties do not demonstrate that this new information is sufficient to trigger a supplemental NEPA analysis.

19.    The Council on Environmental Quality's regulations implementing NEPA provide that agencies "[s]hall prepare supplements to either draft or final environmental impact statements if a major Federal action remains to occur, and:  (i) [t]he agency makes substantial changes to the proposed action that are relevant to environmental concerns; or (ii) [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."[50]  Here, neither factor for preparation of a supplemental NEPA analysis has been triggered.

20.    Approval of a request for extension of time is an administrative action and is not considered to be a major Federal action significantly affecting the quality of the human environment.[51]  Granting a request for an extension of time to complete an approved action does not constitute the substantial changes to the proposed action envisioned in the NEPA regulations nor does it constitute a new approval of the specific project in question.[52]

21.    Further, a supplemental EIS is required where there is new information that "is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered."[53]  The alleged new information raised by the NGO Parties does not demonstrate any change to the proposed action or its impact on the environment.[54]  Rather, they rely on changes to

---

which rehearing [i]s being sought'").

[49] Rehearing Request at 10.

[50] 40 C.F.R. § 1502.9(d)(1) (2021).

[51] *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at P 23.

[52] *Id.*

[53] *Marsh v. Or. Nat. Res. Council*, 49 U.S. 360, 375 (1987) (quoting 40 C.F.R. § 1508.27 (1987)).

[54] NGO Parties cite to statements by the Corpus Christi regarding an intent to incorporate carbon capture and sequestration into the project.  Rehearing Request at 10. However, as the companies have not submitted this information officially to the

Document Accession #: 20221014-3096    Filed Date: 10/14/2022

the analytical tools the Commission may use to analyze impacts. The NGO Parties discuss only the availability of these new tools, but do not specify any change to the actual impact of the project. The existence of new tools in of itself does not trigger a need for additional analysis.

22.    The extension of time request does not include any change to the particulars of the project. In addition, the NGO Parties have not presented evidence to show that the environmental effects of the project have changed materially since the Commission authorized the project.[55] As explained in the Extension Order, we will not relitigate our prior findings here.[56]

The Commission orders:

In response to the request for rehearing filed by Public Citizen and Sierra Club, the Extension Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission. Commissioner Danly is concurring with a separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

_____

Commission, it is unduly speculative.

[55] *See Const. Pipeline Co., LLC*, 165 FERC ¶ 61,081 at P 17 ("New information must be sufficient to show that the remaining federal action will affect the environment in a significant manner or to a significant extent not already considered.").

[56] *See Columbia Gas Transmission, LLC*, 172 FERC ¶ 61,162, at P 17 (2020) (finding that argument in a proceeding on an extension of time request that the Commission's NEPA document erred by not calculating the social cost of carbon was an impermissible collateral attack on the certificate order authorizing the project); *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030 at P 16 (finding in order addressing request for extension of time to complete construction that commenters' arguments that the Commission did not properly account for public safety, air pollution levels, and public need for the project, were an improper collateral attack on the certificate order).

JA023

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Corpus Christi Liquefaction Stage III, LLC      Docket Nos.   CP18-512-002
Corpus Christi Liquefaction, LLC

Cheniere Corpus Christi Pipeline, LP          CP18-513-002

(Issued October 14, 2022)

DANLY, Commissioner, *concurring*:

     I write separately to commend to the readers' attention my separate statement issued with the underlying order.[1]  I have only one point I would like to raise with regard to this rehearing order: even though the Commission's practice of establishing project deadlines in authorization orders is in order to "diminish[] the potential that the public interest might be compromised by significant changes occurring between issuance of the certificate and commencement of the project,"[2] our inquiry when reviewing a request for an extension of time is narrow—it is not an opportunity to revisit the determinations made after orders have become final and unappealable.[3]  As today's order recognizes,

---

    **[1]** *See Corpus Christi Liquefaction Stage III, LLC*, 179 FERC ¶ 61,087 (2022) (Danly, Comm'r, concurring).

    **[2]** *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, at 62,103 (1996).

    **[3]** *See Corpus Christi Liquefaction Stage III, LLC*, 179 FERC ¶ 61,087 at P 15 ("extension of time proceedings are not an invitation to re-open the dockets") (citations omitted); *see also Nat'l Fuel Gas Supply Corp.*, 179 FERC ¶ 61,226, at P 20 (2022) ("Rule 716 does not provide the Commission with additional authority to reopen the record underlying the Certificate Order here, where a final, non-appealable order has issued.") (citations omitted); *id*. (Danly, Comm'r, concurring at P 5) ("Circumstances, no matter how extraordinary, cannot themselves grant jurisdiction where Congress has conferred no power.  In the absence of authority provided by Congress, the Commission simply cannot revisit its public convenience and necessity determinations once a certificate order becomes final and unappealable.").

JA024

"extension of time proceedings are not an invitation to re-open closed proceedings."[4]  To the extent to which today's order includes any statements that suggest otherwise, I disagree.[5]  The question we ask in extension of time proceedings is whether there is good cause to grant the extension—and indeed, in this case, there was.


        For these reasons, I respectfully concur.


_____
James P. Danly
Commissioner

---

[4] *Corpus Christi Liquefaction Stage III, LLC*, 181 FERC ¶ 61,033, at P 15 (2022) (citations omitted).

[5] *See, e.g.*, *id.* P 11 ("the Commission sets deadlines, in part, because the information supporting our public convenience and necessity determinations can go stale with the passage of time.") (citation omitted).

Document Accession #: 20211207-5161      Filed Date: 12/07/2021



Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, Texas 77002
phone: 713.375.5000
fax: 713.375.6000

December 7, 2021

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

**Re:    Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC and Cheniere
Corpus Christi Pipeline, L.P.
Docket Nos. CP18-512-000 and CP18-513-000
Request for Extension of Time**

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order
Granting Authorization Under Sections 3 and 7 of the Natural Gas Act ("November 2019 Order") granting the
necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction
Project ("Stage 3 Project").[1]  As described in the November 2019 Order, Corpus Christi Liquefaction Stage III,
LLC ("CCL Stage III") and Corpus Christi Liquefaction, LLC ("CCL") are authorized to site, construct and
operate seven midscale liquefaction trains with a maximum total production capacity of 11.45 million metric tons
per annum ("MTPA") and one full containment liquefied natural gas ("LNG") storage tank (collectively, the
"Stage 3 LNG Facilities"); and Cheniere Corpus Christi Pipeline, L.P. ("CCPL") is authorized to construct and
operate an associated 21-mile-long 42-inch-diameter pipeline and appurtenant facilities (the "Stage 3 Pipeline").

On January 10, 2020, CCL Stage III received FERC approval to proceed with early works within the Stage 3
Project site, which included: pile testing activities, soil stabilization tests, and testing of dewatering techniques.[2]
On February 14, 2020, CCL Stage III received FERC approval to proceed with improvements to the existing
interior roads within the authorized Stage 3 Project site.[3] These early works commenced shortly after the
approvals were granted by FERC and then were suspended in March 2020.  Additionally, on January 17, 2020,
FERC granted CCPL's request to proceed with construction of Unit No. 1 at the Sinton Compression Station,
which CCPL proposed to construct and operate independently from, and in advance of construction of, the
remaining Stage 3 Project facilities.[4]  In that regard, on December 18, 2020, the Commission authorized CCPL to
place Unit 1 in service.[5]  Construction on the remainder of the Stage 3 Pipeline facilities has not yet commenced.

The onset and duration of the COVID-19 pandemic resulted in adverse economic and logistical conditions that
slowed commercial progress and precluded CCL Stage III from making a timely Final Investment Decision
("FID") on the Stage 3 Project in order to meet the current permitted construction duration. This delay in full
commercialization has resulted in the need for additional time to construct and place the Stage 3 Project in

---

[1]`  *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC and Cheniere Corpus Christi Pipeline, L.P.*, 169 FERC
¶ 61,135 (2019).

[2]  *Corpus Christi Liquefaction Stage III, LLC,* Letter Order Granting Authorization to Proceed with Early Works, Docket No. CP18-512-
000 (January 10, 2020).

[3]  *Corpus Christi Liquefaction Stage III, LLC,* Letter Order Granting Authorization to Proceed with Road Improvements for Early
Works, Docket No. CP18-512-000 (February 14, 2020).

[4]  *Cheniere Corpus Christi Pipeline, L.P.,* Letter Order Granting Authorization to Proceed with Construction of Sinton Compression Unit
No. 1, Docket No. CP18-513-000 (January 17, 2020).

[5]  *Cheniere Corpus Christi Pipeline, L.P,* Letter Order Granting Authorization to Commence Service, Docket No. CP18-513-000
(December 18, 2020).

service. The Commission has recognized these challenges in granting similar extensions of time to other LNG projects.[6]

While the COVID-19 pandemic caused significant impact to global markets last year, global LNG demand and long-term contracting activity have experienced significant growth in 2021. During the last 12 months alone, Cheniere Energy, Inc. and its affiliates have signed approximately 6 MTPA of long-term contracts, which, alongside long-term contracts previously signed, means that commercialization for the Stage 3 Project is close to completion. The strong global LNG market continues to drive commercial momentum, and CCL Stage III anticipates imminently restarting early construction activities at the Stage 3 Project site and making a positive FID during 2022. A revised construction schedule for the Stage 3 Project is provided in **Attachment 1**.

Full construction of the Stage 3 LNG Facilities would commence upon making a positive FID. Based on a June 2022 (*approximate*) FID and a 60-month construction duration (which is equivalent to the construction duration authorized in the November 2019 Order), the Stage 3 Project would be made available for service by June 2027.

Under Ordering Paragraphs (B) and (D)(1) of the November 2019 Order, the Stage 3 Project facilities are to be constructed and made available for service within five years of the date of the Order. For the reasons described herein, pursuant to Sections 157.20(b) and 385.2008 of the Commission's regulations, CCL Stage III, CCL and CCPL respectfully request an extension of time until June 30, 2027, to complete construction and make the Stage 3 Project available for service.[7]

FERC's expeditious approval is integral to maintaining CCL Stage III's project schedule and path to a positive FID, which includes numerous elements such as engineering, construction planning, procurement, commercial activity and financing. To this end, CCL Stage III, CCL and CCPL request FERC's approval by March 30, 2022.

Should you have any questions about this filing, please feel free to contact the undersigned at (713) 375-5000.

Respectfully submitted,

/s/ *Akayla Broussard*

Akayla Broussard
Corpus Christi Liquefaction Stage III, LLC
Corpus Christi Liquefaction, LLC
Cheniere Corpus Christi Pipeline, L.P.

Attachments:     **Attachment 1** – Estimated Construction Schedule

cc:     Mr. Steven Kusy – Federal Energy Regulatory Commission
        Ms. Nancy Fox-Fernandez – Federal Energy Regulatory Commission
        Ms. Janna Romaine Chesno – Cheniere Energy, Inc.
        Ms. Lisa Tonery – Orrick

---

[6]     *Magnolia LNG, LLC & Kinder Morgan Louisiana Pipeline LLC*, Letter Order Granting Request for Extension of Time, FERC Docket Nos. CP14-347-000, CP19-19-000, & CP14-511-000 (October 7, 2020); *Cameron LNG, LLC*, Letter Order Granting Extension of Time, FERC Docket No. CP15-560-000 (March 25, 2020); *Freeport LNG Development, L.P. & FLNG Liquefaction 4, LLC*, Letter Order Granting Extension of Time, FERC Docket No. CP17-470-000 (September 10, 2020).

[7]     18 C.F.R. §157.20(b) and §385.2008 (2020).

Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC and
Cheniere Corpus Christi Pipeline, L.P.

Corpus Christi Liquefaction Stage 3 Project

Docket Nos. CP18-512-000 and CP18-513-000

Submitted to FERC December 7, 2021

## ATTACHMENT 1

## Estimated Construction Schedule

## ATTACHMENT 1
## ESTIMATED CONSTRUCTION SCHEDULE



| Stage 3 Project Schedule Estimate | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|---|---|
| Month | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| Early Construction Works | | | | | | |
| Final Investment Decision | | | | | | |
| Full Construction Trains 1-7 | | | | | | |

Current FERC In-Service Deadline

Requested Extension of Time Date

JA029

**Certificate of Service**

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Houston, Texas this 7th day of December, 2021.

*/s/ Akayla Broussard*

Akayla Broussard
Corpus Christi Liquefaction Stage III, LLC
Corpus Christi Liquefaction, LLC
Cheniere Corpus Christi Pipeline, L.P.

Document Accession #: 20211229-5051          Filed Date: 12/29/2021

UNITED STATES OF AMERICA
DEPARTMENT OF ENERGY
FEDERAL ENERGY REGULATORY COMMISSION

| | | | |
|---|---|---|---|
| IN THE MATTER OF | ) | | |
| | ) | | |
| Corpus Christi Liquefaction Stage III, LLC | ) | Docket Nos. | CP18-512-000 |
| Corpus Christi Liquefaction, LLC | ) | | |
| | ) | | |
| Cheniere Corpus Christi Pipeline, LP | ) | | CP18-513-000 |
| | ) | | |

**Motion to Intervene and Protest of Public Citizen and Sierra Club**

On November 22, 2019, FERC approved a request to expand the Corpus Christi LNG export terminal and associated pipeline.[1] That order required that expanded facilities be fully constructed and in service within five years, *i.e.*, no later than November 22, 2024. The Applicants represent that constructing the project would in fact take a full five years (60 months);[2] thus, it was clear from the time of authorization that the applicants would need to diligently pursue the authorized project to meet the terms of their certificate.

Nonetheless, in the two years since authorization, the only activity the Applicants have undertaken is minor site preparation.[3] Indeed, the Applicants have not even decided whether they actually want to proceed with the Stage 3 Project, and they represent that they won't make that final investment decision until the middle of next year.[4] The Applicants pending request for an extension of the FERC certificate is therefore very different from most extension requests FERC has considered, because here, this is not a situation in which the applicants were prevented from meeting the construction deadline despite working diligently to do so. Instead, the Applicants here are reconsidering fundamental questions of whether the market supports these projects, and

---

[1] *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC, and Cheniere Corpus Christi Pipeline, LP*, 169 FERC ¶ 61,135 (Nov. 22, 2019).

[2] Request for Extension of Time at 2 (Dec. 7, 2021).

[3] *Id*.

[4] *Id.*

*Public Citizen and Sierra Club Intervention and Protest of*
*Request for Extension of Time in CP18-512, CP18-513*                                    *Page 1*

JA031

*Chestnut Ridge* explained that an applicant failed to show "good faith efforts" to complete a project where the applicant "set its certificate on a shelf and let it lie dormant," rather than being "actively engaged in preparations in anticipation of commencing construction."[22] In *Chestnut Ridge*, the applicant had not commenced construction based on the apparent determination that the "project was not financially viable under current conditions."[23] FERC concluded that a voluntary decision not to proceed with construction based on "market-related" setbacks was fundamentally different than other types of setbacks, such as firm barriers to construction.[24] Accordingly, FERC concluded that the applicant had failed to show good cause, denied the request for an extension, and vacated the underlying certificate without prejudice.[25]

In contrast with *Chestnut Ridge*, in modern cases where FERC has found good cause, the applicant was actively working to complete the project, but outside forces prevented the applicant from doing so. Frequently, the barrier to construction was permit that had been denied or withheld by another agency despite the applicant's diligent efforts.[26] FERC has also stated that good cause may exist when there are "unforeseeable circumstances, such as difficulties in obtaining deliveries of needed materials or the discovery of cultural remains on an approved right-of-way."[27] The thread uniting these circumstances is that the applicant *could not* proceed, not that the applicant merely chose not to do so.

This case is clearly more like *Chestnut Ridge* than *Constitution Pipeline* or other cases in which FERC found good cause for an extension. We recognize that the COVID-19 pandemic may have made it difficult for the projects to proceed with construction, at least for some period of time, due to worker safety, supply chain, and other practical issues. But as the applicants admit, they didn't even try to move forward with the project due to other, market-driven reasons.[28] The

---

[22] *Id.* P18.

[23] *Id.* P11.

[24] *Id.* P13.

[25] *Id.* P26.

[26] *Constitution Pipeline Co.*, 165 FERC ¶ 61,081 P14, *id. at* P9 n.32 (collecting FERC decisions).

[27] *Arlington Storage Co.*, 155 FERC ¶ 61,165 P8.

[28] Because the applicants didn't even try to proceed, there is nothing to indicate that workforce availability, supply chain issues, etc., would have in and of themselves caused a delay, or that

*Public Citizen and Sierra Club Intervention and Protest of*
*Request for Extension of Time in CP18-512, CP18-513*                                    *Page 9*

JA032

applicants *still* have not made a final investment decision, and do not expect to do so for at least another six months.[29] This is precisely the kind of voluntary, market-driven delay that FERC found insufficient to support good cause in *Chestnut Ridge*. And while the applicants cite three recent FERC letter orders that approved extension requests on similar grounds,[30] none of those extension requests were contested; in each the decision was made in a letter order pursuant to delegated authority, rather than by the full commission; and none of the letter orders articulated any findings, provided a basis for distinguishing those cases from *Chestnut Ridge*, or addressed the differences between the facts presented in those cases and the involuntary barriers found to constitute good cause in *Constitution Pipeline* or other FERC orders. Accordingly, these three letter orders are neither precedential nor persuasive.

There are sound policy reasons for FERC to continue to require good cause, independent of questions of stale findings, in evaluating extension requests. As recognized in *Chestnut Ridge*, allowing certificate holders to leave certificates "on a shelf" risks permitting anticompetitive behavior that "introduce[s] or perpetuate[s] market inefficiencies."[31] Pertinent to Public Citizen and Sierra Club's interests, allowing LNG export authorization holders to sit on dormant projects prevents FERC, the Department of Energy, and others from properly assessing the cumulative impact of already-approved projects when evaluating future proposals. And these impacts can be severe. As FERC has recognized, LNG exports are presently the "primar[y]" source of demand that is driving large increases in U.S. gas prices,[32] increases which have led the Energy Information Administration to predict that Americans will pay at least 30% more on home heating

---

such a delay would have lasted more than a few months, rather than the two years of delay that have passed while the applicants reviewed changing market conditions.

[29] Request for extension at 2.

[30] Request for extension at 2 n.6.

[31] 139 FERC ¶ 61,149 PP9, 18.

[32] FERC, Winter Energy Market and Reliability Assessment (Oct. 21, 2021) at 2, *available at* https://ferc.gov/sites/default/files/2021-10/Winter%20Assessment%202021-2022%20-%20Report.pdf and attached*; accord id. at 11. See also* Clark Williams-Derry, IEEFA U.S.: Booming U.S. natural gas exports fuel high prices, IEEFA.ORG (Nov. 4, 2021), https://ieefa.org/ieefa-u-s-declining-demand-lower-supply-dont-explain-rapidly-rising-gas-prices/ and attached.

*Public Citizen and Sierra Club Intervention and Protest of*
*Request for Extension of Time in CP18-512, CP18-513*                    *Page 10*

JA033



Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, Texas 77002
phone: 713.375.5000
fax: 713.375.6000

February 18, 2022

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

**Re:    Corpus Christi Liquefaction Stage III, LLC**
**Docket No. CP18-512-000**
**Monthly Construction Report for January 2022**

Dear Ms. Bose:

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Project").

Pursuant to Condition 9 of the Order, Corpus Christi Liquefaction Stage III, LLC is herein submitting its monthly construction progress report for the period January 2022.

Should you have any questions about this filing, please feel free to contact the undersigned at (713) 375-5000.

Thank you,

/s/ *Akayla Broussard*

*Akayla Broussard*
*Environmental and Regulatory Projects*
*Corpus Christi Liquefaction Stage III, LLC*

cc:    Ms. Nancy Fox-Fernandez – Federal Energy Regulatory Commission
       Mr. Steven Kusy – Federal Energy Regulatory Commission
       Ms. Janna Romaine Chesno – Cheniere Energy, Inc.
       Ms. Lisa Tonery – Orrick, Herrington & Sutcliffe, LLP

JA034

**CORPUS CHRISTI LIQUEFACTION STAGE 3 PROJECT**

**Corpus Christi, Texas**

**MONTHLY PROGRESS REPORT**
**JANUARY 2022**
**FERC DOCKET NO. CP18-512-000**

Corpus Christi Liquefaction Stage III, LLC
January 2022 Monthly Progress Report

**Table of Contents**

1.0    Executive Summary ........................................................................................ 3

2.0    Project Highlights ........................................................................................ 3

3.0    Environmental, Safety, and Health Progress ............................................. 3

4.0    Schedule ...................................................................................................... 3

5.0    Construction ................................................................................................ 4

6.0    Permitting and Environmental .................................................................... 5

2

Document Accession #: 20220218-5176    Filed Date: 02/18/2022

Corpus Christi Liquefaction Stage III LLC
January 2022 Monthly Progress Report

## 1.0    Executive Summary

This report covers activities for the CCL Stage 3 Project during the month of January 2022.

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Project"). On December 20, 2019, CCL Stage III submitted a request to commence early works activities associated with pile testing activities, soil stabilization tests, and testing of dewatering techniques. On January 10, 2020, CCL Stage III received FERC authorization to proceed with early works activities within the Stage 3 LNG Facilities.

## 2.0    Project Highlights

During the month of January, CCL Stage III's contractor resumed the early works activities referenced above. Soil stabilization, pile load, and wick drain tests are ongoing. CCL Stage III's contractor also made improvements (stabilization) to existing interior roads within the Stage 3 LNG Facilities (supplemental early works activity approved by FERC on February 14, 2020.)

## 3.0    Environmental, Safety, and Health Progress

There have been no safety or environmental incidents during this reporting period.

## 4.0    Schedule

A revised construction schedule for the Stage 3 Project is provided in **Attachment 1.**

JA037

## 5.0 Construction

| Area | Construction Activities in January | Planned Work for February |
|------|-----------------------------------|---------------------------|
| Liquefaction Trains Area | ▪ Resumed early works testing activities (soil stabilization, pile load and wick drain testing.) | ▪ Commence soil stabilization at test pile pad. |
| LNG Tank | None. | None. |
| Access Roads | ▪ Resumed stabilization of interior roads. | ▪ Continue stabilization of interior roads. |
| Other | None. | None. |

4

JA038

Document Accession #: 20220218-5176     Filed Date: 02/18/2022

Corpus Christi Liquefaction Stage III, LLC
January 2022 Monthly Progress Report

## 6.0   Permitting and Environmental

No updates to any environmental permits or the Emergency Response Plan for project construction were made during the January reporting period.

**Summary of Problems, Non-Compliances, and Corrective Actions**

| Date | Description |
|------|-------------|
| None. | |

**Non-Compliance and Corrective Actions:**
- No non-compliance issues were observed this reporting period.

**Agency Contacts/Inspections**

| Agency | Name | Date | Location/Activity |
|--------|------|------|-------------------|
| None. | | | |

JA039

Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC and
Cheniere Corpus Christi Pipeline, L.P.

Corpus Christi Liquefaction Stage 3 Project

Docket Nos. CP18-512-000 and CP18-513-000

Submitted to FERC February 18, 2022

## ATTACHMENT 1

## Revised Construction Schedule

**REVISED CONSTRUCTION SCHEDULE**

| Stage 3 Project Schedule Estimate | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|---|---|
| Month | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| Early Construction Works | | | | | | |
| Final Investment Decision | | | | | | |
| Full Construction Trains 1-7 | | | | | | |

JA041

**Certificate of Service**

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Houston, Texas this 18th day of February 2022.

*/s/ Akayla Broussard*

*Akayla Broussard*
*Corpus Christi Liquefaction Stage III, LLC*

JA042

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

**Reply Refer To:**
OEP/DG2E/Gas Branch 2
Corpus Christi Liquefaction Stage III, LLC
Docket No. CP18-512-000

March 9, 2022

VIA FERC Service

Akayla Broussard
Cheniere Energy, Inc.
7000 Milam Street, Suite 800
Houston, TX 77002

RE:    **Authorization to Proceed with Additional Early Works**

Dear Ms. Broussard:

I grant your March 2, 2022 request, and supplemented on March 8, 2022, for Corpus Christi Liquefaction Stage III, LLC (CCL Stage III) to proceed with additional early works within the Corpus Christi Liquefaction Project (Stage 3) facilities, including one additional test area and temporary drainage works. In considering this authorization, we have reviewed CCL Stage III's Implementation Plan and supplemental filings.

These filings included the information necessary to meet the conditions of the Federal Energy Regulatory Commission's November 22, 2019 *Order Granting Authorization Under Sections 3 and 7 of the Natural Gas Act* (Order) to CCL Stage III, in the above- referenced docket. We have confirmed the receipt of all federal authorizations relevant to the approved activities herein. Site preparation and construction of other Stage 3 facilities are not authorized at this time. Additional authorizations will be released once CCL Stage III has demonstrated full compliance with the conditions of the Order.

I remind you that CCL Stage III must comply with all applicable remaining terms and conditions of the Order. If you have any questions regarding this approval, please contact Nancy Fox-Fernandez, at (202) 502-8559.

Sincerely,

A. Eric Howard, Chief
Gas Branch 2
Division of Gas – Environment and
        Engineering

JA043



Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, Texas 77002
phone: 713.375.5000
fax: 713.375.6000

March 31, 2022

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

**Re:    Corpus Christi Liquefaction Stage III, LLC**
**Docket No. CP18-512-000**
**Implementation Plan-B and Request for Authorization to Commence Site Preparation Activities – Soil**
**Stabilization and Associated Activities**

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act  granting Corpus Christi Liquefaction Stage III, LLC ("CCL Stage III") the necessary authorization for construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Stage 3 Project"). CCL Stage III received FERC approval to proceed with early works activities within the Stage 3 LNG Facilities on January 10, 2020, February 14, 2020, and March 9, 2022.

CCL Stage III herein submits *Implementation Plan-B* to demonstrate compliance with certain conditions set forth in the Appendix of the Order. With this submittal, CCL Stage III is requesting authorization to commence the first phase of site preparation activities for the Stage 3 Project. Site preparation activities to be performed during this phase will include soil stabilization and associated activities within the approved operational area of the Stage 3 LNG Facilities. Information related to subsequent elements of site preparation activities will be provided in future filings. In addition to soil stabilization activities, CCL Stage III requests authorization to commence utilization of certain authorized temporary facilities to support project construction.

CCL Stage III respectfully requests FERC's authorization to proceed with the activities described in the attached Implementation Plan-B at the earliest date possible, but no later than April 28, 2022.

Portions of the information submitted in the instant filing includes confidential and/or proprietary design information. In accordance with Sections 388.112 of the Commission's regulations, the Company requests that the information submitted be accorded Privileged and Confidential treatment. Accordingly, the material has been marked "CUI//PRIV – Privileged & Confidential – Do Not Release". Questions regarding this request for privileged and confidential treatment should be directed to the undersigned.

Should you have any questions about this filing, please feel free to contact the undersigned at (713) 375-5503.

Respectfully submitted,

/s/ *Akayla Broussard*

Akayla Broussard
Environmental and Regulatory Projects
Corpus Christi Liquefaction Stage III, LLC

cc:    Mr. Steven Kusy – Federal Energy Regulatory Commission
        Ms. Nancy Fox-Fernandez – Federal Energy Regulatory Commission

Document Accession #: 20220331-5322     Filed Date: 03/31/2022

Mr. John Bugno – Federal Energy Regulatory Commission
Ms. Janna Romaine Chesno – Cheniere Energy, Inc.
Ms. Lisa Tonery – Orrick, Herrington & Sutcliffe, LLP

USCA Case #22-1235    Document #1992104    Filed: 03/28/2023    Page 51 of 148



*Corpus Christi Liquefaction Stage III, LLC.*

*Stage 3 Project*

*Implementation Plan B –*
*Request to Commence Site Preparation Activities*

*CP18-512-000*

*March 31, 2022*

JA046

Document Accession #: 20220331-5322      Filed Date: 03/31/2022

**INTRODUCTION**

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("November 22 Order") ("Order") granting the necessary authorization to Corpus Christi Liquefaction Stage III, LLC ("CCL Stage III") and Cheniere Corpus Christi Pipeline, L.P. ("CCPL") for the construction and operation of the Corpus Christi Liquefaction Stage 3 Project ("Stage 3 Project"). On January 10, 2020 and February 14, 2020 FERC issued authorization to CCL Stage III to commence early works activities within the Stage 3 LNG Facilities. On March 9, 2022, CCL Stage III received FERC authorization to proceed with additional early works activities within the Stage 3 LNG Facilities.

CCL Stage III herein submits *Implementation Plan-B* to demonstrate compliance with certain conditions set forth in the Appendix of the Order. Specifically, CCL Stage III is submitting responses to Conditions 7, 10, 15, 25, 27 through 35 and 42. With this submittal, CCL Stage III is requesting authorization to commence the first phase of site preparation activities for the Stage 3 Project. Site preparation activities to be performed during this phase will include soil stabilization and associated activities within the approved operational area of the Stage 3 LNG Facilities. Associated activities include clearing and grubbing, dewatering and temporary drainage. Access to and from the work area will be via the same route authorized in CCL Stage III's February 14, 2020 approval to proceed with improvements to existing interior roads within the authorized Stage 3 Project operational area. No third-party pipelines will be crossed in association with the proposed work within the Stage 3 LNG Facilities area.

Additionally, with this Implementation Plan, CCL Stage III requests authorization to commence utilization of four authorized temporary facilities to support project construction (see compliance statement for Condition 29 below).

CCL Stage III respectfully requests FERC's authorization for Implementation Plan-B no later than April 28, 2022.

JA047

Document Accession #: 20220331-5322          Filed Date: 03/31/2022

Corpus Christi Liquefaction Stage 3 Project
FERC Docket No. CP18-512-000
Request to Commence Site Preparation Activities

USCA Case #22-1235     Document #1992104     Filed: 07/26/2023     Page 53 of 148

## Condition No. 7

**Within 60 days of the acceptance of the authorization and before construction begins**, Cheniere shall file an Implementation Plan with the Secretary for review and written approval by the Director of OEP. Cheniere must file revisions to the plan as schedules change. The plan shall identify:

a.  how Cheniere will implement the construction procedures and mitigation measures described in its application and supplements (including responses to staff data requests), identified in the EA, and required by the Order;

b.  how Cheniere will incorporate these requirements into the contract bid documents, construction contracts (especially penalty clauses and specifications), and construction drawings so that the mitigation required at each site is clear to onsite construction and inspection personnel;

c.  the number of EIs assigned, and how the company will ensure that sufficient personnel are available to implement the environmental mitigation;

d.  company personnel, including EIs and contractors, who will receive copies of the appropriate material;

e.  the location and dates of the environmental compliance training and instructions Cheniere will give to all personnel involved with construction and restoration (initial and refresher training as the Project progresses and personnel change), with the opportunity for OEP staff to participate in the training session(s);

f.  the company personnel (if known) and specific portion of Cheniere's organization having responsibility for compliance;

g.  the procedures (including use of contract penalties) Cheniere will follow if non-compliance occurs; and

h.  for each discrete facility, a Gantt or PERT chart (or similar project scheduling diagram), and dates for:

 (1)  the completion of all required surveys and reports;

 (2)  the environmental compliance training of onsite personnel;

 (3)  the start of construction; and

 (4)  the start and completion of restoration.

## Compliance Statement

Compliance with elements a through e and g of Condition 7 was documented in CCL Stage III's December 13, 2019 filing in association with Implementation Plan-A – General Conditions. This response is specific to elements 7.f and 7.h.

 f.    CCL Stage III Project Organization

 The CCL Stage III field construction office will have the primary responsibility of ensuring that the construction is performed in compliance with all terms and conditions of the contract documents, including compliance with the environmental mitigation measures required by the Order and by the

Document Accession #: 20220331-5322     Filed Date: 03/31/2022
USCA Case #22-1235     Document #1992104     Filed: 08/08/2023     Page 54 of 148

*Corpus Christi Liquefaction Stage 3 Project*
*FERC Docket No. CP18-512-000*
*Request to Commence Site Preparation Activities*

various federal, state, and local agencies. Overall direction of the Project will be provided from the Houston office. Key personnel are as follows:

| Title | Name | Responsibility |
|---|---|---|
| **Field Office Contacts** | | |
| Vice President, Project Execution | Tony Eaton | Project management |
| VP, Project Development and Engineering | Patrick Ward | Oversight of engineering |
| Senior Director, Project Execution | Jose Dumlao | Oversight of project management |
| Manager, Construction | Allan Campbell | Management of construction site and interface with Bechtel construction management |
| Superintendent, Construction | Jason Walker | Oversees daily operations on the construction site |
| Manager, Quality Assurance/Quality Control | Walt King | Management of overall construction performance with regard to technical quality and compliance with design and specification requirements |
| Environmental Inspector | Richard Guillen | Compliance with environmental conditions |
| Health and Safety Inspector | Phillip Armour | Compliance with safety policies |
| **Houston Office Contacts** | | |
| Manager, Environmental and Regulatory Projects | Joe Moake | Environmental permitting and compliance support and oversight of environmental inspector |
| Manager, Health, Safety and Environmental | Seth Washington | Safety oversight and oversight of safety inspectors |
| Vice President, Environmental, Regulatory Projects, and Managing Counsel | Rina Chang | Environmental and regulatory oversight |
| Senior Vice President, LNG Engineering & Construction | David Craft | Overall management and oversight of construction and engineering activities |
| Vice President, Corpus Christi Operations and General Manager | Ari Aziz | Oversight of operating terminal |

h.    Gantt Chart

An updated project schedule is included in **Attachment 7.h.**

JA049

Document Accession #: 20220331-5322        Filed Date: 03/31/2022

USCA Case #22-1235      Document #1992104      Filed: 05/26/2023      Page 55 of 148

*Corpus Christi Liquefaction Stage 3 Project*
*FERC Docket No. CP18-512-000*
*Request to Commence Site Preparation Activities*

**Condition No. 10**

Cheniere must receive written authorization from the Director of OEP **before commencing construction of any Project facilities.** To obtain such authorization, Cheniere must file with the Secretary documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof).

**Compliance Statement**

A permit table is included in **Attachment 10** and provides the status of authorizations required for the Project.

USCA Case #22-1235     Document #1992104          Filed: 08/26/2025     Page 56 of 148

**Condition No. 15**

**Prior to construction of the Stage 3 LNG Facilities,** CCL Stage III shall file with the Secretary, for review and written approval by the Director of the OEP, groundwater containment and disposal guidelines and practices that will be implemented during construction in areas of known groundwater contamination. CCL Stage III shall develop the groundwater containment and disposal guidelines and practices in consultation with the Texas Commission on Environmental Quality, and its filing shall include documentation of its consultation with Texas Commission on Environmental Quality.

**Compliance Statement**

A copy of the management plan for affected groundwater was provided in CCL Stage III's January 8, 2020 filing for commencement of early works. CCL Stage III herein provides documentation of its completed consultation with Texas Commission on Environmental Quality in **Attachment 15**.

JA051

USCA Case #22-1235    Document #1992104    Filed: 08/26/2022    Page 57 of 148

**Condition No. 25**

**Prior to initial site preparation,** CCL Stage III shall file with the Secretary a schedule and scope of work for a supplemental geotechnical investigation for Trains 5 through 7, remaining portions of Train 4, the LNG tank area, and flare areas.

**Compliance Statement**

A draft geotechnical investigation report was provided in CCL Stage III's December 20, 2019 filing which included details regarding the schedule and scope of work. A final geotechnical report in compliance with Condition 26 will be filed under separate cover.

Document Accession #: 20220331-5322     Filed Date: 03/31/2022

*Corpus Christi Liquefaction Stage 3 Project*
*FERC Docket No. CP18-512-000*
*Request to Commence Site Preparation Activities*

USCA Case #22-1235     Document #1992104     Filed: 09/25/2023     Page 58 of 148

## Condition No. 27

**Prior to construction of final design,** CCL Stage III shall file with the Secretary the following information, stamped and sealed by the professional engineer-of-record registered in Texas:

a. site preparation drawings and specifications;

b. LNG storage tank and foundation design drawings and calculations;

c. LNG terminal structures and foundation design drawings and calculations (including prefabricated and field constructed structures as well as demonstrating the cold box will take all wind loads and that no wind loads will be transmitted from the cold box to the Heavies Removal Scrub Column/Reflux Drum, 01-C-1511/01-V-1511);

d. seismic specifications for procured equipment prior to issuing requests for quotations; and

e. quality control procedures to be used for civil/structural design and construction.

In addition, CCL Stage III shall file, in its Implementation Plan, the schedule for producing this information.

## Compliance Statement

a. Site preparation drawings and specifications for soil stabilization activities are provided in **Attachment 27a.**

b. LNG storage tank and foundation design drawings and calculations will be provided in support of future filings related to construction of the LNG storage tank.

c. LNG terminal structures and foundation design drawings and calculations will be provided in support of future filings.

d. Seismic specifications for procured equipment prior to issuing requests for quotations will be provided in support of future filings.

e. Quality control procedures to be used for civil/structural design and construction were provided in CCL Stage III's December 20, 2019 filing.

Submittal of Attachment 27a is to satisfy a "prior to initial site preparation" condition.  Per the November 2019 Order, written approval from FERC is not required.

USCA Case #22-1235        Document #1992104        Filed: 03/28/2023        Page 59 of 148

**Condition No. 28**

**Prior to initial site preparation,** CCL Stage III shall file with the Secretary the upper limit for total settlement for large flexible foundations and the maximum total edge settlement at the proposed Project area for the LNG tanks that the Controlled Modulus Columns CMC's will be designed to satisfy.

**Compliance Statement**

The upper limit for total settlement for large flexible foundations and the maximum total edge settlement at the proposed Project area for the LNG tanks will be provided in support of future filings related to preparation and construction of the LNG storage tank.

**Condition No. 29**

**Prior to initial site preparation,** CCL Stage III file with the Secretary a detailed analysis that demonstrates external loads exerted by vehicular traffic and construction equipment will not exceed the maximum live load capability of buried pipelines at or adjacent to the Project. The analysis shall be stamped and sealed by the professional engineer-of-record, registered in Texas and shall include the depth of existing buried pipelines and evidence that the maximum load shall be higher than plant construction and operation activities require. In addition, provide construction and operations procedures to demonstrate that the maximum allowable weight will never be exceeded.

**Compliance Statement**

As part of the work requested under Implementation Plan-B, CCL Stage III is proposing to commence utilization of the following authorized temporary facilities:

- Tract 2;

- Tract 7;

- Tract 8; and

- Tract 9

A figure depicting the locations of the above referenced areas and points of access for which compliance with Condition 29 is confirmed is included in **Attachment 29A.**

Access to and from Tracts 7 and 8 will not require any crossings of third-party pipelines. Access to Tract 9 from the Stage 3 LNG Facilities area does not require any crossings of third-party pipelines. Demonstration of compliance with Condition 29 in association with access to and from Tract 2 and Tract 9 (from north and south sides) is provided in **Attachment 29B**.

Submittal of Attachment 29B is to satisfy a "prior to initial site preparation" condition.  Per the November 2019 Order, written approval from FERC is not required.

USCA Case #22-1235     Document #1992104     Filed: 03/28/2023     Page 61 of 148

**Condition No. 30**

**Prior to initial site preparation,** CCL Stage III shall file an overall Project schedule, which includes the proposed stages of the commissioning plan.

**Compliance Statement**

An updated project schedule is included in **Attachment 7.h** of this Implementation Plan.

Document Accession #: 20220331-5322     Filed Date: 03/31/2022

**Condition No. 31**

**Prior to initial site preparation,** CCL Stage III shall file procedures for controlling access during construction.

**Compliance Statement**

A Site Security Plan (SSP) for the Stage 3 project was provided in CCL Stage III's January 14, 2020 filing.

USCA Case #22-1235      Document #1992104

**Condition No. 32**

**Prior to initial site preparation**, CCL Stage III shall file quality assurance and quality control procedures for construction activities.

**Compliance Statement**

A construction quality plan for the Stage 3 project was provided in CCL Stage III's December 20, 2019 filing.

Document Accession #: 20220331-5322    Filed Date: 03/31/2022

USCA Case #22-1235    Document #1992104    Filed: 09/26/2022    Page 64 of 148

*Corpus Christi Liquefaction Stage 3 Project*
*FERC Docket No. CP18-512-000*
*Request to Commence Site Preparation Activities*

**Condition No. 33**

**Prior to initial site preparation,** CCL Stage III shall file its design wind speed criteria for all other facilities not covered by USDOT Pipeline and Hazardous Materials Safety Administration's Letter of Determination PHMSA's LOD to be designed to withstand wind speeds commensurate with the risk and reliability associated with the facilities in accordance with American Society of Civil Engineers ASCE 7-16 or equivalent.

**Compliance Statement**

The Stage 3 LNG facilities (structures, components, equipment and systems) were evaluated by the Pipeline and Hazardous Materials Safety Administration ("PHMSA") in accordance with 49 CFR § 193.2067(b)(2). The wind design category for the LNG Facility which was submitted to PHMSA on March 5, 2019 was inclusive of all relevant facilities for the project and determined in the PHMSA LOD to meet wind speed design requirements. There are no "other facilities not covered" by the PHMSA LOD.

USCA Case #22-1235     Document #1992104          Filed: 03/31/2022     Page 65 of 148

**Condition No. 34**

**Prior to initial site preparation,** CCL Stage III shall develop an Emergency Response Plan (including evacuation) which integrates the CCL Stage III Facilities into the existing plan for the Liquefaction Project and coordinate procedures with the Coast Guard; state, county, and local emergency planning groups; fire departments; state and local law enforcement; and appropriate federal agencies. This plan shall include at a minimum:

a. designated contacts with state and local emergency response agencies;

b. scalable procedures for the prompt notification of appropriate local officials and emergency response agencies based on the level and severity of potential incidents;

c. procedures for notifying residents and recreational users within areas of potential hazard;

d. evacuation routes/methods for residents and public use areas that are within any transient hazard areas along the route of the LNG marine transit;

e. locations of permanent sirens and other warning devices; and

f. an "emergency coordinator" on each LNG carrier to activate sirens and other warning devices.

CCL Stage III shall notify the FERC staff of all planning meetings in advance and shall report progress on the development of its Emergency Response Plan at **3-month intervals.**

**Compliance Statement**

An Emergency Response Plan ("ERP") for construction of the Stage 3 Project was provided in CCL Stage III's January 14, 2020 filing. No updates have been made to the ERP since the January 14, 2020 filing.

Document Accession #: 20220331-5322          Filed Date: 03/31/2022

**Condition No. 35**

**Prior to initial site preparation,** CCL Stage III shall file a Cost-Sharing Plan identifying the mechanisms for funding all Project-specific security/emergency management costs that shall be imposed on state and local agencies. This comprehensive plan shall include funding mechanisms for the capital costs associated with any necessary security/emergency management equipment and personnel base. CCL Stage III shall notify FERC staff of all planning meetings in advance and shall report progress on the development of its Cost-Sharing Plan **at 3-month intervals.**

**Compliance Statement**

Demonstration of compliance with Condition 35 was filed by CCL Stage III on December 13, 2019.

Document Accession #: 20220331-5322    Filed Date: 03/31/2022
USCA Case #22-1235    Document #1992104    Filed: 03/28/2023    Page 67 of 148

**Condition No. 42**

**Prior to construction of final design,** CCL Stage III shall file a plot plan of the final design showing all major equipment, structures, buildings, and impoundment systems.

**Compliance Statement**

CCL Stage III herein provides a plot plan showing all major equipment, structures, buildings, and impoundment systems in **Attachment 42.**

Document Accession #: 20220331-5322     Filed Date: 03/31/2022

**Certificate of Service**

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Houston, Texas this 31st day of March, 2022

*/s/ Akayla Broussard*

Akayla Broussard
Corpus Christi Liquefaction Stage III, LLC

Corpus Christi Liquefaction Stage III, LLC
Stage 3 Project

Docket No. CP18-512-000

Implementation Plan B
(Request to Commence Site Preparation Activities)

Submitted to FERC March 31, 2022

**ATTACHMENT 7.h**

Document Accession #: 20220331-5322    Filed Date: 03/31/2022
USCA Case #22-1235    Document #1992104    Filed: 03/28/2023    Page 70 of 148

**Project Schedule**



| Task Name | 2022 J F M A M J J A S O N D | 2023 J F M A M J J A S O N D | 2024 J F M A M J J A S O N D | 2025 J F M A M J J A S O N D | 2026 J F M A M J J A S O N D | 2027 J F M A M J J A S O N D |
|---|---|---|---|---|---|---|
| Mobilization | ★ | | | | | |
| Full Construction Trains 1-7 | | | | | | |
| Commissioning Trains 1-7 | | | | | | |

**Notes:**
1) Early Works mobilization occurred in January 2020.
2) Environmental compliance training commenced in association with early works activities in January 2020.
The compliance training program continues throughout the duration of construction.

JA065

Document Accession #: 20220331-5322     Filed Date: 03/31/2022

Corpus Christi Liquefaction Stage III, LLC
Stage 3 Project

Docket No. CP18-512-000

Implementation Plan B
(Request to Commence Site Preparation Activities)

Submitted to FERC March 31, 2022

**ATTACHMENT 10**

| Agency and Agency Contact | Permit/Approval/Consultation | Issuance | Comments |
|---|---|---|---|
| Federal Energy Regulatory Commission | Sections 3 and 7 Application – Natural Gas Act FERC Docket Nos. CP18-512-000 & CP18-513-000 | November 22, 2019 | Expiration date is November 2024. Request for extension filed December 7, 2021. |
| Federal Energy Regulatory Commission | Authorization to Proceed with Early Works | January 10, 2020 | Authorization to proceed with early works within the Stage3 LNG Facilities including: pile testing activities, soil stabilization tests, andtesting of dewatering techniques. |
| Federal Energy Regulatory Commission | Authorization to Proceed with Construction of Sinton Compressor Unit No. 1 | January 17, 2020 | Authorization granted toCCPL to proceed with construction of Unit No.1 at the Sinton Compressor Station. |
| Federal Energy Regulatory Commission | Authorization to Proceed with Road Improvements for Early Works | February 14, 2020 | Authorization to proceed with road improvements to the existing interior roads within temporary workspace previously reviewed and approvedin association with the CCL Project (CP12- 507-000). |
| Federal Energy Regulatory Commission | Authorization to Commence In-service | December 18, 2020 | Authorization granted toCCPL to place into service the Unit 1 expansion at the existing Sinton Compressor Station. |
| Federal Energy Regulatory Commission | Authorization to Proceed with Expanded Early Works Scope | March 9, 2022 | Authorization to proceed with additional test pad and temporary construction drainage within the Stage 3 LNG Facilities. |
| U.S. Fish & Wildlife Service | Section 7 Endangered Species Act Consultation/Clearance; Migratory Bird Consultation; Fish and Wildlife Coordination Act | November 20, 2019 | |
| Texas Parks and Wildlife Department | State Threatened and Endangered Species | September 24, 2018 | |
| NOAA Fisheries | Essential Fish Habitat; Endangered Species Act Aquatic Threatened and Endangered Species; Marine Mammal Protection Act; Fish and Wildlife Coordination Act  NMFS Consultation | May 28, 2015 for Essential Fish Habitat   August 8, 2019 for Endangered Species Act | |

JA067

| Agency and Agency Contact | Permit/Approval/Consultation | Issuance | Comments |
|---|---|---|---|
| USCG | Waterway Suitability Assessment | August 15, 2018 | |
| EPA | Hydrostatic Test Water Discharge | To be obtained prior to discharge | |
| U.S. Department of Energy | Natural Gas Act, Section 3 Application for Authorization to Export LNG | November 9, 2018 for FTA nations; February 10, 2020 for non-FTA nations. October 21, 2020 extension for FTA and non-FTA through December 2050. | |
| Federal Aviation Administration | Determination of No Hazard to Air Navigation (14 CFR Part 77) | March 8, 2019 | Updated determinations received from FAA March 18, 2022. |
| Railroad Commission of Texas | Water Quality Certification under Section 401 | June 29, 2018 | |
| | Hydrostatic Test Water Discharge Permit | To be obtained prior to discharge | |
| | Coastal Management Plan Consistency Determination | June 29, 2018 | Stage 3 Pipeline |
| TCEQ | Stage 3 LNG Facilities Prevention of Significant Deterioration Permit Amendment | June 28, 2019. September 22, 2020 extension of time. | Per the EOT, new "start by date" for construction is June 28, 2022. |
| | Stage 3 LNG Facilities Greenhouse Gas ("GHG") Permit | June 28, 2019. September 22, 2020 extension of time. | Per the EOT, new "start by date" for construction is June 28, 2022. |
| | Stage 3 LNG Facilities Title V Permit | Anticipated 2022 | |
| | Sinton Compressor Station (minor permit) | August 24, 2018 | |
| TGLO | Coastal Management Plan Consistency Determination | January 23, 2019 | Stage 3 LNG Facilities |
| Texas Historical Commission | Section 106 National Historic Preservation Act Consultation, Clearance | November 14, 2017 | Concurrence for minor pipeline workspaces to be obtained prior to construction. |

JA068

Corpus Christi Liquefaction Stage III, LLC
Stage 3 Project

Docket No. CP18-512-000

Implementation Plan B
(Request to Commence Site Preparation Activities)

Submitted to FERC March 31, 2022

**ATTACHMENT 29A**



CE C:\$WorkingFolder\Projects\Corpus Christi Liquefaction\Task\Attachment B\Attachment B-2.dwg Tue, Mar 29 2022 @ 3:00 pm

MILES

0
0.25
0.5

TRACTS CURRENTLY AUTHORIZED FOR PERMANENT USE

TRACTS CURRENTLY AUTHORIZED FOR TEMPORARY USE

POINTS OF ACCESS FOR WHICH COMPLIANCE W/ CONDITION 29 IS CONFIRMED (SEE ATTACHMENT 29)

AUTHORIZED ACCESS ROADS

**STAGE 3 WORKSPACES**

CORPUS CHRISTI LIQUEFACTION PROJECT
SAN PATRICIO COUNTY, TEXAS

JA070

| CCL TRACTS | |
|---|---|
| TRACT # | ~ACRES |
| 1 | 337.38 |
| 2 | 110 |
| 3 | 12 |
| 4 | 25 |
| 5 | 10 |
| 6 | 36.8 |
| 7 | 24 |
| 8 | 4.7 |
| 9 | 53 |
| 10 | 16.7 |
| 11 | 6.7 |
| 12 | 151 |
| 13 | 10.9 |
| 14 | 28.26 |
| 15 | 6.5 |
| 16 | 10 |
| 17 | 81 |
| 18 | 52 |
| 19 | 385 |
| 20 | 200 |
| 21 | 20.8 |
| 22 | 4 |
| 23 | 3.5 |

03/28/2023 Document #7,093,134
Filed 03/28/2023    Page 75 of 148

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

**Reply Refer To:**
OEP/DG2E/Gas Branch 2
Corpus Christi Liquefaction Stage III, LLC
Docket No. CP18-512-000

April 28, 2022

VIA FERC Service

Akayla Broussard
Environmental and Regulatory Projects
Corpus Christi Liquefaction Stage III, LLC
Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, TX 77002

**RE**:    **Authorization to Proceed with Soil Stabilization and Associated Activities**

Dear Ms. Broussard:

I grant your March 31, 2022 request, as supplemented on April 5, 13, 20, 22, 26, and 27, 2022, for Corpus Christi Liquefaction Stage III, LLC (CCL) to proceed with site preparation activities described in Implementation Plan B at the Corpus Christi Liquefaction Stage 3 Project.

These filings included the information necessary to meet the conditions of the Federal Energy Regulatory Commission's November 22, 2019 *Order Granting Authorization Under Sections 3 and 7 of the Natural Gas Act* (Order) to CCL, in the above- referenced docket.   We have confirmed the receipt of all federal authorizations relevant to the approved activities herein.

I remind you that CCL must comply with all applicable remaining terms and conditions of the Order.  If you have any questions regarding this approval, please contact Nancy Fox-Fernandez at (202) 502-8559 or John E. Bugno II at (202) 502-8605.

Sincerely,

A. Eric Howard, Chief
Gas Branch 2
Division of Gas – Environment and
    Engineering

JA071

Document Accession #: 20220428-3065    Filed Date: 04/28/2022

cc:    VIA Electronic Mail

Mary McDaniel
Director, PHMSA Pipeline Safety Southwest Region Office
U.S. Department of Transportation
mary.mcdaniel@dot.gov

Sentho White
Director, PHMSA OPS Engineering and Research
U.S. Department of Transportation
sentho.white@dot.gov

Document Accession #: 20220606-5276          Filed Date: 06/06/2022

UNITED STATES OF AMERICA
DEPARTMENT OF ENERGY
FEDERAL ENERGY REGULATORY COMMISSION

| | | | |
|---|---|---|---|
| IN THE MATTER OF | ) | | |
| | ) | | |
| Corpus Christi Liquefaction Stage III, LLC | ) | Docket Nos. | CP18-512-000 |
| Corpus Christi Liquefaction, LLC | ) | | |
| | ) | | |
| Cheniere Corpus Christi Pipeline, LP | ) | | CP18-513-000 |
| | ) | | |

**Request for Rehearing of Public Citizen and Sierra Club**

When FERC approved the Corpus Christi LNG Stage III project and associated pipeline, in November 2019, FERC required that the facilities be placed in service within five years, by November 22, 2024.[1] But now, on May 6, 2022, FERC has granted a request to extend this deadline by 31-months. Public Citizen and Sierra Club request rehearing of this decision. The applicants (collectively, "Corpus Christi") have failed to show good cause for their delay *or* that the findings underlying the initial authorization remain valid. Moreover, here, FERC's purported basis for finding good cause—changes in the global LNG market—directly undermines the conclusion that facts underlying the approval have not gone stale.

For these reasons and other reasons, as further explained below, Public Citizen and Sierra Club move to intervene regarding this request for an extension, and protest that request.

## I.    Statement of Issues

Pursuant to 18 C.F.R. § 385.713(c)(1), we offer the following concise statements of

---

[1] *Corpus Christi Liquefaction Stage III, LLC, Corpus Christi Liquefaction, LLC, and Cheniere Corpus Christi Pipeline, LP*, 169 FERC ¶ 61,135 (Nov. 22, 2019).

alleged errors. These errors are explained in greater detail below.

1.  In deciding whether to modify a certificate or authorization order to extend a completion
    and in-service deadline, FERC has both the authority and obligation to revisit the findings
    of the initial certificate order. *See, e.g.,* 15 U.S.C. § 717*o*. Commissioner Danly's
    concurrence (arguing that FERC lacks authority to revisit these determinations at all) and
    the majority's order (arguing that FERC could only revisit these issues where
    circumstances had changed) both misstate the scope of FERC's legal authority and
    obligations.

2.  The record does not support FERC's conclusion that Corpus Christi demonstrated good
    cause for a delay.

    a.  Until recently, FERC only extended certificates where the applicant was *prevented*
        from meeting the initial deadline. *Constitution Pipeline Co.*, 165 FERC ¶ 61,081
        P14, P9 n.32 (2018)

    b.  Here, Corpus Christi chose not to commence construction due to market
        uncertainty, but no record evidence supports the conclusion that Corpus Christi
        was prevented from or unable to commence construction.

    c.  FERC should not interpret good cause to encompass changes in market
        circumstances. If market circumstances have in fact changed, then facts pertinent
        to the overall public interest determination have necessarily changed: a finding of
        good cause predicated on market circumstances entails the conclusion that the
        prior findings are stale.

3. FERC erred by approving the extension request without additional NEPA review.

   a. Granting the extension is a major federal action that requires its own NEPA analysis; although FERC could have tiered off the prior analysis, doing so would require FERC to re-evaluate that analysis's conclusions, rather than merely looking to changed circumstances. *Pit River Tribe v. U.S. Forest Serv.,* 469 F.3d 768, 784 (9th Cir. 2006).

   b. Alternatively, the NEPA supplementation framework controls whether FERC could rely on the prior analysis. Here, multiple changed circumstances demonstrate that supplementation was required. *People Against Nuclear Energy v. U.S. Nuclear Regulatory Comm'n*, 678 F.2d 222, 234 (D.C. Cir. 1982), *rev'd on other grounds sub nom. Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766 (1983).  Here, supplementation was required because of new information regarding carbon capture and sequestration, the status of sensitive species, and energy markets.

4. FERC gets it backwards in concluding that "A determination as to whether additional NEPA analysis is needed cannot be made prior to determining whether further ESA consultation is required and obtaining the results of such consultation." Order P19. A consideration of changed circumstances, including NEPA analysis, informs the determination of whether further ESA consultation is required, not the other way around.

Document Accession #: 20220606-5276      Filed Date: 06/06/2022

## II.    Argument

### A.    FERC Can and Must Re-evaluate the Original Orders' Findings

Commissioner Danly's concurrence asks what authority permits FERC to revisit prior

determinations when evaluating a request to extend a certificate. A better question is what

authority would permit FERC to grant an extension *without* revisiting these prior findings. A

grant of extension has much the same effect as a new certificate. No project developer is entitled

to an extension. *See* 18 C.F.R. § 385.2008 (where good cause is shown, FERC "may" extend

time). And in general, where a project is behind schedule and requests an extension, if FERC does

not grant an extension request, the project at issue will not be able to go forward. Thus, a decision

to grant the extension request is, like issuance of the initial authorization, a decision to enable a

project that would not otherwise be built or enter operation to move forward. Accordingly, in

granting an extension request, FERC cannot simply point to the fact that it approved the project

previously: FERC must confirm the continuing validity of the findings that supported that prior

approval.

Especially in light of Commissioner Danly's concerns, FERC should specify the statutory

authority FERC exercises when applying FERC Rule 2008[2] to extend a certificate or decide

whether and how to do so. One potential source of authority is 15 U.S.C. § 717*o*, which grants

FERC the power to "amend … orders … as it may find necessary or appropriate." But regardless

of the statutory authority invoked, we are not aware of any principle that would permit FERC to

extend a certificate deadline but would not permit (or, indeed, *require*) FERC to consider the

validity of the certificate's underlying findings in deciding whether to do so. Consideration of an

---

[2] 18 C.F.R. § 385.2008(a).

extension request is not analogous to the situation in *United States v. Seatrain Lines*, 329 U.S. 424, 427 (1947), in which an agency reopened proceedings on its own initiative to revisit and ultimately vacate a final order.[3] Thus, we disagree with both Commissioner Danly's concurrence (which asserts that FERC cannot ever revisit any "public convenience and necessity determinations") and with the majority (which asserts that FERC will only reconsider prior determinations where there is evidence of changed circumstances or staleness). Both viewpoints are mistaken insofar as they contend that FERC lacks the legal authority to revisit prior determinations (in all or some circumstances). And neither justifies a blanket refusal to exercise that authority.

Public Citizen and Sierra Club's opposition to the extension request is not an out-of-time request for rehearing of the original certificate—we are not asking FERC to vacate the original certificate as improvidently issued. Rather, we argue that what's good for the goose is good for the gander: FERC cannot issue a new order reconsidering one part of a prior order (the deadline) without reconsidering other elements of that prior order as well.

### B.    FERC's Conclusion that Corpus Christi Has Demonstrated Good Cause for an Extension Is Arbitrary

Until recently, where FERC had found good cause for an extension of a certificate's in-service deadline, it was almost universally because the applicant had been *prevented* from construction; *i.e.*, because some external factor made it so the applicant *could not* meet the deadline. *See* Black's Law Dictionary, Prevent (2019) ("to stop from happening; to hinder or

---

[3] And whereas *Seatrain Lines* held that the certificate issued by the Interstate Commerce Commission was not an "order" of the type that that agency had statutory authority to modify, *id.* at 432 (citing 49 U.S.C. § 915(c)), here, that would prove too much: the question only arises if FERC does have authority to modify the certificate, so as to modify the deadline.

Document Accession #: 20220606-5276     Filed Date: 06/06/2022

impede"), Merriam-Webster, Prevent (2022) ("to keep from happening or existing"). Typically, this was inability to obtain a permit that was essential to construction. *Constitution Pipeline Co.*, 165 FERC ¶ 61,081 P9 n.32 (collecting FERC decisions).

This is the appropriate standard, and FERC does not purport to depart from it here: FERC claims that good cause exists where an applicant was "prevented" from meeting a deadline, Order P8, and that Corpus Christi was "prevented" from doing so here, P10. But FERC's conclusion that this standard was satisfied here was arbitrary.

Here, Corpus Christi failed to make (much less support) any specific argument that it was prevented from meeting the deadline. There is no statement of the form "We could not X because Y," such as "we could not complete this stream crossing because we lacked the permit for doing so," or "we could not build this structure because the raw materials were unavailable." Corpus Christi's application makes a general, passing reference to "adverse economic and logistical conditions," but does not identify any logistical concern (e.g., whether and how public health concerns prevented construction of X aspect of the project during Y dates). There are simply no particular facts in the application or the order to support the conclusion that, even if Corpus Christi had wanted to, Corpus Christi would have been unable to proceed on the approved schedule, or with a delay of less than the 31 months for which Corpus Christi now seeks an extension.

Instead of discussing logistical issues, Corpus Christi's application quickly pivots to the assertion that "the COVID-19 pandemic caused significant impact to global markets."[4] This change in market conditions may have impacted the *wisdom* of proceeding with the project, but

---

[4] Extension Application at 1-2.

nothing in the application or order demonstrates that it impacted Corpus Christi's *ability* to do so. The impact to global markets does not support the conclusion that Corpus Christi was prevented from meeting the deadline. Coupled with the absence of evidence of logistical impediments, this means that FERC's conclusion that Corpus Christi was prevented from meeting the deadline is unsupported.

Finally, although the order here rests on an unsupported finding that Corpus Christi was "prevented" from meeting the deadline, on rehearing, FERC should not relax the good cause standard to find good cause due to a change in market conditions that falls short of preventing such compliance. If an applicant were to demonstrate a change in market conditions that could plausibly justify failure to proceed with a project, the applicant would merely be jumping out of the frying pan and into the fire: the same facts that constituted good cause would also demonstrate that the findings underlying the initial certificate were stale.[5]

FERC's discussion of the COVID-19 pandemic here demonstrates this issue. Corpus Christi argues that the arrival of COVID-19 caused a change in global markets (which Corpus Christi concluded warranted slowing or pausing development), and Corpus Christi effectively argues that the world's management of COVID-19 constitutes another change (which Corpus Christi concluded warrants proceeding with the project). But there is no reason to assume that this second change constitutes a reversion to the pre-COVID-19 conditions that underlay FERC's initial approval. Instead, this is yet another change in yet another new direction, as demonstrated by the evidence FERC cites here. In arguing for a post-COVID renewal of global LNG demand,

---

[5] That is, even if FERC contends that will only revisit the findings of the initial approval in the face of changed circumstances, *contra* Part II.A *supra*, these market developments would constitute such a change.

Document Accession #: 20220606-5276     Filed Date: 06/06/2022

FERC points to the recent United States-European Union Task Force to Reduce Europe's Dependence on Russian Fossil Fuels, Order P11 n.31, but FERC ignores the fact that this task force agreement only calls for European demand for LNG through 2030, *i.e.*, for the first three years of the Corpus Christi Stage III project's planned 20+ years of operation. More broadly, in response to Russia's invasion of Ukraine, rather than reverting to the pre-COVID status quo, global energy markets are now working to transition away from fossil fuels, including LNG, as quickly possible.

Accordingly, we encourage FERC to follow *Chestnut Ridge Storage*, 139 FERC ¶ 61149, 62134 P13 (2012), and to interpret *Chestnut Ridge* to mean that where there are steps that an applicant *could* be taking to proceed with a project but where the applicant chooses not to do so, there is not good cause for an extension. If FERC instead interprets good cause to encompass market setbacks that do not actually prevent construction, FERC must recognize that those same setbacks constitute changed circumstances that require FERC to re-evaluate its initial findings of market support and public benefit.

### C.    FERC Erred by Approving the Extension Request Without NEPA Analysis

As discussed above, FERC could not approve the extension request without addressing whether the prior determinations remain valid. In the NEPA context, this is because granting the extension request for a project that has not yet entered operation—indeed, that has only minimally, if at all, started construction—is itself a major federal action requiring NEPA review. *See Pit River Tribe v. U.S. Forest Serv.,* 469 F.3d 768, 784 (9th Cir. 2006) (extension of leases that would have otherwise expired was major federal action requiring NEPA analysis). The decision of whether or not to approve the extension request has significant environmental consequences: as a practical matter, if the extension request is denied, the adverse impacts caused

by the Corpus Christ Stage III project will not occur. Although FERC could have "tiered" off the original NEPA analysis in evaluating the extension request, tiering requires FERC to affirm the continuing adequacy and validity of the prior analysis—when tiering off an old analysis, FERC cannot limit its new analysis to changed circumstances.[6]

In the alternative, the staleness of the prior analysis, and thus its adequacy, must be evaluated under the NEPA supplementation framework. *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077, 1093 (9th Cir. 2020). Here, Public Citizen and Sierra Club identified been new developments regarding climate change, endangered species, and impacts on domestic gas prices and supply.

On climate change and mitigation thereof, the extension order provides no discussion whatsoever of the information we provided. This is another instance of FERC failing to apply the standard it purports to announce. FERC appears to agree that where the "facts underlying the Authorization's conclusions … significantly change[]," FERC must revisit those conclusions. Order P16. But rather than address Public Citizen and Sierra Club's arguments that that such factual changes have occurred here, FERC asserts that because Corpus Christi only requested a change in the timing of the project, FERC need not even consider such arguments.

For example, Public Citizen and Sierra Club argued that *even if*, at the time the Authorization Order was issued, FERC was unable "to assess potential GHG-related impacts attributable to [the Stage 3] project," or "to determine the significance of the Project's

---

[6] *See also N. Alaska Env't Ctr. v. U.S. Dep't of the Interior,* 983 F.3d 1077, 1091 (9th Cir. 2020) ("*Pit River Tribe* illustrates that the adequacy of analysis in previous NEPA documents for the present action may influence whether we construe those NEPA documents as covering the present action. Relatedly, *Pit River Tribe* shows that adequacy may remain relevant even after the statute of limitations has run.").

contribution to climate change,"[7] new, post-Authorization facts called that conclusion into question. These new facts include federal re-adoption of a modeling tool, the social cost of carbon protocol, and announcement of federal greenhouse gas emission reduction targets—two issues where the facts are now clearly different than facts specifically pointed to in the prior review.[8] Thus, these developments specifically contradict the extension order's conclusion that none of the "facts underlying the Authorization's conclusion have … significantly changed." Order P16. At a minimum, FERC was required to explain *why* it did not view these changes as significant. FERC did not even purport to do so.

Similarly, although Corpus Christi has not proposed *to FERC* a change in the nature of the project, Corpus Christi has *publicly* announced its intention to change the nature of the project to incorporate carbon capture and sequestration.[9] And even if Corpus Christi had not made this announcement, other LNG proposals have provided strong evidence of the availability and feasibility of carbon capture for LNG projects, a fact that was not present when FERC previously analyzed appropriate mitigation.[10] But FERC offers no explanation as to why these factual developments do not require a supplemental NEPA analysis or otherwise call for reevaluation of FERC's prior conclusions.

---

[7] EA at 235–36.

[8] *Id.*

[9] Bloomberg, U.S. LNG Players Tout Carbon Capture in Bid to Boost Green Image (May 5, 2021), *available at* https://www.bloomberg.com/news/articles/2021-05-05/u-s-lng-players-tout-carbon-capture-in-bid-to-boost-green-image.

[10] Application of Rio Grande LNG, LLC for Limited Amendment to NGA Section 3 Authorization, Resource Report 9A (Nov. 17, 2021), Accession No. 20211117-5060.

**D.    FERC Cannot Postpone Evaluation of New Information Regarding Newly-Listed Species Until After Endangered Species Act Consultation**

The Order asserts that "A determination as to whether additional NEPA analysis is needed cannot be made prior to determining whether further ESA consultation is required and obtaining the results of such consultation." Order P19. FERC offers no authority to support this conclusion, nor could it. FERC routinely performs NEPA analysis of impacts on sensitive species prior to completion of the Endangered Species Act consultation process. The requirements of NEPA and the Endangered Species Act overlap but are distinct: even if, for example, the National Marine Fisheries Service were to conclude that consultation was not required, FERC would still be required to take a hard look at impacts to these species.

Here, the Order does not assert that the Corpus Christi Stage III project will not affect newly-listed species, or that the prior analysis of impacts to these species—conducted prior to listing—remains valid and adequate despite newly-available information and determinations regarding these species' characteristics and importance. The only justification given for refusing to consider or revisit impacts on these species is the flawed assertion that FERC need not do so prior to determining whether further consultation is required. Because the only rationale offered is mistaken, FERC's treatment of newly-listed species is arbitrary.

## III.    Conclusion

For the reasons stated above, Public Citizen and Sierra Club hereby request rehearing of FERC's May 6, 2022 order extending the deadlines in these dockets, and that FERC rescind those orders. Corpus Christi's request for an extension should have been denied, or in the alternative, could not have been approved without additional analysis and process beyond what FERC provided here.

Respectfully submitted June 6, 2022

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Sierra Club*

*/s/ Tyson Slocum*
Tyson Slocum, Energy Program Director
Adrian Shelley, Director, Public Citizen Tex.
Public Citizen, Inc.
309 E 11th Street, Suite 2
Austin, Texas 78701
512-477-1155
tslocum@citizen.org
ashelley@citizen.org
*For Public Citizen*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Oakland, CA June 6, 2022.

_____

Nathan Matthews

Senior Attorney

Sierra Club

2101 Webster Street, Suite 1300

Oakland, CA 94612

415-977-5695

nathan.matthews@sierraclub.org



Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, Texas 77002
phone: 713.375.5000
fax: 713.375.6000

July 1, 2022

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Re:     **Corpus Christi Liquefaction, LLC; Stage 3 Project**
        **Docket No. CP18-512-000**
        **Monthly Construction Report for May 2022**

Dear Ms. Bose:

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Stage 3 Project").

Pursuant to Condition 9 of the Order, Corpus Christi Liquefaction, LLC is herein submitting its monthly construction progress report for the period May 2022.

Should you have any questions about this filing, please feel free to contact the undersigned at (713) 375-5000.

Thank you,

/s/ *Akayla Broussard*

*Akayla Broussard*
*Environmental and Regulatory Projects*
*Corpus Christi Liquefaction, LLC*

cc:     Ms. Nancy Fox-Fernandez – Federal Energy Regulatory Commission
        Mr. Steven Kusy – Federal Energy Regulatory Commission
        Ms. Janna Romaine Chesno – Cheniere Energy, Inc.
        Ms. Lisa Tonery – Orrick, Herrington & Sutcliffe, LLP

**CORPUS CHRISTI LIQUEFACTION STAGE 3 PROJECT**

**Corpus Christi, Texas**

**MONTHLY PROGRESS REPORT**
**MAY 2022**
**FERC DOCKET NO. CP18-512-000**

Corpus Christi Liquefaction Stage 3 Project
May 2022 Monthly Progress Report

**Table of Contents**

1.0    Executive Summary ................................................................................................................ 3

2.0    Project Highlights .................................................................................................................. 3

3.0    Environmental, Safety, and Health Progress ........................................................................ 3

4.0    Schedule ................................................................................................................................. 3

5.0    Construction ........................................................................................................................... 4

6.0    Permitting and Environmental .............................................................................................. 5

7.0    Progress Photos ..................................................................................................................... 6

JA088

Document Accession #: 20220701-5408     Filed Date: 07/01/2022

Corpus Christi Liquefaction Stage 3 Project
May 2022 Monthly Progress Report

## 1.0   Executive Summary

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Stage 3 Project"). CCL Stage III received FERC authorization to proceed with early works activities within the Stage 3 LNG Facilities on January 10, 2020, February 14, 2020, and March 9, 2022. On April 28, 2022, CCL Stage III received FERC approval to proceed with site preparation activities for the Stage 3 Project.

This report covers activities for the Stage 3 Project during the month of May 2022.

## 2.0   Project Highlights

During the month of May, CCL Stage III's contractor continued the early works activities referenced above and commenced site preparation works including excavation, backfill and soil stabilization. Road improvements, drainage work and mobilization of temporary facilities, equipment and personnel continued during the reporting period. CCL Stage III's contractor also continued onboarding and training of its staff and subcontractors.

## 3.0   Environmental, Safety, and Health Progress

|  | Near Miss | | First Aid | | Recordable | | Lost Time | |
|---|---|---|---|---|---|---|---|---|
|  | Month | ITD[1] | Month | ITD[1] | Month | ITD[1] | Month | ITD[1] |
| Bechtel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Subcontractor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

1.   ITD = Inception to Date.

## 4.0   Schedule

There are no changes to the construction schedule.

JA089

USCA Case #22-1235     Document #1994110     Filed: 04/28/2023     Page 95 of 148

Rio Grande LNG, Liquefaction Stage 3 Project
May 2022 Monthly Progress Report

## 5.0 Construction

| Area | Construction Activities in May | Planned Work for June |
|---|---|---|
| Liquefaction Trains Area | • Continued mobilization of construction personnel and equipment.<br>• Continued mobilization of temporary facilities in laydown area.<br>• Commenced acceptance of materials to support road improvements and enabling works.<br>• Commenced cut activities in Train 1 footprint.<br>• Commenced soil stabilization in laydown and Train 4 areas. | • Continue to recruit and mobilize construction personnel and equipment to support ramp up of activities.<br>• Continue cut activities in the Train 1 footprint and commence work in the OSBL footprints.<br>• Continue soil stabilization activities in the Train 4 footprint and laydown areas.<br>• Continue enhancement of temporary facilities in laydown area.<br>• Commence backfill activities in Zone 2 in preparation for wick drain operations. |
| LNG Tank | None. | None. |
| Access Roads | None. | None. |
| Other | None. | None. |

4

JA090

Document Accession #: 20220701-5408    Filed Date: 07/01/2022

Corpus Christi Liquefaction Stage 3 Project
May 2022 Monthly Progress Report

## 6.0  Permitting and Environmental

No updates to any environmental permits or the Emergency Response Plan for project construction were made during the reporting period.

**Summary of Problems, Non-Compliances, and Corrective Actions**

| Date | Description |
|------|-------------|
| None. | |

**Non-Compliance and Corrective Actions:**
- No non-compliance issues were observed this reporting period.

**Agency Contacts/Inspections**

| Agency | Name | Date | Location/Activity |
|--------|------|------|-------------------|
| None. | | | |

JA091

Document Accession #: 20220701-5408    Filed Date: 07/01/2022

Corpus Christi Liquefaction Stage 3 Project
May 2022 Monthly Progress Report

## 7.0  Progress Photos



Soil mixing within authorized permanent workspace.



Site preparation in LNG facilities area.

JA092



Soil mixing activities in LNG facilities area.



Test frame for compression load testing.

JA093



Horizontal wick drain installations in Train 7 test pad.



Surcharge fill at Train 7 test pad.

JA094

**Certificate of Service**

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Houston, Texas this 1st day of July 2022.

*/s/ Akayla Broussard*

*Akayla Broussard*
*Corpus Christi Liquefaction, LLC*

JA095

180 FERC ¶ 62,009
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Corpus Christi Liquefaction Stage III, LLC       Docket Nos. CP18-512-002
Corpus Christi Liquefaction, LLC

Cheniere Corpus Christi Pipeline, LP       CP18-513-002

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(July 7, 2022)

Rehearing has been timely requested of the Commission's order issued on May 6, 2022, in this proceeding. *Corpus Christi Liquefaction Stage III, LLC*, 179 FERC ¶ 61,087 (2022). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 15 U.S.C. § 717r(a); 18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 15 U.S.C. § 717r(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 15 U.S.C. § 717r(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

JA096

USCA Case #22-1235     Document #1992104     Filed: 03/28/2023     Page 102 of 148



Cheniere Energy, Inc.
700 Milam Street, Suite 1900
Houston, Texas 77002
phone: 713.375.5000
fax: 713.375.6000

September 23, 2022

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Re:     **Corpus Christi Liquefaction, LLC; Stage 3 Project**
        **Docket No. CP18-512-000**
        **Monthly Construction Report for August 2022**

Dear Ms. Bose:

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Stage 3 Project").

Pursuant to Condition 9 of the Order, Corpus Christi Liquefaction, LLC is herein submitting its monthly construction progress report for the period August 2022.

Should you have any questions about this filing, please feel free to contact the undersigned at (713) 375-5000.

Thank you,

/s/ *Akayla Broussard*

*Akayla Broussard*
*Environmental and Regulatory Projects*
*Corpus Christi Liquefaction, LLC*

cc:     Ms. Nancy Fox-Fernandez – Federal Energy Regulatory Commission
        Mr. Steven Kusy – Federal Energy Regulatory Commission
        Ms. Janna Romaine Chesno – Cheniere Energy, Inc.
        Ms. Lisa Tonery – Orrick, Herrington & Sutcliffe, LLP

JA097

**CORPUS CHRISTI LIQUEFACTION STAGE 3 PROJECT**

**Corpus Christi, Texas**

**MONTHLY PROGRESS REPORT**
**AUGUST 2022**
**FERC DOCKET NO. CP18-512-000**

**Table of Contents**

1.0    Executive Summary ..................................................................................................... 3

2.0    Project Highlights ....................................................................................................... 3

3.0    Environmental, Safety, and Health Progress ............................................................. 3

4.0    Schedule ...................................................................................................................... 3

5.0    Construction ................................................................................................................ 4

6.0    Permitting and Environmental .................................................................................... 6

7.0    Progress Photos ........................................................................................................... 7

JA099

Document Accession #: 20220923-5043          Filed Date: 09/23/2022

Corpus Christi Liquefaction Stage 3 Project
August 2022 Monthly Progress Report

## 1.0  Executive Summary

On November 22, 2019, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order Issuing Authority Under Section 3 and Section 7(c) of the Natural Gas Act ("NGA") ("Order") granting the necessary authorization to Corpus Christi Liquefaction ("CCL") for the construction and operation of an expansion of the Corpus Christi Liquefaction Project ("Stage 3 Project"). CCL received FERC authorization to proceed with early works activities within the Stage 3 LNG Facilities on January 10, 2020, February 14, 2020, and March 9, 2022. On April 28, 2022, CCL received FERC approval to proceed with site preparation activities for the Stage 3 Project.

This report covers activities for the Stage 3 Project during the month of August 2022.

## 2.0  Project Highlights

During the month of August, CCL's contractor continued the early works activities referenced above and site preparation works including excavation, backfill and soil stabilization. Road improvements, drainage work and mobilization of temporary facilities, equipment and personnel continued during the reporting period. CCL's contractor also continued onboarding and training of its staff and subcontractors.

## 3.0  Environmental, Safety, and Health Progress

|  | Near Miss | | First Aid | | Recordable | | Lost Time | |
|---|---|---|---|---|---|---|---|---|
|  | Month | ITD[1] | Month | ITD[1] | Month | ITD[1] | Month | ITD[1] |
| Bechtel | 0 | 16 | 0 | 4 | 0 | 0 | 0 | 0 |
| Subcontractor | 4 | 12 | 0 | 1 | 0 | 0 | 0 | 0 |
| Total | 4 | 28 | 0 | 5 | 0 | 0 | 0 | 0 |

1. ITD = Inception to Date.

## 4.0  Schedule

There are no changes to the construction schedule.

JA100

Document Accession #: 20220923-5043    Filed Date: 09/23/2022
USCA Case #22-1235    Document #1995109    Filed: 04/28/2023    Page 106 of 148

## 5.0 Construction

| Area | Construction Activities in August | Planned Work for September |
|------|-----------------------------------|----------------------------|
| Liquefaction Trains Area | • Continued road improvement and drainage work on Stage 3 site.<br>• Continued to recruit and mobilize construction professionals to support ramp up of construction activities.<br>• Mobilized additional equipment for road improvement work and site prep activities.<br>• Completed test pile installations at the Train 6 test pad and commenced pile testing.<br>• Completed surcharge installations at Train 7 test pad location.<br>• Commenced mass excavation and bathtub excavation activities in Train 2 footprint.<br>• Continued bathtub excavation activities in OSBL areas East and West of Trains 1 and 2.<br>• Continued soil stabilization activities in Train 2 and commenced in Train 6 and the adjacent OSBL areas.<br>• Commenced backfill activities in Train 6 footprint.<br>• Continued wick drain installations in Train 4 footprint.<br>• Commenced wick drain installations in Train 6 and OSBL area.<br>• Commenced perimeter drainage ditch installations in OSBL area.<br>• Expanded temporary facilities in laydown area.<br>• Mobilized additional key professional staff to site.<br>• Continued nightshift operations for soil stabilization activities. | • Continue to recruit and mobilize construction professionals to support ramp up of construction activities.<br>• Mobilize additional equipment in support of site prep activities.<br>• Complete pile testing in Train 6 test pad location.<br>• Continue monitoring settlement in the Train 7 test pad location.<br>• Continue mass excavation activities in Zone 1 footprint.<br>• Continue bathtub excavation activities in Train 2 and OSBL areas East and West of Train 2.<br>• Continue soil stabilization activities in Train 2 and adjacent OSBL areas for Zone 1.<br>• Continue soil stabilization activities in Train 6 and commence in Train 7 and adjacent OSBL areas for Zone 2.<br>• Continue backfill activities in Trains 5 and 6 footprints.<br>• Continue wick drain installations in Train 4 footprint.<br>• Continue wick drain installations in Train 6 and OSBL area.<br>• Continue nightshift operations for soil stabilization activities.<br>• Continue perimeter drainage ditch installations.<br>• Commence production pile installations in the OSBL area (310R08) and Train 1 footprint. |
| LNG Tank | None. | None. |

JA101

Document Accession #: 20220923-5043    Filed Date: 09/23/2022
USCA Case #22-1235    Document #1996046    Filed: 08/28/2023    Page 107 of 148

August 2022 Monthly Progress Report
Construction Stage 3 Project

| Area | Construction Activities in August | Planned Work for September |
|---|---|---|
| Access Roads | None. | None. |
| Other | None. | None. |

JA102

Document Accession #: 20220923-5043    Filed Date: 09/23/2022

Corpus Christi Liquefaction Stage 3 Project
August 2022 Monthly Progress Report

## 6.0  Permitting and Environmental

No updates to any environmental permits or the Emergency Response Plan for project construction were made during the reporting period.

**Summary of Problems, Non-Compliances, and Corrective Actions**

| Date | Description |
|------|-------------|
| None. | |

**Non-Compliance and Corrective Actions:**
- No non-compliance issues were observed this reporting period.

**Agency Contacts/Inspections**

| Agency | Name | Date | Location/Activity |
|--------|------|------|-------------------|
| None. | | | |

JA103

Document Accession #: 20220923-5043    Filed Date: 09/23/2022

Corpus Christi Liquefaction Stage 3 Project
August 2022 Monthly Progress Report

## 7.0 Progress Photos



Wick drain installations in Zone 2



Aerial view of horizontal wick drain tying

JA104

Document Accession #: 20220923-5043     Filed Date: 09/23/2022

Corpus Christi Liquefaction Stage 3 Project
August 2022 Monthly Progress Report



Aerial view of Train 1 ready for piling and overburden removal in Train 2



Aerial view of Train 4 wick drains and backfill in Trains 5 and 6

8

JA105

Document Accession #: 20220923-5043    Filed Date: 09/23/2022

Corpus Christi Liquefaction Stage 3 Project
August 2022 Monthly Progress Report



Soil farming and stockpiling in Beds 20 and 21



Aerial view of Train 6 test pad with piling rig

9

JA106

**Certificate of Service**

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Houston, Texas this 23rd day of September 2022.

*/s/ Akayla Broussard*

*Akayla Broussard*
*Corpus Christi Liquefaction, LLC*

JA107

Document Accession #: 20190329-3010     Filed Date: 03/29/2019



**Federal Energy Regulatory Commission**

**Office of
Energy Projects**

**March 2019**

Corpus Christi Liquefaction Stage III, LLC
Corpus Christi Liquefaction, LLC                    Docket No. CP18-512-000
Cheniere Corpus Christi Pipeline, L.P.              Docket No. CP18-513-000

# Stage 3 Project
# Environmental Assessment



Cooperating Agencies:

     

Washington, DC  20426

JA108

## 7.0  NON-JURISDICTIONAL FACILITIES

Under Section 7(c) of the NGA, the Commission is required to consider, as part of its decision to approve facilities under Commission jurisdiction, all factors bearing on the public convenience and necessity. Occasionally, proposed projects have associated facilities that do not come under the jurisdiction of FERC. These "non-jurisdictional" facilities may be integral to the needs of a project (e.g., a new or expanded power plant at the end of a pipeline that is not under the jurisdiction of FERC) or may be merely associated as minor, non-integral components of the jurisdictional facilities that would be constructed and operated as part of a project.

Powerline connections and an electrical substation would be utilized in support of the Stage 3 LNG Facilities, and are considered non-jurisdictional facilities. To provide power to the Project area during construction, American Electric Power, Inc. (AEP) would design, build, own, and operate approximately 3,000 feet of a new powerline within a 100-foot-wide corridor resulting in 6.89 acres of impacts. This construction powerline would extend from SH 361 to a construction distribution panel in the Project area. Cheniere stated that while the location of the powerlines has not been determined, all impacts would occur within areas identified for construction workspace.

For operation power, Cheniere would design, build, own, and operate a new powerline that would extend 0.25 mile from a new 10-acre substation to be constructed by AEP within the Project site (see figure A.9.1-1) to a connection at SH 361. All impacts associated with operation power is reflected in the Project impacts presented throughout this EA.

## 8.0  CONSTRUCTION, OPERATION, AND MAINTENANCE PROCEDURES

The Project facilities would be designed, constructed, tested, operated, and maintained in accordance with the USDOT regulations at 49 CFR 193, *Liquefied Natural Gas Facilities: Federal Safety Standards,* and the NFPA 59A, *Standard for the Production, Storage, and Handling of LNG* (as incorporated by reference in 49 CFR 193.2013, under Subpart A). The pipeline facilities would comply with USDOT regulations at 49 CFR 192, *Transportation of Natural or Other Gas by Pipeline: Minimum Federal Safety Standards*. These regulations specify material selection, design criteria, corrosion protection, and qualifications for welders and operation personnel. Additionally, CCPL would comply with the Commission's regulations at 18 CFR 380.15 regarding the siting and maintenance of pipeline rights-of-way. These regulations ensure adequate protection for the public and prevent natural gas facility accidents and failures.

Pending receipt of all necessary approvals and authorizations, Cheniere plans to begin construction of the Stage 3 LNG Facilities in 3rd quarter 2019 with an anticipated in-service date in 2023. Construction of the Stage 3 Pipeline would begin in 2020 with an in-service date in 2023. Cheniere adopted FERC staff's *Upland Erosion Control, Revegetation, and Maintenance Plan* (Plan) and *Wetland and Waterbody Construction and Mitigation Procedures* (Procedures). Cheniere would also implement its *Spill Prevention, Containment, and Countermeasures Plan* (SPCC Plan) to help ensure a favorable environment for the successful re-establishment of vegetation and proper handling of lubricants, fuel, or other potentially toxic materials and prevention of spills, respectively, prior to construction. Cheniere would also revegetate temporarily disturbed areas in accordance with the FERC Plan and Procedures and would incorporate recommendations from the National Resources Conservation Service, such as seed mixes to be used during Project restoration. The SPCC Plan would be implemented in compliance with the FERC and Texas Commission on Environmental Quality (TCEQ). In addition, Cheniere would develop a *Stormwater Pollution Prevention Plan* (SWPPP) for managing stormwater runoff during construction and operation of the Stage 3 Project.

JA109

Document Accession #: 20190329-3010          Filed Date: 03/29/2019

Typical construction drawings would be available to guide construction crews as to the approved methods to employ at appropriate locations when, and if, any of the conditions are observed. Construction crews would be familiar with the plans and assessing actual conditions before employing the guidelines.

For purposes of quality assurance and compliance with mitigation measures, other applicable regulatory requirements, and Project specifications, the Stage 3 Project would be represented on site by a Chief Inspector. One or more craft inspectors and one or more Environmental Inspectors (EI) assisting the Chief Inspector. To ensure that the environmental conditions associated with other permits or authorizations are satisfied, the EI's duties would be fully consistent with those contained in paragraph II.B of the Plan. The EI(s) would have authority to stop work or require other corrective actions to achieve environmental compliance. In addition to monitoring compliance, the EI's duties would include training Project personnel about environmental requirements and reporting compliance status to the contractors, Stage 3 Project management, FERC, and other agencies, as required.

FERC staff would conduct field and engineering inspections during construction. Other federal and state agencies may also conduct oversight of inspection to the extent determined necessary by the individual agency. After construction is completed, the FERC staff would continue to conduct oversight inspection and monitoring during operation of the Project to ensure successful restoration. Additionally, the FERC staff would conduct annual engineering safety inspections of the Stage 3 facilities operations.

The sections below describe the general procedures proposed by Cheniere for construction and operation activities within the Project site including restoration and maintenance following the completion of Project construction.

## 8.1    Stage 3 LNG Facilities

The modularized construction of the Stage 3 LNG Facilities would allow for individual trains and associated facilities to be constructed and brought on line in a phased approach in response to market demand. However, CCL Stage III's expectation, based on current indications of market demand, is that the entirety of the Stage 3 LNG Facilities would be built in a single phase. The duration of construction of all seven trains is approximately 48 months.

There are two areas within the existing Liquefaction Project facility that would be used during construction of the Stage 3 LNG Facilities. These are the existing Construction Dock and the existing roadway between the Construction Dock and Stage 3 LNG Facilities site. In addition, space inside the Liquefaction Project Operation and Maintenance Building (Control Room) would be utilized for operations of the Stage 3 LNG Facilities.

## 8.1.1    Temporary Construction Facilities

The Project would utilize areas that have been authorized for temporary work areas and are currently being utilized for the Liquefaction Project. The scheduled use of these areas for the two projects would overlap. Temporary work areas would be restored in compliance with our Plan and Procedures. Additional temporary facilities, required solely for the Stage 3 LNG Facilities, primarily laydown areas and parking, would be located on site or in close proximity to the site in areas approved by the Commission for construction use. The main construction offices would be located either on-site or in a nearby construction laydown or parking area. Support/satellite offices, warehousing, lunchrooms, temporary access roads, parking lots, and material laydown storage would be erected as necessary to support craft labor.

JA110

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

169 FERC ¶ 61,135
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
                       Richard Glick and Bernard L. McNamee.

| | |
|---|---|
| Corpus Christi Liquefaction Stage III, LLC | Docket Nos. CP18-512-000 |
| Corpus Christi Liquefaction, LLC | |
| | |
| Cheniere Corpus Christi Pipeline, LP | CP18-513-000 |

ORDER GRANTING AUTHORIZATIONS UNDER SECTIONS 3 AND 7
OF THE NATURAL GAS ACT

(Issued November 22, 2019)

1.      On June 28, 2018, Corpus Christi Liquefaction Stage III, LLC (CCL Stage III) and Corpus Christi Liquefaction, LLC (Corpus Christi Liquefaction) filed an application in Docket No. CP18-512-000, for authorization under section 3 of the Natural Gas Act (NGA)[1] and Part 153 of the Commission's regulations[2] to site, construct, and operate additional facilities for the liquefaction and export of domestically-produced natural gas (Stage 3 LNG Project) at Corpus Christi Liquefaction's existing liquefied natural gas (LNG) terminal on the northern shore of Corpus Christi Bay in San Patricio and Nueces Counties, Texas (Liquefaction Project).  The proposed Stage 3 LNG Project consists of the addition of seven midscale liquefaction trains and one LNG storage tank.

2.      In the same application, Cheniere Corpus Christi Pipeline, L.P. (Cheniere Pipeline) filed an application in Docket No. CP18-513-000, under NGA section 7(c),[3] for a certificate of public convenience and necessity to construct and operate new interstate natural gas pipeline, compression, and related facilities in San Patricio County, Texas (Stage 3 Pipeline Project).  The proposed Stage 3 Pipeline Project comprises a new 21-mile-long, 42-inch-diameter pipeline, additional compressor units at the existing Sinton Compressor Station, meter stations, and appurtenant facilities to transport 1.5 billion cubic feet per day (Bcf/d) of natural gas bi-directionally between the proposed Stage 3 LNG Project facilities and interconnections with existing pipeline systems.

---

[1] 15 U.S.C. § 717b (2018).

[2] 18 C.F.R. pt. 153 (2019).

[3] 15 U.S.C. § 717f.

JA111

Document Accession #: 20191122-3017        Filed Date: 11/22/2019

3.      For the reasons discussed in this order, we will authorize CCL Stage III and
Corpus Christi Liquefaction's proposal under section 3 to site, construct, and operate the
Stage 3 LNG Project.  We will also grant Cheniere Pipeline's requested authorizations
under section 7(c) to construct and operate the Stage 3 Pipeline Project.  These
authorizations are subject to the conditions discussed herein.

## I.      **Background**

4.      CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline are Delaware
limited liability companies with their principal places of business in Houston, Texas, and
are wholly owned indirect subsidiaries of Cheniere Energy, Inc.  Cheniere Pipeline is a
"natural gas company" within the meaning of section 2(6) of the NGA[4] and is subject to
the Commission's jurisdiction.  Because their operations will not be in interstate
commerce, CCL Stage III and Corpus Christi Liquefaction will not be a "natural gas
company" as defined in the NGA but are subject to the Commission's jurisdiction under
NGA section 3.

5.      On December 30, 2014, the Commission issued an order[5] authorizing Corpus
Christi Liquefaction to site, construct, and operate the Liquefaction Project, which
includes three LNG trains,[6] each with a liquefaction capacity of approximately 5 million
metric tons per annum (MMTPA); two trains of ambient air vaporizers, each with an
average vaporization capacity of 200 MMcf/d of natural gas; three 160,000 cubic meter
(m3) LNG storage tanks; and a marine terminal with two berths capable of receiving
LNG carrier vessels.  The Liquefaction Project is designed to export approximately 15
MMTPA of LNG and vaporize approximately 400 million cubic feet per day (MMcf/d)
of imported natural gas.  Corpus Christi Liquefaction states that Cheniere Marketing,
LLC[7] will export the LNG by LNG carriers through Corpus Christi Bay.[8]  In February

---

[4] 15 U.S.C. § 717a(6).

[5] *Corpus Christi Liquefaction, LLC*, 149 FERC ¶ 61,283 (2014) (2014 Order),
*reh'g denied*, 151 FERC ¶ 61,098 (2015).

[6] An LNG "train" refers to the facility used to convert natural gas into LNG.  The
three-step process to convert natural gas into LNG includes:  gas treatment (to remove
impurities and water), gas compression, and refrigeration.  After treatment, purified gas
goes to the compressors to be transformed from gas into liquid by refrigeration to
approximately -265 degrees Fahrenheit (ºF).

[7] Cheniere Marketing is an affiliate of Corpus Christi Liquefaction and Cheniere
Pipeline and an indirect subsidiary of Cheniere Energy, Inc.

[8] *Cheniere Marketing, LLC*, DOE/FE Order No. 3164, FE Docket No. 12-99-

Document Accession #: 20191122-3017          Filed Date: 11/22/2019

2015, Corpus Christi Liquefaction commenced construction of the Liquefaction Project. The first LNG train and loading berth as well as two of the full containment LNG storage tanks were placed into service during March 2019.  The remaining two LNG trains, LNG storage tank, marine berth, and associated LNG facilities continue to be under construction.

6.      The 2014 Order also authorized Cheniere Pipeline to construct and operate the Corpus Christi Pipeline, a 23-mile-long, 48-inch-diameter pipeline in San Patricio County, Texas, capable of transporting up to 2.25 Bcf/d of natural gas bi-directionally between the Liquefaction Project and existing interstate and intrastate natural gas pipeline systems in Sinton, Texas.  The 2014 Order also authorized the construction and operation of the Sinton Compressor Station, metering and regulation stations (M&R) along the pipeline, and appurtenant facilities.[9]  Cheniere Pipeline received authorization from the Commission to place the Corpus Christi Pipeline in service on May 23, 2018.

## II.    **Proposals**

### A.    **Stage 3 LNG Project (CP18-512-000)**

7.      The proposed Stage 3 LNG Project, an expansion of the Liquefaction Project currently under construction at the Corpus Christi LNG Terminal, would be located adjacent to the site of the Liquefaction Project in San Patricio County, Texas. Specifically, CCL Stage III proposes to construct seven midscale liquefaction trains

---

LNG, Order Granting Long-Term, Multi-Contract Authorization to Export Liquefied Natural Gas by Vessel from the Proposed Corpus Christi Liquefaction Project to Free Trade Agreement Nations (Oct. 16, 2012), *amended Cheniere Marketing, LLC,* DOE/FE Order Nos. 3538 and 3164-A, FE Docket Nos. 12-97-LNG and 12-99-LNG, Order Amending Application in Docket No. 12-97-LNG to Add Corpus Christi LNG, LLC as Applicant, and Granting Request in DOE/FE Order No. 3164, Docket No. 12-99-LNG, to Add Corpus Christi Liquefaction, LLC as Authorization Holder (Oct. 29, 2014).

[9] 2014 Order, 149 FERC ¶ 61,283 at P 10, *order vacating in part*, 154 FERC ¶ 61,163 (2016).

which will liquefy the natural gas delivered to the facility,[10] each with a nameplate production capacity[11] of 1.36 MTPA and a maximum capacity of approximately 1.64 MTPA of LNG.  Each liquefaction train will consist of two liquefaction units, each with a nameplate capacity of 0.681 MTPA and a maximum capacity of approximately 0.82 MTPA.  The project will have the capacity to produce approximately 11.45 MTPA of LNG for export.

8.      CCL Stage III also proposes to construct one 160,000 $m_3$ full-containment tank, designed to store the LNG at a temperature range of -260ºF to -270ºF and with a normal operating pressure of 1.5 pounds per square inch gauge (psig) to a maximum internal pressure of 4.2 psig.

9.      In addition to the above proposed facilities, Corpus Christi Liquefaction proposes to construct and operate new infrastructure at the Liquefaction Project.  Specifically, Corpus Christi Liquefaction proposes to expand the Liquefaction Project's control building to accommodate the Stage 3 LNG Project.  Corpus Christi Liquefaction also proposes to install an LNG transfer line and various interconnects to connect the Stage 3 LNG project to the Liquefaction Project and its storage tanks.

10.     Corpus Christi Liquefaction and Cheniere Pipeline own the land that would be occupied by the Stage 3 LNG Project.  The Stage 3 LNG Project will be located primarily within an area referred to as the Dredged Material Placement Area 2, which was authorized for dredge material placement in the Commission's 2014 Order.[12]

11.     CCL Stage III proposes to utilize the same marine terminal facilities for mooring and loading LNG carriers as the Liquefaction Project; therefore, no new marine facilities will be required for the Stage 3 LNG Project.  LNG carriers will access the Stage 3 LNG

---

[10] Each train will contain:  (1) facilities to remove carbon dioxide, hydrogen sulfide, and sulfur compounds from the feed gas; (2) facilities to remove water, mercury, and heavy hydrocarbons from the feed gas; (3) a thermal oxidizer for combusting waste gas; (4) electric-motor driven refrigerant compressors and associated cold boxes; (5) induced draft air coolers; (6) associated fire and gas safety systems; and (7) associated control systems and electrical infrastructure.

[11] Nameplate capacity is a rating that conservatively accounts for fuel, planned and unplanned shutdowns, production variations due to temperature and other conditions, LNG composition changes, boil-off, equipment aging, shipping constraints, and other factors for a calendar year, averaged over a 30-year operating cycle.

[12] *See Environmental Impact Statement for the Corpus Christi LNG Project*, Docket No. CP12-507-000, at 2-5 through 2-7 (October 8, 2014).

Document Accession #: 20191122-3017          Filed Date: 11/22/2019

Project via a federally-maintained channel that extends from the open Gulf of Mexico, through the entrance jetties at Aransas Pass, along the Corpus Christi Ship Channel and up the La Quinta Ship Channel.  CCL Stage III states that this is the same route that was analyzed by the United States Coast Guard (Coast Guard) for the Liquefaction Project.  Once the Stage 3 LNG Project is completed, CCL Stage III anticipates an increase in the maximum marine vessel traffic of up to 100 LNG carriers per year, i.e., a total of up to 400 LNG carriers per year as compared to the 300 LNG carriers per year anticipated for the existing facilities.

12.      CCL Stage III received authorization from the Department of Energy, Office of Fossil Energy (DOE/FE) in November 2018 to export annually up to 582.14 Bcf equivalent of natural gas in the form of LNG to countries with which the United States has a Free Trade Agreement.[13]  In addition, CCL Stage III currently has pending before DOE/FE an application to export LNG to other nations with which the US permits such trade, but has not entered into a Free Trade Agreement.[14]

### B.    Stage 3 Pipeline Project (CP18-513-000)

13.      In conjunction with the proposed Stage 3 LNG Project, Cheniere Pipeline requests authorization to construct, operate, and maintain the Stage 3 Pipeline, a 21-mile-long, 42-inch-diameter pipeline originating at Cheniere Pipeline's existing Sinton Compressor Station in San Patricio County, Texas, and running parallel to Cheniere Pipeline's existing Corpus Christi Pipeline.  The pipeline will have a permanent right-of-way width of 50 feet that will overlap by 25 feet the existing Corpus Christi Pipeline right-of-way.  The Stage 3 pipeline will be designed for a maximum allowable operating pressure of 1,440 psig, and a capacity of approximately 1.5 Bcf/d.  The pipeline will be capable of transporting natural gas bi-directionally between the Stage 3 LNG facilities and interconnections with existing pipeline systems.

14.      Additionally, Cheniere Pipeline proposes to:

- install two Titan 130E gas-fired compressor units at the Sinton Compressor Station to generate an additional 44,000 horsepower (hp) (22,000 hp each);[15]

---

[13] *Corpus Christi Liquefaction Stage III, LLC*, FE Docket No. 18-78-LNG, Order No. 4277 (November 9, 2018).

[14] *Id*. at 3.

[15] Currently, the Sinton Compressor Station includes two Solar Titan 130 gas-fired compressor units (20,387 hp each) and two Solar electric motor drive compressor units

JA115

- construct and operate one M&R station at the Stage 3 LNG Project (at MP 0.0) and two 750 MMcf/d M&R stations within the Sinton Compressor Station;[16]

- construct and operate permanent pig launcher/receiver facilities, located within the Sinton Compressor Station boundary and within the Stage 3 LNG Project M&R station; and

- install four new mainline valve facilities (MLVs): two of which will be located at the inception and terminus of the pipeline, at mile point (MP) 0.0 and MP 21.0, respectively, the other two will be located along the Stage 3 Pipeline route at MP 7.3 and at MP 12.8. Since all four proposed MLVs are within the permanent easement of the Stage 3 Pipeline, no additional workspace will be required for their construction or operation.

15.     Cheniere Pipeline conducted a binding open season from December 10, 2018, to December 21, 2018, for the purpose of soliciting interest from potential customers wishing to contract for the pipeline transportation capacity on the Stage 3 Pipeline. The open season resulted in the submission of one binding bid from CCL Stage III. On December 11, 2018, Cheniere Pipeline and CCL Stage III executed a binding precedent agreement for 100 percent of the firm transportation capacity for a term of twenty years. Pursuant to the agreement, CCL Stage III committed to 1,530,000 dekatherms per day (Dth/d) of firm transportation service on the Stage 3 Pipeline Project.

16.     Cheniere Pipeline estimates the total cost of the Stage 3 Pipeline to be approximately $312,533,049.[17] To recover the costs of the Stage 3 Pipeline Project, Cheniere Pipeline proposes to establish an initial incremental daily recourse reservation rate for service on the Stage 3 Pipeline project facilities under its existing firm transportation service (FTS) and interruptible transportation service (ITS) rate schedules as set forth in Cheniere Pipeline's currently effective tariff.

---

(14,800 hp each).

[16] The third party pipelines which will deliver project volumes to Cheniere Pipeline at the Sinton Compressor Station are currently unknown and will be determined later in the project development process.

[17] Cheniere Pipeline Application at Exhibit K.

## III.   Public Notice, Interventions, and Comments

17.    Notice of CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline's joint application was issued on July 12, 2018, and published in the *Federal Register* on July 18, 2018.[18]  The notice established August 2, 2018, as the deadline for filing comments and interventions.  Public Citizen, Inc. filed a timely, unopposed motion to intervene, which is granted by operation of Rule 214(c)(1) of the Commission's Rules of Practice and Procedure.[19]

## IV.   Discussion

### A.    Stage 3 LNG Project (Docket No. CP18-512-000)

18.    Because the proposed facilities will be used to export natural gas to foreign countries, the siting, construction and operation of the facilities require Commission approval under NGA section 3.[20]  Although section 3 provides that an application shall be approved unless the proposal "will not be consistent with the public interest," section 3 also provides that an application may be approved "in whole or in part, with such modification and upon such terms and conditions as the Commission may find necessary or appropriate."[21]

---

[18] 83 Fed. Reg. 33,927 (2018).

[19] 18 C.F.R. § 385.214(c)(1) (2019).

[20] The regulatory functions of NGA section 3 were transferred to the Secretary of Energy in 1977 pursuant to section 301(b) of the Department of Energy Organization Act, Pub. L. No. 95-91, 42 U.S.C. § 7101 *et seq*.  In reference to regulating the imports or exports of natural gas, the Secretary subsequently delegated to the Commission the authority to approve or disapprove the construction and operation of natural gas import and export facilities and the site at which such facilities shall be located.  The most recent delegation is in DOE Delegation Order No. 00-004.00A, effective May 16, 2006. Applications for authorization to import or export natural gas must be submitted to the Department of Energy (DOE).  The Commission does not authorize importation or exportation of the commodity itself.  *See EarthReports, Inc. v. FERC*, 828 F.3d 949, 952-53 (D.C. Cir. 2016) (detailing how regulatory oversight for the export of LNG and supporting facilities is divided between the Commission and DOE).

[21] 15 U.S.C. §§ 717b(a) and 717b(e)(3).  For a discussion of the Commission's authority to condition its approvals of LNG facilities under section 3 of the NGA, *see, e.g., Distrigas Corporation v. FPC*, 495 F.2d 1057, 1063-64 (D.C. Cir. 1974), *cert.*

19.    As noted above, DOE/FE, pursuant to its authority under NGA section 3, has issued CCL Stage III authorization to export up to 582.14 Bcf equivalent of LNG by vessel to free trade nations from the proposed Stage 3 LNG Project in San Patricio and Nueces Counties, Texas.[22]  DOE/FE's orders approving Stage 3 LNG Project's export volumes state that "[i]n light of DOE's statutory obligation to grant this Application without modification or delay, there is no need for DOE/FE to review other arguments asserted by CCL Stage III in support of the Application."[23]

20.    We have reviewed CCL Stage III and Corpus Christi Liquefaction's application to determine if the siting, construction, and operation of its expansion of the existing LNG terminal as proposed would not be consistent with the public interest.[24]  The environmental assessment (EA) prepared by Commission staff regarding the proposed project finds that the Stage 3 LNG Project will be located almost entirely within the footprint of the previously-approved and currently-under-construction Corpus Christi Liquefaction site.[25]  Further, the impacts for the project are generally localized and within previously disturbed areas and would not be expected to contribute significantly to the cumulative impacts in the region[26] or the quality of the human environment.[27]

---

*denied,* 419 U.S. 834 (1974), and *Dynegy LNG Production Terminal*, *L.P.*, 97 FERC ¶ 61,231 (2001).

[22] DOE/FE Order No. 4277 at 10.

[23] *Id*. at 6-7.  Section 3(c) of the NGA provides that the exportation and importation of natural gas to and from countries with which there is in effect a Free Trade Agreement "shall be deemed consistent with the public interest and applications for such importation and exportation shall be granted without modification or delay." *See* 15 U.S.C. § 717b(c).

[24] *See National Steel Corp.*, 45 FERC ¶ 61,100, at 61,332-33 (1988) (observing that DOE, "pursuant to its exclusive jurisdiction, has approved the importation with respect to every aspect of it except the point of importation" and that the "Commission's authority in this matter is limited to consideration of the place of importation, which necessarily includes the technical and environmental aspects of any related facilities.").

[25] EA at 50.

[26] *Id*. at 219.  An additional 12.9 acres that were not previously impacted by the Liquefaction Project would be permanently impacted by the Stage 3 LNG Facilities.

[27] *Id*. at 244.

21.    In accordance with the Memorandum of Understanding signed on August 31, 2018, by the Commission and the Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA),[28] PHMSA undertook a review of the proposed facility's ability to comply with the federal safety standards contained in Part 193, Subpart B, of Title 49 of the Code of Federal Regulations.[29]  On May 20, 2019, PHMSA issued a Letter of Determination (LOD) indicating that CCL Stage III has demonstrated that the siting of its proposed LNG facilities comply with those federal safety standards.  If the proposed Stage 3 LNG Project is subsequently modified so that it differs from the details provided in the documentation submitted to PHMSA, further review would be conducted by PHMSA.

22.    Corpus Christi Liquefaction operates its existing facilities under the terms and conditions mutually agreed to by its customers.  CCL Stage III is proposing similarly to operate its expansion of the approved LNG terminal under the terms and conditions mutually agreed to by its customers, and will solely bear the responsibility for the recovery of any costs associated with construction and operation of the terminal.

23.    In view of the above, we find that CCL Stage III and Corpus Christi Liquefaction's proposal is not inconsistent with the public interest.  Therefore, we will grant their application for authorization under section 3 of the NGA to site, construct, and operate its proposed Stage 3 LNG Project.[30]

## B.    **Stage 3 Pipeline (Docket No. CP18-513-000)**

24.    Because the Stage 3 Pipeline Project will be used to transport natural gas in interstate commerce subject to the jurisdiction of the Commission, the construction and

---

[28] FERC, *Memorandum of Understanding Between the Department of Transportation and the Federal Energy Regulatory Commission Regarding Liquefied Natural Gas Transportation Facilities* (Aug. 31, 2018), https://www.ferc.gov/legal/mou/2018/FERC-PHMSA-MOU.pdf.

[29] 49 C.F.R. pt. 193, subpart B (2019).

[30] The dissent alleges the Commission did not appropriately assess the public safety for the Stage 3 LNG Project because it did not discuss issues that occurred at another facility owned and operated by an affiliate of the applicant. The Commission considers each application on its merits. The record of this proceeding supports our opinion that the project is not inconsistent with the public interest. We also note that the Commission applies lessons learned at any LNG facility to all such facilities.  As appropriate, any relevant information would be incorporated in the final design review of the project.

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

operation of the facilities are subject to the requirements of subsections (c) and (e) of section 7 of the NGA.[31]

## Certificate Policy Statement

25.     The Commission's Certificate Policy Statement provides guidance for evaluating proposals to certificate new pipeline construction.[32]  The Certificate Policy Statement establishes criteria for determining whether there is a need for a proposed project and whether the proposed project will serve the public interest.  The Certificate Policy Statement explains that in deciding whether to authorize the construction of major new pipeline facilities, the Commission balances the public benefits against the potential adverse consequences.  The Commission's goal is to give appropriate consideration to the enhancement of competitive transportation alternatives, the possibility of overbuilding, subsidization by existing customers, the applicant's responsibility for unsubscribed capacity, the avoidance of unnecessary disruptions of the environment, and the unneeded exercise of eminent domain in evaluating new pipeline construction.

26.     Under this policy, the threshold requirement for applicants proposing new projects is that the applicant must be prepared to financially support the project without relying on subsidization from its existing customers.  The next step is to determine whether the applicant has made efforts to eliminate or minimize any adverse effects the project might have on the applicant's existing customers, existing pipelines in the market and their captive customers, or landowners and communities affected by the route of the new facilities.  If residual adverse effects on these interest groups are identified after efforts have been made to minimize them, the Commission will evaluate the project by balancing the evidence of public benefits to be achieved against the residual adverse effects.  This is essentially an economic test.  Only when the benefits outweigh the adverse effects on economic interests will the Commission proceed to consider the environmental analysis where other interests are addressed.

27.     As discussed above, the threshold requirement for applicants proposing new projects is that the pipeline must be prepared to financially support the project without subsidization from existing customers.  The Commission has determined that where a pipeline proposes to charge incremental rates for new construction that are higher than the company's existing system rates, the pipeline satisfies the threshold requirement that

---

[31] 15 U.S.C. §§ 717f(c) and 717f(e).

[32] *Certification of New Interstate Natural Gas Pipeline Facilities*, 88 FERC ¶ 61,227 (1999), *clarified*, 90 FERC ¶ 61,128, *further clarified*, 92 FERC ¶ 61,094 (2000) (Certificate Policy Statement).

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

the project will not be subsidized by existing shippers.[33]  As discussed below, Cheniere Pipeline is proposing an incremental recourse reservation rate of $3.8004/Dth to recover the costs of the Stage 3 Pipeline Project, which is higher than Cheniere Pipeline's existing system-wide rate of $2.8172/Dth.[34]  Thus, there will be no subsidization of the expansion project by existing customers, satisfying the threshold requirement established by the Commission's Certificate Policy Statement.  Further, the Stage 3 Pipeline Project will not adversely impact existing customers service because the facilities are designed to provide the new incremental service while still providing the existing services.  In addition, the Stage 3 Pipeline Project will not adversely affect existing pipelines and their captive customers.  The Stage 3 Pipeline Project is designed to provide transportation of feed gas to CCL Stage III liquefaction facilities at the Corpus Christi LNG terminal and thus will not bypass any existing pipeline or provide service already provided by another pipeline facility.  Further, no pipeline company or their captive customers have protested Cheniere Pipeline's application.

28.     We are also satisfied that Cheniere Pipeline has taken appropriate steps to minimize adverse impacts on landowners and surrounding communities.  Approximately 99 percent of the pipeline route will be collocated with the Corpus Christi Pipeline, thereby minimizing construction impacts and other adverse effects to nearby landowners and communities.[35]

29.     Cheniere Pipeline's proposed pipeline will enable it to transport gas to CCL Stage III's proposed Stage 3 LNG Project, where the gas will be liquefied for export.  Cheniere Pipeline has executed a precedent agreement with CCL Stage III for 100 percent of the transportation service provided by the capacity of the proposed facilities.  Based on the benefits that will result from the project, with no adverse impacts on Cheniere Pipeline's existing customers and other pipelines and their captive customers and minimal impacts on landowners and surrounding communities, we find that Cheniere Pipeline's proposal is consistent with the Certificate Policy Statement, and, as conditioned in this order, is required by the public convenience and necessity.

---

[33] *Gulf South Pipeline Company, LP*, 163 FERC ¶ 61,124, at P 12 (2018).

[34] Cheniere Pipeline also proposes an authorized overrun charge of $0.1249 per Dth under Rate Schedule FTS and an incremental interruptible charge of $0.1249 per Dth.

[35] EA at 243.

Document Accession #: 20191122-3017        Filed Date: 11/22/2019

### C.    Rates

#### 1.    Initial Rates

30.    Cheniere Pipeline proposes to offer incremental transportation service on the Stage 3 Pipeline under its existing Rate Schedules FTS and ITS, as set forth in its currently effective tariff. Cheniere Pipeline designed its incremental rates based on a proposed incremental cost of service of $69,775,132 and annual FTS reservation determinants of 18,360,000 Dth (design capacity of 1,530,000 Dth times 12). Cheniere Pipeline proposes a firm incremental reservation charge of $3.8004 per Dth per month and an authorized overrun charge of $0.1249 per Dth under Rate Schedule FTS.

31.    Additionally, Cheniere Pipeline proposes an incremental interruptible charge of $0.1249 per Dth based on a 100 percent load factor derivative of the Rate Schedule FTS rates. Cheniere Pipeline proposes zero variable costs, therefore the proposed incremental usage charge is $0.0000 per Dth.

32.    The major cost components underlying Cheniere Pipeline's proposed rates include a capital structure of 50 percent debt and 50 percent equity, a projected cost of debt of 7.75 percent, and a return on equity of 14 percent. Cheniere Pipeline states this capital structure is in line with what has been approved by the Commission for other new pipeline projects.[36] Cheniere Pipeline states its rates are based on a federal income tax rate of 21 percent and a Texas tax rate of zero percent. Cheniere Pipeline also proposes a depreciation rate of 4 percent.

*Variable Costs*

33.    On December 7, 2018, the Commission issued a data request directing Cheniere Pipeline to provide a breakdown of projected Operation and Maintenance (O&M) expenses by FERC account number and labor and non-labor costs for the new pipeline facilities, compression, and measuring and regulating facilities. In its response, Cheniere Pipeline identified a total of $1,579,171 in non-labor O&M costs in Account Nos. 853, 857, 864 and 865.[37] Consistent with the Commission's regulation requiring the use of

---

[36] Application at 23 citing *Rover Pipeline LLC,* 158 FERC ¶ 61,109, at 76 (2017) (citing *Florida Southeast Connection, LLC,* 156 FERC ¶ 61,160, at P 25 (2016) (noting the Commission's approval of 14 percent return on equity for greenfield pipelines based on a capital structure that contains no more than 50 percent equity)).

[37] Cheniere Pipeline's December 12, 2018 response to Commission staff's December 7, 2018 data request.

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

straight fixed-variable rate design (SFV),[38] these costs are classified as variable costs and should not be recovered through the reservation charge.[39]  Accordingly, Cheniere Pipeline is directed to recalculate its incremental recourse reservation charge to recover only fixed costs when it files actual tariff records.

*Return on Equity*

34.     The Commission has generally approved higher rates of return on equity (ROE) for greenfield projects to reflect the higher risks associated with such projects.[40]  With respect to developing incremental rates for expansions of existing pipeline systems, our general policy is to use the rate of return components approved in the pipeline's last NGA section 4 rate proceeding.[41]

35.     Cheniere Pipeline has not filed an NGA section 4 rate case since it went into service.  We find it is not appropriate to use the 14 percent ROE approved in Cheniere Pipeline's initial certificate authorizations in determining the cost of service for the Stage 3 Pipeline because it would not adequately reflect the lower risks associated with expanding an existing pipeline system.  The Stage 3 Pipeline has more in common with the incremental expansions constructed by existing pipelines than with greenfield pipeline projects, and, because Cheniere Pipeline does not have an ROE established in an NGA section 4 rate case, we find that it is more appropriate to use the most recent ROE approved in a litigated NGA section 4 rate case as the ROE for designing the incremental

rates for this project.[42]  This is the approach the Commission has adopted in determining the ROE to be used in developing initial rates for other projects where the pipeline does not have an ROE on file, such as existing facilities being acquired by a new interstate pipeline, and the Commission believes it is appropriate to use in these circumstances.[43]

---

[38] 18 C.F.R. § 284.7(e) (2019).

[39] *Columbia Gulf Transmission, LLC*, 152 FERC ¶ 61,214 (2015); and *Dominion Transmission, Inc*., 153 FERC ¶ 61,382 (2015).

[40] *See, e.g., PennEast Pipeline Co., LLC,* 162 FERC ¶ 61,053 (2018).

[41] *See, e.g., Transcontinental Gas Pipe Line Co.,* 161 FERC ¶ 61,250 (2017), *order on reh'g; Transcontinental Gas Pipe Line Co.,* 158 FERC ¶ 61,125 (2016).

[42] *Sierrita Gas Pipeline LLC,* 165 FERC ¶ 61,001, at n.27 (2018); *Alliance Pipeline L.P.,* 140 FERC ¶ 61,212, at PP 18-20 (2012).

[43] *Florida Southeast Connection, LLC,* 164 FERC ¶ 61,091, at P19 (2018).

The last applicable litigated ROE is 10.55 percent, as approved in *El Paso Natural Gas Co.*[44] Therefore, we will require Cheniere Pipeline to revise its proposed incremental recourse rates to reflect this revised ROE.

*Interruptible Rate*

36.    Cheniere Pipeline proposes to charge an incremental interruptible transportation rate of $0.1249 per Dth for service on the Stage 3 Pipeline. However, for integrated incremental expansions such as this, Commission policy is to require a pipeline to charge its current system interruptible rate for any interruptible service rendered on additional capacity made available as a result of an incremental expansion that is integrated with existing pipeline facilities.[45] This is because the pipeline generally is unable to determine whether the capacity available on a given day is due to the existing facilities or to the new, integrated expansion. Therefore, Cheniere Pipeline's proposal to charge a separate Stage 3 Pipeline interruptible rate is rejected, and Cheniere Pipeline is directed to revise its proposal accordingly.

37.    We have reviewed Cheniere Pipeline's proposed cost of service, allocation, and rate design used to develop the incremental rates and find that, with the exception of the items discussed above, they reasonably reflect current Commission policy. As the proposed incremental reservation charge, revised to reflect the appropriate return on equity and the recovery of only fixed costs, appears to be higher than Cheniere Pipeline's existing firm transportation system-wide rate of $2.8172 per Dth per month, we will approve Cheniere Pipeline's use of incremental reservation rates for the Stage 3 Pipeline.

## 2.    **Fuel**

38.    Cheniere Pipeline proposes to charge an incremental fuel retainage percentage for the Stage 3 Pipeline of 0.70 percent. Cheniere Pipeline states the fuel retainage percentage is applicable to fuel, loss and unaccounted for (LAUF) gas, and any imbalances due to meter equipment tolerances between receipt and delivery point meters. The currently effective fuel retainage percentage is 0.50 percent. In a November 16, 2018 response to a staff data request, Cheniere Pipeline explained that the proposed incremental retainage percentage was calculated from the expected additional horsepower requirements for the incremental capacity based on the average fuel gas requirements of the summer and peak scenarios.[46] Cheniere Pipeline states that it will continue to adjust

---

[44] 145 FERC ¶ 61,040, at P 642 (2013), *reh'g denied,* 154 FERC ¶ 61,120 (2016).

[45] *See, e.g., Gulf South Pipeline Co., LP,* 163 FERC ¶ 61,124, at P 26. (2018); *Texas Eastern Transmission, LP,* 139 FERC ¶ 61,138, at P 31 (2012).

[46] Cheniere Pipeline Data Response No. 1 at 1. Cheniere Pipeline calculated a

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

its fuel retainage percentage semi-annually to better align fuel usage and retainage.  The Commission accepts Cheniere Pipeline's proposed incremental fuel retention percentage for the Stage 3 Pipeline Project.

### 3.    Reporting Incremental Costs

39.    Section 154.309 of the Commission's regulations includes bookkeeping and accounting requirements applicable to all expansions for which incremental rates are charged to ensure that costs are properly allocated between pipelines' existing shippers and incremental expansion shippers.[47]  Therefore, Cheniere Pipeline must keep separate books and accounting of costs and revenues attributable to the Stage 3 Pipeline Project, as required by section 154.309 of the Commission's regulations.  The books should be maintained with applicable cross-references as required by section 154.309.  This information must be in sufficient detail so that the data can be identified in Statements G, I, and J in any future NGA section 4 or 5 rate case, and the information must be provided consistent with Order No. 710.[48]

## V.    Environmental Analysis

40.    On August 17, 2015, the Commission issued *a Notice of Intent to Prepare an Environmental Assessment for the Proposed Stage 3 Project and Request for Comments on Environmental Issues* (NOI).[49]  The NOI was published in the *Federal Register*[50] and mailed to interested parties including federal, state, and local officials; agency representatives; environmental and public interest groups; Native American tribes; local libraries and newspapers; and affected property owners.  We received comments in response to the NOI from the U.S. Fish and Wildlife Service (FWS), Federal Emergency Management Agency (FEMA), U.S. Environmental Protection Agency (EPA), and Texas Parks and Wildlife Department.  The primary issues raised during the scoping process included alternatives, as well as impacts on water quality and supply, wetlands,

---

summer Fuel and LAUF usage of 0.69 percent and a peak winter Fuel and LAUF usage of 0.72 percent; the average Fuel and LAUF usage for the incremental project is 0.70 percent, as proposed.

[47] 18 C.F.R. § 154.309 (2019).

[48] *Revisions to Forms, Statements, and Reporting Requirements for Natural Gas Pipelines*, Order No. 710, 122 FERC ¶ 61,262, at P 23 (2008).

[49] The proposed Stage 3 LNG and Stage 3 Pipeline facilities are collectively referred to herein as the Stage 3 Project.

[50] 80 Fed. Reg. 50,843 (2015).

Document Accession #: 20191122-3017    Filed Date: 11/22/2019

vegetation, wildlife and habitats, migratory birds, land use plans, floodplains, socioeconomics, cultural resources, air quality, and climate change.

41.    To satisfy the requirements of the National Environmental Policy Act of 1969, our staff prepared an Environmental Assessment (EA) for CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline's (collectively, Cheniere) proposal.  The EA was prepared with the cooperation of the U.S. Army Corps of Engineers, EPA, U.S. Department of Energy, USDOT, Coast Guard, and FWS.  The analysis in the EA addresses geology, soils, water resources, wetlands, vegetation, fisheries, wildlife, threatened and endangered species, land use, recreation, visual resources, cultural resources, air quality, noise, safety, socioeconomics, cumulative impacts, and alternatives.  All substantive comments received in response to the NOI were addressed in the EA.

42.    The EA was issued for a 30-day comment period and placed into the public record on March 29, 2019.  Comments were received from the Texas Commission on Environmental Quality (TCEQ) on April 16, 2019, from CCL Stage III on April 29, 2019, and from the EPA and FEMA on April 30, 2019.  EPA stated that the agency has no comments on the EA; all other comments are addressed below.

*TCEQ Comments*

43.    The TCEQ recommends that best management practices be used to control runoff from construction sites to prevent detrimental impacts to surface and ground water. Sections 8.2.1 (General Construction Procedures) and 3.0 (Water Resources) of the EA discuss the best management practices outlined in the *Upland Erosion Control, Revegetation, and Maintenance Plan* (Plan) and the *Wetland and Waterbody Construction and Mitigation Procedures* (Procedures) and erosion controls such as silt fences, straw bales, and hay bales, which would reduce the runoff velocity and divert water off the construction right-off-way.  In addition, Cheniere Pipeline has a Storm Water Pollution Prevention Plan for managing stormwater runoff during construction and operation.  We find that the measures included in the Plan, Procedures and Storm Water Pollution Prevention Plan are sufficient to minimize detrimental impacts to surface and groundwater from runoff from construction areas.

*FEMA Comments*

44.    FEMA requests that CCL Stage III and Cheniere Pipeline contact the Community Floodplain Administrators to review permit requirements for the Stage 3 Project.  CCL Stage III and Cheniere Pipeline are directed to submit documentation to verify that they have contacted the Community Floodplain Administrators in accordance with FEMA's request.

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

45.     FEMA also requests that CCL Stage III comply with Executive Orders 11988 and 11990, if applicable.[51]  CCL Stage III and Cheniere Pipeline must file with the Secretary of the Commission documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof), as required by Environmental Condition No. 10 in the appendix to this order.

*CCL Stage III Comments*

46.     CCL Stage III indicates that it will file a plan for containment and disposal of affected groundwater that may be encountered in the course of construction, but requests that the Commission eliminate reference to consultation with TCEQ, as proposed in Environmental Recommendation No. 15 of the EA.[52]  CCL Stage III said that this plan will be developed in compliance with TCEQ regulations (specifically, Texas Administrative Code Title 30 Chapter 335 – Industrial Solid Waste and Municipal Hazardous Waste) and guidance for waste classification.  However, CCL Stage III avers that these regulations and guidance are self-implementing and do not require consultation with TCEQ.

47.     Based on information provided by CCL Stage III, a portion of the proposed project area is part of on-going groundwater remediation efforts which are managed by the TCEQ.  The EA explains that construction activities, including the installation of ground improvement columns and dewatering, within areas of known groundwater contamination could further the spread of the contamination if special construction and material handling methods are not utilized.  Therefore, we agree with the EA's recommendation that CCL Stage III consult with the TCEQ to ensure that CCL Stage III's proposed groundwater containment and disposal guidelines and practices are conducive to continued groundwater remediation.  CCL Stage III is required to consult with TCEQ, as required by Environmental Condition No. 15 in the appendix to this order.

48.     CCL Stage III also requests that the timing of complying with the EA's Environmental Recommendation Nos. 24, 25, and 27 be modified, from "prior to initial site preparation" to "prior to construction of final design."  Environmental

---

[51] Executive Order 11988 (Floodplain Management), 42 Fed. Reg. 26,951 (1977); Executive Order 11990 (Protection of Wetlands), 42 Fed. Reg. 26,961 (1977).

[52] Environmental Recommendation No. 15 states:  "Prior to construction of the Stage 3 LNG Facilities, CCL Stage III shall file with the Secretary, for review and written approval by the Director of the OEP, groundwater containment and disposal guidelines and practices that will be implemented during construction in areas of known groundwater contamination.  CCL Stage III shall develop the groundwater containment and disposal guidelines and practices in consultation with the TCEQ, and its filing shall include documentation of its consultation with TCEQ."

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

Recommendation No. 24 would require that, prior to initial site preparation, CCL Stage III provide documentation of consultation with the USDOT Pipeline and Hazardous Materials Safety Administration (PHMSA) on whether using normally-closed valves as a stormwater removal device on curbed areas will meet the requirements of 49 C.F.R. Part 193 (section B.9.1.6). CCL Stage III contends that the use of closed drain valves as a stormwater removal device on curbed areas is more closely related to installation of piping and equipment than it is initial site preparation. We agree and have revised Environmental Condition No. 24 in the appendix to this order accordingly.

49.     The EA's Environmental Recommendation No. 25 would require that prior to initial site preparation, CCL Stage III provide supplemental geotechnical investigations for Trains 5 through 7, remaining portions of Train 4, LNG tank area, and flare areas. CCL Stage III contends that the geotechnical investigations to be conducted for Trains 5 through 7 and remaining portions of Train 4 are more closely related to installation of foundations than initial site preparation. Soil improvement, which would be influenced by the results of geotechnical investigations, is considered by the Commission to be an initial site preparation activity. However, performing the geotechnical investigation prior to the placement of soils beneath Trains 5 through 7 would provide incomplete information due to the placement of fill material during site preparation activities for the areas mentioned above. Therefore, CCL Stage III must file a schedule and scope of work for a supplemental geotechnical investigation prior to initial site preparation, and then file the supplemental geotechnical investigation for the discussed areas prior to construction of final design. Environmental Condition Nos. 25 and 26 in the appendix to this order reflect these requirements.

50.     Environmental Recommendation No. 27 requires that, prior to initial site preparation, CCL Stage III provide the upper limit for total settlement for large flexible foundations and the maximum total edge settlement at the proposed project area for the LNG tanks that the Controlled Modulus Columns will be designed to satisfy (EA section B.9.1.6). CCL Stage III contends that the requested settlement information is more closely related to construction of foundations than initial site preparation. In addition, CCL Stage III states that this information will be developed in support of detailed design and is not expected to be available prior to the commencement of initial site preparation, and thus the time frame for this recommendation should be changed from "prior to initial site preparation" to "prior to construction of final design." The settlement limits would be a consideration and bounding condition for foundation design and, as it is necessary to verify if ground improvement is sufficient based on the conditions present on the site, we find that the current timing of this requirement is appropriate and adopt it as Environmental Condition No. 28 in the appendix to this order.

51.     Additionally, CCL Stage III requests that we revise the standard applicable to structures not covered by USDOT PHMSA's Letter of Determination (LOD), as well as modify the timing of complying to the EA's recommended Environmental Condition

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

No. 32 (from "American Society of Civil Engineers (ASCE) 7-16" to "ASCE 7-05" and "prior to initial site preparation" to "prior to construction of final design"). Environmental Recommendation No. 32 requires that CCL Stage III provide its design wind speed criteria for all other facilities not covered by USDOT PHMSA's LOD to be designed to withstand wind speeds commensurate with the risk and reliability associated with the facilities in accordance with ASCE 7-16 or equivalent prior to initial site preparation.[53] CCL Stage III contends that ASCE 7-16 is not applicable to the proposed project and that the wind speed criteria for CCL Stage III would conform with all applicable codes and standards to withstand wind speeds commensurate with the risk and reliability associated with the facilities covered and not covered by USDOT PHMSA's LOD in accordance with ASCE 7-05 and thus, it requests that the environmental recommendation be revised to reference ASCE 7-05 or equivalent rather than ASCE 7-16. While USDOT PHMSA's LOD would apply 49 C.F.R. § 193.2067 to facilities that fall under their jurisdiction, structures that do not fall under that jurisdiction should be designed to ASCE 7-16, as that would result in a more conservative wind load than those developed by ASCE 7-05 after importance factors are applied, as stated in the application, and an overall safer design. We note that CCL Stage III filed an updated wind design category table that is inconsistent with what was filed in the application and what was filed with DOT PHMSA.[54] Based on the updated table, certain structures would have adequate wind speed design criteria, but other structures would not have sufficient wind speed criteria applied. In addition, we disagree that the determinations to wind speed design criteria are more closely related to detailed foundation and structural design than initial site preparations as the recommendation speaks to the basis of design, not the final requirements. Therefore, we find that the current application of ASCE 7-16 to apply to structures not covered by USDOT PHMSA's LOD, as well as the current timing recommended in the EA, is appropriate and adopt the EA's recommended requirements as Environmental Condition No. 33 in the appendix to this order.

52.     CCL Stage III requests we remove three engineering information requests (EIRs) from the EA's Environmental Recommendation No. 36 (EIR Nos. 27, 34, and 64). Environmental Recommendation No. 36 requires that CCL Stage III file information/revisions pertaining to its response to various EIRs prior to construction of final design. CCL Stage III contends that it filed complete responses to EIR Nos. 27, 24, and 64 of staff's January 3, 2019 data request in filings dated January 23, 2019 (Comment No. 64) and February 22, 2019 (Comment Nos. 27 and 34); thus, EIR Nos. 27, 34, and 64 should be removed from Environmental Recommendation No. 36. According to CCL Stage III, CCL Stage III's January 23, 2019 response regarding EIR 64 states that wind design criteria would be included in the engineering procurement, and construction

---

[53] EA at 196.

[54] Comments filed by CCL Stage III on April 29, 2019.

firm's basis of design documents. Once this information is provided in the final design, this item will be closed. Regarding EIR 27 and EIR 34, we have confirmed that the responses provided by CCL Stage III provided on February 22, 2019 are sufficient. However, additional information is needed with regards to EIR 64. We have revised the condition accordingly as Environmental Condition No. 37 in the appendix to this order.

53.    CCL Stage III requests that we fix a typographical mistake in the EA's Environmental Recommendation No. 61. In its comments, CCL Stage III notes that the code applicable to this recommendation is American Petroleum Institute (API) standard 661, not API 662. We have revised the condition accordingly and adopt it as Environmental Condition No. 62 in the appendix to this order.

54.    We have also modified Environmental Condition 96 to clarify the requirements for active and passive mitigation for pool and jet fires and to provide more flexibility in demonstrating the effectiveness of the mitigation for pool and jet fires.

55.    In addition, CCL Stage III provided corrections and clarifications on certain air quality sections of the EA. We acknowledge these comments, but find that these corrections and clarifications do not change any of the findings in the EA, including the conclusion that emissions associated with construction and operation of the project, including emissions associated with anticipated LNG carrier calls, would not have a significant impact on local or regional air quality.[55]

*Updated Greenhouse Gas (GHG) Emissions*

56.    The EA discloses the GHG emissions from construction and operation of the Stage 3 Project,[56] the climate change impacts in the region,[57] and the regulatory structure for GHGs under the Clean Air Act.[58] Specifically, the Stage 3 LNG Project EA estimates that operation of the project, including the terminal expansion, modifications to the Sinton Compressor Station, fugitive emissions from pipeline operations, and marine emissions, will result in direct and indirect GHG emissions of up to 619,700 metric tons per year of carbon dioxide equivalent ($CO_2e$). To put that into context, we note that according to the national net $CO_2e$ emissions estimate in the EPA's Inventory of U.S. Greenhouse Gas Emissions and Sinks (EPA 2019), 5.743 billion metric tons of $CO_2e$

---

[55] EA at 132.

[56] *Id*. 121-132.

[57] *Id.* at 233-236.

[58] *Id.* at 113, 115, 117-118.

were emitted at a national level in 2017 (inclusive of $CO_2e$ sources and sinks).[59]  The direct and indirect operational emissions of the terminal expansion and modifications to the Sinton Compressor Station could potentially increase $CO_2e$ emissions based on the 2017 levels by 0.01 percent at the national level.  Currently, there are no national targets to use a benchmarks for comparison.[60]

57.     The EA also includes a qualitative discussion that discloses various effects of climate change.[61]  The EA acknowledges that the GHG emissions, such as those emitted from the construction and operation of the project will contribute incrementally to climate change.[62]  The Commission has previously concluded it could not determine a project's incremental physical impacts on the environment caused by GHG emissions.[63]  We have also previously concluded it could not determine whether a project's contribution to climate change would be significant.[64]  That situation has not changed.

58.     On June 11, 2019, Corpus Christi Liquefaction submitted a letter outlining the Liquefaction Project's construction and in-service schedule updates.  Accordingly, in Table 1 below we provide information on the overlapping of emissions from construction, commissioning, and operation activities for the Liquefaction Project and Stage 3 Project.

59.     Table 1 reflects Trains 1 and 2 commencing operations in 2019, and Train 3 commencing operation in 2021.  Thus, in 2019, 2020, and 2021, construction, commissioning, and operational emissions for the Liquefaction Project would occur concurrently with construction emissions for the Stage 3 Project.  In 2022 and 2023,

---

[59] EPA, *Inventory of U.S. Greenhouse Gas Emissions and Sinks 1990-2017* at ES6-8 (Table ES-2), https://www.epa.gov/sites/production/files/2019-04/documents/us-ghg-inventory-2019-main-text.pdf (accessed June 2019).

[60] The national emissions reduction targets expressed in the EPA's Clean Power Plan were repealed, Greenhouse Gas Emissions From Existing Electric Utility Generating Units; Revisions to Emissions Guidelines Implementing Regulations, 84 Fed. Reg. 32,520, 32,522-32,532 (July 8, 2019), and the targets in the Paris climate accord are pending withdrawal.

[61] EA at 233-236.

[62] *Id.* at 235.

[63] *Dominion Transmission, Inc.,* 163 FERC ¶ 61,128, at PP 67-70 (2018) (LaFleur, Comm'r, *dissenting in part*; Glick, Comm'r, *dissenting in part*).

[64] *Id.*

emissions from operation of Liquefaction Project Trains 1, 2, and 3 would occur concurrently with emissions from construction, commissioning, and operation of the Stage 3 Project. Table 1 shows the overlapping emissions from construction, commissioning, and operation activities for the Liquefaction Project and the Stage 3 Project by year. Since all construction activities for the Stage 3 Project would be completed in 2023, 2024 would be the first full year of operation for both the Liquefaction Project and the Stage 3 Project.

60.     In 2024, the majority of emissions shown in Table 1 would be generated by the Liquefaction Project. For example, the Liquefaction Project would be responsible for approximately 85 percent of the total GHG ($CO_2e$) emissions shown in Table 1 for that year. The Stage III Project would have a smaller contribution of GHG compared to the Liquefaction Project.

| | TABLE 1. Liquefaction Project and Stage 3 Project Combined Construction, Commissioning, and Operation Emissions (tpy) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Pollutant | | | | | | | |
| Year | $NO_x$ | VOC | CO | $SO_2$ | $PM_{10}$ | $PM_{2.5}$ | Total HAPs | $CO_2e^a$ |
| 2019[b] | 2,136 | 226 | 3,215 | 95 | 1,260 | 212 | 18 | 1,630,452 |
| 2020[c] | 2,654 | 234 | 2,696 | 101 | 815 | 185 | 24 | 2,518,222 |
| 2021[d] | 2,427 | 233 | 3,246 | 91 | 409 | 127 | 30 | 2,637,328 |
| 2022[e] | 2,930 | 492 | 2,816 | 77 | 376 | 143 | 39 | 3,899,949 |
| 2023[f] | 2,948 | 961 | 2,746 | 97 | 376 | 139 | 39 | 4,280,839 |
| 2024[g] (full operation) | 2,955 | 314 | 3,508 | 116 | 125 | 124 | 40 | 4,201,607 |

[a] Metric tons
[b] 2018 construction emissions from Table 4.11-4 from the Liquefaction Project final EIS (FERC, 2014) plus commissioning emissions for Trains 1 and 2 from Table 4.11-8 of the Liquefaction Project final EIS plus operation emissions for Trains 1 and 2 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the Liquefaction Project final EIS plus construction emissions from the Stage 3 Project for 2019.
[c] 2019 construction emissions from Table 4.11-4 from the Liquefaction Project final EIS (FERC, 2014) plus operation emissions for Trains 1 and 2 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the Liquefaction Project final EIS plus construction emissions from the Stage 3 Project for 2020.
[d] 2020 construction emissions from Table 4.11-4 from the Liquefaction Project final EIS (FERC, 2014) plus commissioning emissions for Train 3 from Table 4.11-8 of the Liquefaction Project final EIS plus

Document Accession #: 20191122-3017     Filed Date: 11/22/2019

operation emissions for Trains 1, 2, and 3 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the
Liquefaction Project final EIS plus construction emissions from the Stage 3 Project for 2021.
[e] Operation emissions for Trains 1, 2, and 3 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the
Liquefaction Project final EIS (FERC, 2014) plus construction, commissioning, and operation emissions
from the Stage 3 Project for 2022.
[f] Operation emissions for Trains 1, 2, and 3 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the
Liquefaction Project final EIS (FERC, 2014) plus construction, commissioning, and operation emissions
from the Stage 3 Project for 2023.
[g] Operation emissions for Trains 1, 2, and 3 from Tables 4.11-6, 4.11-9, 4.11-10, and 4.11-12 of the
Liquefaction Project final EIS (FERC, 2014) plus operation emissions from the Stage 3 Project.

61.     Based on the analysis in the EA, as updated with the information in this order, we
conclude that if constructed and operated in accordance with Cheniere's application and
supplements, and in compliance with the environmental conditions in the appendix to this
order, our approval of this proposal would not constitute a major federal action
significantly affecting the quality of the human environment.  Compliance with the
environmental conditions appended to our orders is integral to ensuring that the
environmental impacts of approved projects are consistent with those anticipated by our
environmental analyses.  Thus, Commission staff carefully reviews all information
submitted.  Commission staff will only issue a construction notice to proceed with an
activity when satisfied that the applicants have complied with all applicable conditions.
We also note that the Commission has the authority to take whatever steps are necessary
to ensure the protection of environmental resources during construction and operation of
the project, including authority to impose any additional measures deemed necessary to
ensure continued compliance with the intent of the conditions of the order, as well as the
avoidance or mitigation of unforeseen adverse environmental impacts resulting from
project construction and operation.

62.     Any state or local permits issued with respect to the jurisdictional facilities
authorized herein must be consistent with the conditions of this authorization.  We
encourage cooperation between jurisdictional companies and local authorities.  However,
this does not mean that state and local agencies, through application of state or local laws,
may prohibit or unreasonably delay the construction or operation of facilities approved by
this Commission.[65]

---

[65] *See* 15 U.S.C. § 717r(d) (state or federal agency's failure to act on a permit
considered to be inconsistent with Federal law); *see also Schneidewind v. ANR Pipeline
Co.*, 485 U.S. 293, 310 (1988) (state regulation that interferes with FERC's regulatory
authority over the transportation of natural gas is preempted) and *Dominion*

Document Accession #: 20191122-3017        Filed Date: 11/22/2019

63.    At a hearing held on November 21, 2019, the Commission on its own motion received and made a part of the record in this proceeding all evidence, including the application, and exhibits thereto, and all comments, and upon consideration of the record,

The Commission orders:

(A)    In Docket No. CP18-512-000, CCL Stage III and Corpus Christi Liquefaction are authorized under section 3 of the NGA to site, construct, and operate the proposed project located in San Patricio County, Texas, as described and conditioned herein, and as more fully described in the application and supplements, including any commitments made therein, and subject to the environmental conditions contained in the appendix to this order.

(B)    CCL Stage III's and Corpus Christi Liquefaction's proposed liquefaction facilities shall be constructed and made available for service within five years of the date of this order.

(C)    In Docket No. CP18-513-000, a certificate of public convenience and necessity under section 7(c) of the NGA is issued to Cheniere Pipeline authorizing it to construct and operate the proposed project, as described and conditioned herein, and as more fully described in Cheniere Pipeline's application and supplements, including any commitments made therein.

(D)    The certificate authorized in Ordering Paragraph (C) above is conditioned on:

(1)    Cheniere Pipeline's facilities being constructed and made available for service within five years of the date of this order;

(2)    Cheniere Pipeline's compliance with all applicable Commission regulations under the NGA, particularly the general terms and conditions set forth in Parts 154, 157, and 284, and paragraphs (a), (c), (e), and (f) of section 157.20 of the regulations;

(3)    Cheniere Pipeline's compliance with the environmental conditions contained in the appendix to this order.

(E)    Cheniere Pipeline's proposed incremental recourse reservation and

---

*Transmission, Inc. v. Summers*, 723 F.3d 238, 245 (D.C. Cir. 2013) (noting that state and local regulation is preempted by the NGA to the extent it conflicts with federal regulation, or would delay the construction and operation of facilities approved by the Commission).

JA134

Document Accession #: 20191122-3017       Filed Date: 11/22/2019

authorized overrun charges are approved as initial rates for the Stage 3 Pipeline, as conditioned above.

(F)     Cheniere Pipeline's proposed incremental fuel retainage percentage is approved.

(G)     Cheniere Pipeline shall file actual tariff records with the incremental initial rates at least 60 days prior to the date the project facilities go into service.

(H)     Cheniere Pipeline shall keep separate books and accounts of costs attributable to the proposed incremental services, as described above.

(I)     CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline shall notify the Commission's environmental staff by telephone or e-mail of any environmental noncompliance identified by other federal, state, or local agencies on the same day that such agency notifies CCL Stage III, Corpus Christi Liquefaction, or Cheniere Pipeline.  CCL Stage III, Corpus Christi Liquefaction, and Cheniere Pipeline shall file written confirmation of such notification with the Secretary of the Commission within 24 hours.

By the Commission.  Commissioner Glick is dissenting with a separate statement attached.

( S E A L )

Kimberly D. Bose,
Secretary.

JA135

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

**Reply Refer To:**
OEP/DG2E/Gas Branch 2
Corpus Christi Liquefaction Stage III,
LLC
Docket No. CP18-512-000

January 10, 2020

VIA FERC Service

Akayla Broussard
Cheniere Energy, Inc.
7000 Milam Street, Suite 800
Houston, TX 77002

**RE**:    **Authorization to Proceed with Early Works**

Dear Ms. Broussard:

I grant your December 20, 2019 request for Corpus Christi Liquefaction Stage III, LLC (CCL) to proceed with early works within the Stage 3 LNG Facilities which include: pile testing activities, soil stabilization tests, and testing of dewatering techniques.  In considering this authorization, we have reviewed CCL's Implementation Plan (IP) A filed on December 13, 2019, IP A-1 filed on December 20, 2019, and a supplemental filing filed on January 8, 2020.

These filings included the information necessary to meet the conditions of the Federal Energy Regulatory Commission's (FERC or Commission) November 22, 2019 *Order Granting Authorization Under Sections 3 and 7of the Natural Gas Act* (Order) to CCL, in the above- referenced docket.  We have confirmed the receipt of all federal authorizations relevant to the approved activities herein.

Site preparation and construction of facilities of the Corpus Christi Stage 3 LNG Facilities are not authorized at this time.  Additional authorizations will be released once Cheniere has demonstrated full compliance with the conditions of the Order.

JA136

Document Accession #: 20200110-3016    Filed Date: 01/10/2020

I remind you that CCL must comply with all applicable remaining terms and conditions of the Order.  If you have any questions regarding this approval, please contact Kandilarya Barakat at (202) 502-6365.


Sincerely,


Eric Howard, Chief
Gas Branch 2
Division of Gas – Environment and
    Engineering

Document Accession #: 20200117-3032   Filed Date: 01/17/2020

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

<u>**Reply Refer To:**</u>
OEP/DG2E/Gas Branch 2
Cheniere Corpus Christi Pipeline, L.P.
Docket No. CP18-513-000

January 17, 2020

VIA FERC Service

Akayla Broussard
Cheniere Energy, Inc.
7000 Milam Street, Suite 800
Houston, TX 77002

**RE**:   **Authorization to Proceed with Construction of Sinton Compression Unit No. 1**

Dear Ms. Broussard:

I grant your January 10, 2020 request for Cheniere Corpus Christi Pipeline, L.P. (CCPL) to proceed with construction of Unit No. 1 at the Sinton Compression Station. In considering this authorization, we have reviewed CCPL's Implementation Plan PL1 filed on January 10, 2020 and supplemental filing filed on January 16, 2020.  The installation of Unit 1 at this time meets the Stage 3 Project purpose and needs, but would be constructed and operated independently from the remaining Stage 3 facilities.

These filings included the information necessary to meet the conditions of the Federal Energy Regulatory Commission's (FERC or Commission) November 22, 2019 *Order Granting Authorization Under Sections 3 and 7of the Natural Gas Act* (Order) to CCPL, in the above- referenced docket.  We have confirmed the receipt of all federal authorizations relevant to the approved activities herein.

Site preparation and construction of facilities of the Corpus Christi Liquefaction Stage 3 LNG Facilities are not authorized at this time.  Additional authorizations will be released once Cheniere has demonstrated full compliance with the conditions of the Order.

JA138

Document Accession #: 20200117-3032       Filed Date: 01/17/2020

2

     I remind you that CCPL must comply with all applicable remaining terms and conditions of the Order.  If you have any questions regarding this approval, please contact Kandilarya Barakat, at (202) 502-6365.

Sincerely,

Eric Howard, Chief
Gas Branch 2
Division of Gas-Environment and
Engineering

JA139

FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

**Reply Refer To:**
OEP/DG2E/Gas Branch 2
Corpus Christi Liquefaction Stage III, LLC
Docket No. CP18-512-000

February 14, 2020

VIA FERC Service

Akayla Broussard
Cheniere Energy, Inc.
7000 Milam Street, Suite 800
Houston, TX 77002

**RE**:    **Authorization to Proceed with Road Improvements for Early Works**

Dear Ms. Broussard:

I grant your January 14, 2020 request for Corpus Christi Liquefaction Stage III, LLC (CCL Stage III) to proceed with road improvements to the existing interior roads within temporary workspace reviewed and approved in association with the Corpus Christi Liquefaction Project (CP12-507-000) and permanent operational areas approved for the Corpus Christi Stage 3 Project. In considering this authorization, we have reviewed CCL Stage III's supplemental information filed on February 14, 2020.

These filings are adequate to meet the conditions of the Federal Energy Regulatory Commission's November 22, 2019 *Order Granting Authorization Under Sections 3 and 7of the Natural Gas Act* (Order) to CCL Stage III, in the above- referenced docket.

We have confirmed the receipt of all federal authorizations relevant to the approved activities herein. Site preparation and construction of facilities of the Corpus Christi Liquefaction Stage 3 LNG Facilities are not authorized at this time. Additional authorizations will be released once CCL Stage III has demonstrated full compliance with the conditions of the Order.

JA140

I remind you that CCL Stage III must comply with all applicable remaining terms and conditions of the Order.  If you have any questions regarding this approval, please contact Kandilarya Barakat, at (202) 502-6365.

Sincerely,

Eric Howard, Chief
Gas Branch 2
Division of Gas-Environment and
    Engineering

Document Accession #: 20201218-3039     Filed Date: 12/18/2020

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

<u>**In Reply Refer To**</u>:
OEP/DG2E/Gas 2
Cheniere Energy, Inc.
Corpus Christi Stage 3 Project
Docket No. CP18-513-000

December 18, 2020

VIA Electronic Mail

Rebecca Muckleroy
Cheniere Corpus Christi Pipeline, L.P.
Rebecca.Muckleroy@cheniere.com

**Re: Authorization to Commence Service**

Dear Ms. Muckleroy:

I grant Cheniere Corpus Christi Pipeline, L.P.'s (Cheniere) December 1, 2020 request, as supplemented on December 9 and 18, 2020, to place into service the Unit 1 expansion at the existing Sinton Compressor Station in San Patricio County, Texas, associated with the Corpus Christi Stage 3 Project. Your request complies with condition number 12 of the Commission's November 22, 2019 *Order Granting Authorizations under Section 3 and Section 7 of the Natural Gas Act* (Order) issued in the above-referenced docket. Based on Cheniere's recent bi-weekly construction status reports and supplemental documentation, we find that Cheniere has adequately stabilized areas disturbed by construction and that restoration related to the Sinton Compressor Station expansion is proceeding satisfactorily.

I remind you that Cheniere must comply with all remaining terms and conditions of the Order. If you have any questions regarding this approval, please contact Nancy Fox-Fernandez at (202) 502-8559.

Sincerely,

J. Rich McGuire, Director
Division of Gas – Environment
and Engineering

JA142

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2023, I

electronically filed the foregoing Joint Appendix with the Clerk of the

Court using the CM/ECF system, which will send notice of such filing

to all registered CM/ECF users.

*/s/ Tom Gosselin*
Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

*Attorney for Sierra Club*