**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 22-1235, 22-1267 (consolidated)

═══════════════════════════════

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

───────────────

SIERRA CLUB and PUBLIC CITIZEN,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent,

CORPUS CHRISTI LIQUEFACTION, LLC, and
CHENIERE CORPUS CHRISTI PIPELINE, L.P.,

Intervenors-Respondents.

───────────────

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

───────────────

**FINAL BRIEF FOR INTERVENORS
CORPUS CHRISTI LIQUEFACTION, LLC, AND
CHENIERE CORPUS CHRISTI PIPELINE, L.P.**

───────────────

JANNA ROMAINE CHESNO
CHENIERE ENERGY, INC.
701 8th Street, N.W.
Suite 810
Washington, D.C. 20001
(202) 442-3050

CATHERINE E. STETSON
SEAN MAROTTA
MICHAEL J. WEST
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

*Counsel for Corpus Christi Liquefaction, LLC, and
Cheniere Corpus Christi Pipeline, L.P.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    PARTIES**

1.    The parties to the proceeding are listed in the Petitioners' opening brief.

2.    a.  Intervenor Cheniere Corpus Christi Liquefaction, LLC, operates the Corpus Christi Liquefaction facility in Nueces and San Patricio Counties, Texas.  It is also the sponsor of the Stage 3 LNG project at the Corpus Christi Liquefaction facility.  Corpus Christi Liquefaction, LLC, is a Delaware limited liability company with its primary place of business located at 700 Milam Street, Suite 1900, Houston, Texas 77002.  It is a direct, wholly-owned subsidiary of Cheniere Corpus Christi Holdings, LLC, a Delaware limited liability company.  Cheniere Corpus Christi Holdings, LLC, is a direct, wholly-owned subsidiary of Cheniere CCH Holdco I, LLC, a Delaware limited liability company.  Cheniere CCH Holdco I, LLC, is a direct, wholly-owned subsidiary of Cheniere CCH Holdco II, LLC, a Delaware limited liability company.  Cheniere CCH Holdco II, LLC, is directly owned by Cheniere Energy, Inc., a Delaware corporation.

b.  Intervenor Cheniere Corpus Christi Pipeline, L.P., is a natural gas transmission company engaged in the business of transporting natural gas by pipeline.  Cheniere Corpus Christi Pipeline, L.P., is a Delaware limited partnership with its primary place of business located at 700 Milam Street, Suite 1900,

Houston, Texas 77002.  Cheniere Corpus Christi Pipeline, L.P., is a direct, wholly-owned subsidiary of Cheniere Corpus Christi Holdings, LLC, a Delaware limited liability company.  Cheniere Corpus Christi Holdings, LLC, is a direct, wholly-owned subsidiary of Cheniere CCH Holdco I, LLC, a Delaware limited liability company.  Cheniere CCH Holdco I, LLC, is a direct, wholly-owned subsidiary of Cheniere CCH Holdco II, LLC, a Delaware limited liability company.  Cheniere CCH Holdco II, LLC, is directly owned by Cheniere Energy, Inc., a Delaware corporation.

### B.    RULINGS UNDER REVIEW

The rulings under review are listed in Petitioners' opening brief and the Commission's brief.

### C.    RELATED CASES

The related cases are listed in Petitioners' opening brief and the Commission's brief.

/s/ Catherine E. Stetson
Catherine E. Stetson

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ......................................................................iv

GLOSSARY ...............................................................................................x

INTRODUCTION .......................................................................................1

STATEMENT OF THE CASE.......................................................................3

STATUTES AND REGULATIONS.................................................................10

SUMMARY OF ARGUMENT .......................................................................10

STANDARD OF REVIEW ...........................................................................13

ARGUMENT ..............................................................................................14

    I.    PETITIONERS' ARGUMENT THAT FERC DID NOT CLEARLY
        APPLY ITS GOOD-CAUSE STANDARD IS UNPRESERVED............................14

    II.   THE COMMISSION'S DECISION WAS ADEQUATELY EXPLAINED
        AND SUPPORTED BY SUBSTANTIAL EVIDENCE...........................................15

CONCLUSION ..........................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

C̲ASES:

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
  522 U.S. 359 (1998) .......................................................................... 20

*BellSouth Corp. v. FCC*,
  162 F.3d 1215 (D.C. Cir. 1999) .......................................................... 18

*Big Bend Conservation All. v. FERC*,
  896 F.3d 418 (D.C. Cir. 2018) ........................................................... 14

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
  419 U.S. 281 (1974) ......................................................................... 16

*Casino Airlines, Inc. v. NTSB*,
  439 F.3d 715 (D.C. Cir. 2006) ........................................................... 19

*Coburn v. McHugh*,
  679 F.3d 924 (D.C. Cir. 2012) .............................................. 19, 20, 21

*Constellation Energy Commodities Grp., Inc. v. FERC*,
  457 F.3d 14 (D.C. Cir. 2006) ............................................................ 27

*Delaware Riverkeeper Network v. FERC*,
  45 F.4th 104 (D.C. Cir. 2022) ..................................................... 14, 15

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Off. of Foreign Assets Control*,
  857 F.3d 913 (D.C. Cir. 2017) ................................... 11, 13, 16, 19, 20

*Farrell v. Blinken*,
  4 F.4th 124 (D.C. Cir. 2021) .................................................. 19, 20, 21

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ............................................................... 13, 20

*Authorities upon which we chiefly rely are marked with an asterisk.

iv

**TABLE OF AUTHORITIES—Continued**

Page

*Finberg v. United States Dep't of Agric.*,
  6 F.4th 1332 (D.C. Cir. 2021) ........................................................ 13

*Friedman v. FAA*,
  890 F.3d 1092 (D.C. Cir. 2018) ...................................................... 19

*Mid-Tex Electric Cooperative, Inc. v. FERC*,
  773 F.2d 327 (D.C. Cir. 1985) ................................................... 20, 21

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
  876 F.2d 109 (D.C. Cir. 1989) ........................................................ 15

*Public Citizen, Inc. v. FAA*,
  988 F.2d 186 (D.C. Cir. 1993) ........................................................ 16

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) .................................................................... 20

*Select Specialty Hospital-Bloomington, Inc. v. Burwell*,
  757 F.3d 308 (D.C. Cir. 2014) ................................................... 20, 21

*Sierra Club v. FERC*,
  672 F. App'x 38 (D.C. Cir. 2016) ..................................................... 3

*Transmission Agency of N. Cal. v. FERC*,
  495 F.3d 663 (D.C. Cir. 2007) ........................................................ 13

*\*Xcel Energy Servs., Inc. v. FERC*,
  41 F.4th 548 (D.C. Cir. 2022) ........................................................ 16

**ADMINISTRATIVE PROCEEDINGS:**

*\*Adelphia Gateway, LLC*,
  178 FERC ¶ 61,030 (2022) ........................................ 6, 7, 17, 22, 25

*Altamont Gas Transmission Co.*,
  75 FERC ¶ 61,348 (1996) ............................................................... 5

**TABLE OF AUTHORITIES—Continued**

Page

*Chestnut Ridge Storage LLC,*
   139 FERC ¶ 61,149 (2012) .................................................................. 17, 21, 26

*Columbia Gas Transmission, LLC,*
   170 FERC ¶ 61,246 (2020) ................................................................................... 28

*Constitution Pipeline Co.,*
   165 FERC ¶ 61,081 (2018) ................................................................................... 21

*Corpus Christi Liquefaction, LLC,*
   149 FERC ¶ 61,283 (2014) ..................................................................................... 3

*\*Delfin LNG LLC,*
   178 FERC ¶ 61,031 (2022) ....................................................... 17, 18, 19, 22, 23

*Equitrans, L.P.,*
   147 FERC ¶ 61,032 (2014) ................................................................................... 28

*Freeport LNG Dev., L.P.,*
   181 FERC ¶ 61,023 (2022) ................................................................................... 23

*\*Letter Order to LA Storage, LLC,*
   Docket No. CP08-454-000 (issued Nov. 14, 2013)........................................ 18, 22

*Magnolia LNG, LLC,*
   Docket Nos. CP14-347-000, CP19-19-000, CP14-511-000 (Oct. 7, 2020) ........ 22

*Midship Pipeline Co., LLC,*
   173 FERC ¶ 61,255 (2020) ................................................................................... 22

*Port Arthur LNG, LLC,*
   181 FERC ¶ 61,024 (2022) ................................................................................... 23

*Rio Grande LNG, LLC,*
   181 FERC ¶ 61,032 (2022) ................................................................................... 23

*Trunkline Gas Co.,*
   179 FERC ¶ 61,086 (2022) ................................................................................... 23

# TABLE OF AUTHORITIES—Continued

<u>Page</u>

**STATUTES:**

5 U.S.C. § 706(2)(A) ................................................................ 13

5 U.S.C. § 706(2)(E) ................................................................ 13

15 U.S.C. § 717b(a) ................................................................. 4

15 U.S.C. § 717b(e) ................................................................. 4

15 U.S.C. § 717f(e) ................................................................. 5

15 U.S.C. § 717o .................................................................... 7

15 U.S.C. § 717r ................................................................. 10, 14

**RULES:**

Fed. R. App. P. 26(b) .............................................................. 24

Fed. R. App. P. 28.1(f)(4) ........................................................ 24

Fed. R. App. P. 31(a) .............................................................. 24

Fed. R. App. P. 41(d)(2) .......................................................... 25

Fed. R. Civ. P. 4(d)(2) ............................................................ 25

Fed. R. Civ. P. 4(m) ............................................................... 24

Fed. R. Civ. P. 5(d)(3) ............................................................ 25

Fed. R. Civ. P. 5.2(e) ............................................................. 25

Fed. R. Civ. P. 6(b)(1) ............................................................ 24

Fed. R. Civ. P. 6(c)(1)(C) ........................................................ 25

**TABLE OF AUTHORITIES—Continued**

<u>Page</u>

Fed. R. Civ. P. 16(b)(2) ................................................................. 24

Fed. R. Civ. P. 16(b)(4) ................................................................. 25

Fed. R. Civ. P. 26(a)(3) ................................................................. 25

Fed. R. Civ. P. 26(b)(2)(B) ............................................................ 25

Fed. R. Civ. P. 26(c)(2) ................................................................. 25

Fed. R. Civ. P. 32(b)(4) ................................................................. 25

Fed. R. Civ. P. 32(c) ..................................................................... 25

Fed. R. Civ. P. 35(a)(2) ................................................................. 25

Fed. R. Civ. P. 43(a) ..................................................................... 25

Fed. R. Civ. P. 44(a)(2)(C) ............................................................ 25

Fed. R. Civ. P. 45(e)(1)(D) ............................................................ 25

Fed. R. Civ. P. 47(c) ..................................................................... 25

Fed. R. Civ. P. 55(c) ..................................................................... 25

Fed. R. Civ. P. 65(b)(2) ................................................................. 25

Fed. R. Civ. P. 71.1(h)(2)(C) ......................................................... 25

Fed. R. Civ. P. 73(b)(3) ................................................................. 25

Fed. R. Civ. P. 77(c)(2) ................................................................. 25

**REGULATIONS:**

18 C.F.R. § 157.20 (2022) ............................................................. 5

**TABLE OF AUTHORITIES—Continued**

<u>Page</u>

18 C.F.R. § 385.2005 (2022) ............................................................. 27, 28

18 C.F.R. § 385.2008 (2022) ............................................................. 6, 16

**OTHER AUTHORITY:**

Final Investment Decision (FID) (US),
  Westlaw Practical Law Glossary Item w-026-2352 ............................................. 7

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Authorization Order | *Corpus Christi Liquefaction Stage III, LLC*, 169 FERC ¶ 61,135 (2019) |
| Cheniere | Corpus Christi Liquefaction, LLC, and Cheniere Corpus Christi Pipeline, L.P. |
| The Commission or FERC | Federal Energy Regulatory Commission |
| Extension Order | *Corpus Christi Liquefaction Stage III, LLC*, 179 FERC ¶ 61,087 (2022) |
| LNG | Liquefied natural gas |
| Petitioners | Sierra Club and Public Citizen |

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

---

Nos. 22-1235, 22-1267 (consolidated)

---

SIERRA CLUB and PUBLIC CITIZEN,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent,

CORPUS CHRISTI LIQUEFACTION, LLC, and
CHENIERE CORPUS CHRISTI PIPELINE, L.P.,

Intervenors-Respondents.

---

**FINAL BRIEF FOR INTERVENORS
CORPUS CHRISTI LIQUEFACTION, LLC, AND
CHENIERE CORPUS CHRISTI PIPELINE, L.P.**

---

## INTRODUCTION

The COVID-19 pandemic brought the world to a temporary standstill. In addition to the incalculable human cost, the pandemic sent workforces home, snarled supply chains, and wreaked havoc on global markets.

This last circumstance presented a particular problem for Corpus Christi Liquefaction, LLC and Cheniere Corpus Christi Pipeline, L.P. (collectively, Cheniere), which had received approval from the Federal Energy Regulatory Commission to expand their natural-gas liquefaction facilities only a few months

1

before the pandemic's onset.  Despite Cheniere's continued interest in the project, the pandemic's effect on the global energy market delayed Cheniere's ability to reach a final investment decision.  Cheniere accordingly asked the Commission for a two-and-a-half year extension on the deadline for placing the project facilities into service.

The Commission granted the extension.  It explained that the logistical and economic effects of the COVID-19 pandemic were—to put it mildly—unforeseeable and that Cheniere had consistently made good-faith efforts to promptly complete its project, including preparing the project site and securing long-term contracts for the project's capacity.  Cheniere therefore easily hurdled the Commission's modest "good cause" standard for in-service-date extensions.

Petitioners now ask this Court to remand—but not vacate—the Commission's extension order.  Petitioners concede that the Commission could have been right in concluding that a global pandemic constituted an unforeseeable circumstance preventing Cheniere from meeting its original construction deadline.  Petitioners' only complaint is that the Commission supposedly did not sufficiently *explain* why it came to that conclusion on Cheniere's application.

But Petitioners' hearts are not in it.  Their arguments are unpreserved, perfunctory, and underdeveloped.  For good reason:  The Commission articulated the relevant standard, explained how Cheniere met that standard, analogized to

similar cases, and responded to Petitioners' objections.  In short, the Commission engaged in the reasoned decisionmaking the Administrative Procedure Act and this Court's cases demand.

The petitions for review should be denied.

## STATEMENT OF THE CASE

1.  On the northern shore of Corpus Christi Bay in Texas sits the Corpus Christi Liquefaction facility, the first greenfield liquefied natural gas (LNG) export facility in the contiguous United States.  There, on more than 1,000 acres, Corpus Christi Liquefaction, LLC, liquefies and exports natural gas.  JA112 [Authorization Order P 5].  The facility includes three LNG liquefaction trains—compressors that liquefy natural gas—three LNG storage tanks, and a marine terminal with two berths.  *Id.*  It can export roughly 15 million metric tons per annum of LNG and is connected to existing natural gas pipeline systems by the 23-mile-long Cheniere Pipeline.  JA112-113 [*Id.* PP 5-6].

The Commission authorized the siting, construction, and operation of the liquefaction facility and pipeline in 2014.  *See Corpus Christi Liquefaction, LLC*, 149 FERC ¶ 61,283 (2014).  This Court denied Sierra Club's petition for review of that order.  *Sierra Club v. FERC*, 672 F. App'x 38 (D.C. Cir. 2016) (per curiam).  The Court "explicitly rejected" Sierra Club's arguments "regarding the Commission's consideration of the Corpus Christi projects' indirect and

3

cumulative effects under the National Environmental Policy Act," concluding that those arguments had "no merit." *Id.* at 39.

2.  In 2018, Cheniere applied to expand the complex's liquefaction and export capacity. *See* JA111 [Authorization Order P 1]. Because the original liquefaction facility and pipeline were constructed in two stages, this new project would be "Stage 3."

As part of Stage 3, Cheniere proposed to build seven midscale liquefaction trains and a LNG storage tank. *See id.* These facilities would allow Cheniere to produce an additional 11.45 million metric tons per annum of LNG. *See* JA113 [*Id.* P 7]. Cheniere explained that it would build these facilities adjacent to the existing liquefaction facility and that "no new marine facilities will be required." *See* JA114-115 [*Id.* P 11]. Stage 3 also involved a new pipeline and associated facilities. The new pipeline would be the same size and roughly the same length as the existing one, and would run 25 feet parallel to the existing pipeline. *See* JA111, 115 [*Id.* PP 1, 13].

FERC authorized Stage 3 in November 2019. JA112 [*Id.* P 3]; *see* 15 U.S.C. § 717b(a), (e) (a liquefaction facility "shall" be authorized unless the facility "will not be consistent with the public interest"); *EarthReports, Inc. v. FERC*, 828 F.3d 949, 953 (D.C. Cir. 2016) (discussing relevant standards). Public Citizen, despite having intervened in the administrative proceedings, *see* JA117

4

[Authorization Order P 17], did not seek rehearing or petition for review from that 2019 order.

3.  The Commission's authorization order directed Cheniere to construct and make Stage 3 available for service by November 2024.  *See* JA134 [*Id.* P 63(B)]. The Natural Gas Act does not set deadlines.  The Commission nonetheless sets deadlines in its authorization orders to "diminish[ ] the potential that the public interest might be compromised by significant changes occurring between issuance of the certificate and commencement of the project."  *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, 62,103 (1996); *see* 15 U.S.C. § 717f(e) (granting the Commission "the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require"); 18 C.F.R. § 157.20(b) (2022) (requiring that projects be made available for service within the "period of time . . . specified by the Commission in each order").

Cheniere got right to it.  Less than two months after the Commission approved Stage 3, the Commission authorized Cheniere to commence construction of one of the units at the pipeline compressor station.  *See* JA138 [Letter Order Granting Authorization to Proceed with Construction of Sinton Compressor Station No. 1, Docket No. CP18-513-000 (Jan. 17, 2020)].  Eleven months later, the Commission authorized Cheniere to place this unit into service.  *See* JA142 [Letter

5

Order Granting Authorization to Commence Service, Docket No. CP18-513-000 (Dec. 18, 2020)].

Cheniere simultaneously began preparing to construct Stage 3's liquefaction facility. In January 2020, Cheniere received Commission approval to take the first steps in preparing the construction site. *See* JA136 [Letter Order Granting Authorization to Proceed with Early Works, Docket No. CP18-512-000 (Jan. 10, 2020)]. The next month, Cheniere received approval to improve the existing roads at the project site. *See* JA140 [Letter Order Granting Authorization to Proceed with Road Improvements for Early Works, Docket No. CP18-512-000 (Feb. 14, 2020)]. Cheniere began these activities shortly thereafter.

4. COVID-19's spread in the United States in March 2020 changed everything. Cheniere suspended its work on the Stage 3 liquefaction facilities. JA026 [R1, Extension Request at 1]. COVID-19 also roiled the global markets, including the market for LNG. JA027 [*Id.* at 2].

In light of the pandemic, Cheniere in December 2021 requested a 31-month extension to complete Stage 3 and make it available for service. *See* JA026-027 [*Id.* at 1-2]. The Commission grants such requests for "good cause," 18 C.F.R. § 385.2008(a) (2022), which "can be shown by a project sponsor demonstrating that it made good faith efforts to meet its deadline but encountered circumstances beyond its control," *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030, at P 15 (2022).

6

The Commission "consider[s] extension requests on a case-by-case basis." *Id.*; *see also* 15 U.S.C. § 717o ("The Commission shall have power to perform any and all acts, and to . . . amend . . . such orders . . . as it may find necessary or appropriate to carry out the provisions of" the Natural Gas Act.).

In its extension request, Cheniere recounted the steps it had taken to launch Stage 3. *See* JA026 [R1, Extension Request at 1]. But the "pandemic resulted in adverse economic and logistical conditions that slowed commercial progress and precluded [Cheniere] from making a Final Investment Decision . . . on the Stage 3 Project in order to meet the current permitted construction duration." *Id.* A final investment decision is "the decision of a project sponsor to commit and proceed with the project." *See* Final Investment Decision (FID) (US), Westlaw Practical Law Glossary Item w-026-2352. It requires the project sponsor to "be confident that it will be able to sell a significant percentage of the project's output . . . at a price that will enable" the sponsor to repay loans and generate an adequate return for investors. *Id.* A final investment decision is "necessary for the sponsor to secure project financing." *Id.*

Cheniere explained that despite this setback in reaching "full commercialization," it had recently signed long-term contracts signifying "that commercialization for the Stage 3 Project is close to completion" and that it expected to make a positive final investment decision during 2022. JA026-027

7

[R1, Extension Request at 1-2].  Cheniere estimated that it could make Stage 3 available for service by June 2027.  JA027 [*Id.* at 2].

Petitioners intervened in the extension proceedings and protested Cheniere's application.  *See* JA003 [R34, Extension Order P 5].  Their protest argued, as relevant here, that Cheniere had not shown good cause for the requested extension because its delay was "market driven."  JA005 [*Id.* P 9]; *see also* JA032-033 [R3, Protest at 9-10].  As Petitioners saw it, the LNG market seizing in response to COVID-19 was not an "unforeseeable barrier[ ] worthy of an extension."  JA005 [R34, Extension Order P 9].

In the meantime, Cheniere resumed its work on the Stage 3 project.  In January 2022, Cheniere reported to FERC that it had "resumed the early work activities" the Commission had already authorized.  *See* JA037 [R6, January 2022 Progress Report at 3].  Two months later, the Commission authorized Cheniere to begin additional site-preparation work.  *See* JA043 [R11, Letter Order Granting Authorization to Proceed with Additional Early Works at 1].  The month after that, the Commission authorized Cheniere to proceed with more site-preparation activities.  *See* JA071 [R29, Letter Order Granting Authorization to Proceed with Soil Stabilization and Associated Activities at 1]; JA044 [R13, March 2022 Request at 1].

8

In May 2022, the Commission granted Cheniere's extension request. JA001-013 [R34, Extension Order]. The Commission rejected Petitioners' argument that the delay was market-driven, explaining that Cheniere "continue[s] to pursue the project and remain[s] optimistic that the COVID-19 pandemic's impact on LNG market conditions is waning." JA006 [*Id.* P 11]. The Commission also "note[d] that . . . there has been evidence of an increase in demand for LNG," particularly from the European Union. *Id.* Citing two prior orders, the Commission explained that it had "previously found good cause exists for an extension of time where a certificate holder requested more time to secure contracts with potential customers." JA006-007 [*Id.* P 12]. And Cheniere had "made progress in preparing the site for the Stage 3 LNG facilities for eventual construction and continues to make efforts to secure long-term contracts." JA007 [*Id.* P 13].

The Commission accordingly concluded that Cheniere had "demonstrated continued interest in the project and ha[d] made a good faith effort to meet the 2024 deadline." *Id.* This continued interest, paired with "[t]he unforeseeable impacts of the COVID-19 pandemic," constituted good cause and warranted an extension. *Id.*

While Petitioners sought rehearing, *see* JA073-084 [R39, Rehearing Request], Cheniere continued its work on Stage 3, mobilizing construction

9

personnel and equipment, JA090 [R48, May Construction Report at 4]. Cheniere also began accepting materials to support road improvements and continued preparing the site for construction. *Id.*

The Commission denied rehearing, reincorporating its analysis from the original extension order. JA017 [R68, Rehearing Order P 9]. Petitioners' petition for review followed.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are contained in the addendum to the Commission's brief.

## SUMMARY OF ARGUMENT

**I.** This Court lacks jurisdiction over Petitioners' argument that FERC failed to reasonably explain itself. Under 15 U.S.C. § 717r, courts can consider only those arguments petitioners specifically raise in their rehearing requests at the Commission. Petitioners did not argue in their rehearing request that the Commission failed to reasonably explain itself in granting Cheniere an extension; they argued only that the evidence did not support FERC's good-cause finding.

**II.A.** On the merits, the Court should deny the petition for review because FERC reasonably explained why Cheniere had shown good cause for the Commission to extend the company's construction deadline by 31 months.

The Commission articulated its good-cause standard, which is satisfied if the project sponsor demonstrates that it "made good faith efforts to meet its deadline but encountered circumstances that prevented it from doing so." JA004-005 [R34, Extension Order P 8]. The Commission then explained how Cheniere met that standard. Cheniere's "progress in preparing the site for the Stage 3 LNG Project facilities for eventual construction and . . . efforts to secure long-term contracts" evidenced Cheniere's good faith. JA007 [*Id.* P 13]. And the pandemic's effects on the global LNG market, which in turn delayed Cheniere's ability to fully commercialize the project and receive a favorable final investment decision, were an unforeseeable circumstance that prevented Cheniere from meeting the original in-service deadline. JA005-007 [*Id.* PP 10, 12, 13].

FERC further explained that past Commission decisions have found that similar unforeseeable circumstances constitute good cause for an extension: "The Commission has previously found good cause exists for an extension of time where a certificate holder requested more time to secure contracts with potential customers." JA006-007 & n.32 [*Id.* P 12 & n.32] (citing two prior orders). The Commission's analysis satisfies the APA's reasonable-explanation requirement, under which this Court will uphold an agency decision if the "agency's path may reasonably be discerned." *Epsilon Elecs., Inc. v. United States Dep't of Treasury,*

11

*Off. of Foreign Assets Control*, 857 F.3d 913, 924 (D.C. Cir. 2017) (citation omitted).

   **B.**  Petitioners argue that the Commission's good-cause standard can be met only in circumstances where it is *impossible* for the certificate holder to meet the original deadline.  That is meritless.  Impossibility is one way for a certificate holder to show good cause, but it is not the only way.  The Commission here cited two past orders establishing that unforeseen commercial difficulties can be sufficient to prevent a certificate holder from meeting its deadline.  JA006-007 & n.32 [R34, Extension Order P 12 & n.32].  The Commission's good-cause test is thus akin to the good-cause standard found throughout the Federal Rules of Civil and Appellate Procedure: a broad and modest test that is intended to account for a wide array of unforeseen circumstances.  This Court should reject Petitioners' attempt to use the reasonable-explanation requirement to impose a different and more rigorous good-cause standard on the Commission.

   **C.**  Finally, the Commission had more than enough facts to conclude that Cheniere had shown good cause warranting an extension for Stage 3.  Under Commission precedent, Cheniere could show good cause by explaining that the pandemic's effects on global demand for LNG prevented it from making a timely final investment decision.  This ground is straightforward and well within the Commission's wheelhouse; Cheniere did not have to submit a treatise to show its

entitlement. Cheniere's application, together with the rest of the FERC docket and the Commission's pre-existing expert knowledge of the LNG market and the pandemic's effects on it, constituted a sufficient factual basis for the Commission to reach the decision it did.

## STANDARD OF REVIEW

For properly preserved arguments, this Court will set aside a Commission order that is "arbitrary [and] capricious" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see also Finberg v. United States Dep't of Agric.*, 6 F.4th 1332, 1336 (D.C. Cir. 2021); *Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 671 (D.C. Cir. 2007). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Under this "deferential standard of review," this Court "will uphold an agency decision where 'the agency's path may reasonably be discerned,' even if the decision is 'of less than ideal clarity.' " *Epsilon Elecs.*, 857 F.3d at 924 (citation omitted). "Substantial evidence is lacking if, considering the record as a whole, no reasonable factfinder could have made the same finding as the agency." *Finberg*, 6 F.4th at 1336.

13

## ARGUMENT

I.  **PETITIONERS' ARGUMENT THAT FERC DID NOT CLEARLY APPLY ITS GOOD-CAUSE STANDARD IS UNPRESERVED.**

Petitioners argue that the Commission did not reasonably explain itself because it "appeared not to apply the standard FERC itself announced"—that good cause warrants an extension where, despite a certificate holder's good-faith efforts, unforeseeable circumstances prevented it from meeting its deadline.  Pet'rs Br. 19-20.  This argument fails at the outset because Petitioners did not raise it on rehearing at FERC.  *See* FERC Br. 25.

As this Court recently explained, "[u]nder 15 U.S.C. § 717r, courts may not consider an 'objection to the order of the Commission . . . unless such objection shall have been urged before the Commission in the application for rehearing.' " *Delaware Riverkeeper Network v. FERC*, 45 F.4th 104, 111 (D.C. Cir. 2022) (quoting 15 U.S.C. § 717r(b)).  That is, "the party seeking judicial review must have raised in its rehearing request before the Commission each objection it puts before the reviewing court." *Big Bend Conservation All. v. FERC*, 896 F.3d 418, 421 (D.C. Cir. 2018) (citation omitted).  This jurisdictional exhaustion requirement ensures that the Commission has the opportunity to clarify its reasoning and directly respond to any objections before judicial review in the court of appeals. *See Delaware Riverkeeper*, 45 F.4th at 111.  And "[n]either FERC nor this court

14

has authority to waive th[is] statutory requirement[ ]." *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 876 F.2d 109, 113 (D.C. Cir. 1989).

Petitioners did not argue in their rehearing request that the Commission did not clearly apply its standard. They instead argued that "[t]he record does not support FERC's conclusion that [Cheniere] demonstrated good cause for a delay." JA074 [R39, Rehearing Request at 2]. In making that argument, Petitioners apparently had no trouble discerning FERC's standard. Before the Commission, they argued that the "prevented" standard "is the appropriate standard, and FERC does not purport to depart from it here: FERC claims that good cause exists where an applicant was 'prevented' from meeting a deadline, and that [Cheniere] was 'prevented' from doing so here.' " JA078 [*Id.* at 6] (citations omitted). Petitioners' argument—at that point—was that "FERC's conclusion that this standard was satisfied here was arbitrary." *Id.* Petitioners' embrace below of the same standard they now argue is too ambiguous to discern "was not enough to 'alert the Commission' to the position petitioners now take." *Delaware Riverkeeper*, 45 F.4th at 112. This Court lacks jurisdiction over Petitioners' late-breaking change in strategy. *See id.*

## II.   THE COMMISSION'S DECISION WAS ADEQUATELY EXPLAINED AND SUPPORTED BY SUBSTANTIAL EVIDENCE.

On the merits, the Commission concluded that one of the worst pandemics in American history and its concomitant effects on the global LNG market qualified

as "good cause" to warrant extending Cheniere's in-service deadline by two-and-a-half years.  Petitioners concede that this conclusion could very well be right.  Pet'rs Br. 21, 22-23.  But they perfunctorily complain that the Commission failed to adequately explain itself and did not have sufficient evidence to support its conclusion.  Pet'rs Br. 17-25.  Petitioners' underdeveloped arguments—which never engage with the explanation the Commission gave—are meritless.

**A.**  The APA's reasonable-explanation requirement is not "particularly demanding."  *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). Agencies must merely mark a "path" that can be "reasonably . . . discerned." *Epsilon Elecs.*, 857 F.3d at 924 (citation omitted).  Under this standard, this Court routinely upholds agency decisions "of less than ideal clarity."  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974); *see, e.g.*, *Xcel Energy Servs., Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022) (upholding FERC order despite noting that "[t]he Commission could have explained itself more clearly").

Here, however, the Commission's path is visible "without difficulty."  *Xcel Energy*, 41 F.4th at 557.  The Commission began by setting out its standard for extensions.  *See* JA004-005 [R34, Extension Order P 8].  Under the Commission's regulations, a certificate's in-service deadline can be extended for "good cause." 18 C.F.R. § 385.2008(a).  And under the Commission's longstanding precedent,

"[g]ood cause can be shown by a project sponsor demonstrating that it made good faith efforts to meet its deadline but encountered circumstances that prevented it from doing so."  JA004-005 & n.20 [*Id.* P 8 & n.20] (citing *Adelphia Gateway, LLC*, 178 FERC ¶ 61,030, at P 15); *see also Delfin LNG LLC*, 178 FERC ¶ 61,031, at P 10 (2022); *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, 62,133 (2012). Even Petitioners agree that the Commission "appropriately summarize[d] [its] pre-pandemic decisions."  Pet'rs Br. 19.

The Commission then explained how Cheniere met this standard.  On the good-faith prong, the Commission noted that Cheniere had "made progress in preparing the site for the Stage 3 LNG Project facilities for eventual construction and continues to make efforts to secure long-term contracts."  JA007 [R34, Extension Order P 13].  This evidenced Cheniere's "continued interest in the project" and showed that Cheniere had "made a good faith effort to meet the 2024 deadline."  *Id.*  Petitioners acknowledge (at 20) that the Commission found good-faith efforts based on Cheniere's site-preparation and contract-solicitation activities, and they never disagree with the Commission's conclusion that Cheniere had made good-faith efforts to complete Stage 3.

As for the circumstances preventing Cheniere from meeting its deadline, the Commission pointed to the "unforeseeable impacts of the COVID-19 pandemic." JA007 [R34, Extension Order P 13].  Petitioners nitpick this finding, faulting the

Commission for not explicitly "stat[ing] that Cheniere was prevented from meeting the deadline" or offering extensive reasoning "to support an implicit conclusion that the pandemic prevented Cheniere from meeting the deadline."  Pet'rs Br. 20, 21.  But the Commission was "not required to author an essay" explaining its decision.  *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C. Cir. 1999) (citation omitted).  "It suffices, in the usual case, that [this Court] can discern the why and wherefore."  *Id.* (citation omitted).

This Court can easily do that here.  Read in context, the phrase "unforeseeable impacts of the COVID-19 pandemic" refers to the pandemic-caused "logistical impacts" and "adverse economic" conditions that prevented Cheniere "from making a timely investment decision on the project to meet construction deadlines."  JA005 [R34, Extension Order P 10]; *see also* FERC Br. 26-27.  After all, those are the only pandemic-related "impacts" mentioned in the order.  *See* JA006 [R34, Extension Order P 11] (mentioning again "the COVID-19 pandemic's impact on LNG market conditions").  Moreover, the Commission cited two previous orders concluding that "good cause exists . . . where a certificate holder requested more time to secure contracts."  JA006-007 & n.32 [*Id.* P 12 & n.32] (citing *Delfin LNG*, 178 FERC ¶ 61,031, at P 22 n.61, and *Letter Order to LA Storage, LLC*, Docket No. CP08-454-000 (issued Nov. 14, 2013)).  These orders establish that "changing market conditions and difficulty in finding customers"—

18

including in the wake of the pandemic's effects on the LNG market—are circumstances that can prevent a certificate holder from meeting a construction deadline. *Delfin LNG*, 178 FERC ¶ 61,031, at P 22 n.61 (discussing *LA Storage*).

The Commission's rationale is thus crystal clear:  The pandemic's impacts on the global LNG market, which prevented Cheniere from acquiring customers and thus reaching a final investment decision, were circumstances preventing Cheniere from meeting the original deadline.  *See Epsilon Elecs.*, 857 F.3d at 924 (upholding agency decision that "clearly indicate[d]" its position).  That the Commission did not map its reasoning onto its standard as clearly as Petitioners would have liked does not make its explanation arbitrary.  After all, "[a]n agency's decision need not be 'a model of analytic precision to survive a challenge.'" *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (citation omitted); *see also, e.g.*, *Friedman v. FAA*, 890 F.3d 1092, 1099 (D.C. Cir. 2018) (upholding decision despite noting that it "would have been helpful for the [agency] to have elaborated on" a certain point); *Casino Airlines, Inc. v. NTSB*, 439 F.3d 715, 718 (D.C. Cir. 2006) (upholding agency decision despite concluding that "[t]he Board's language could have been more direct").

In short, the record and extension order belie Petitioners' half-hearted protests and show that the Commission engaged in "reasoned decisionmaking." *Farrell v. Blinken*, 4 F.4th 124, 137 (D.C. Cir. 2021).  The Commission articulated

its standard, applied the facts to that standard, and explained why Petitioners'

objections were meritless.  Its order is "understandable," *SEC v. Chenery Corp.*,

332 U.S. 194, 196 (1947); "logical and rational," *Allentown Mack Sales & Serv.,*

*Inc. v. NLRB*, 522 U.S. 359, 374 (1998); and sets out enough markers for this Court

to understand FERC's thought process, *see Epsilon Elecs.*, 857 F.3d at 924.  The

Commission accordingly "reasonably explained" itself.  *Prometheus Radio*

*Project*, 141 S. Ct. at 1158.

      The few cases Petitioners cite confirm as much.  In *Select Specialty*

*Hospital-Bloomington, Inc. v. Burwell*, 757 F.3d 308, 314 (D.C. Cir. 2014), this

Court could not "discern precisely . . . the Board's decisional standard."  *Cf.* Pet'rs

Br. 19, 21.  At most, the Court could identify "an amorphous rule" that made little

sense.  757 F.3d at 314.  *Coburn*, 679 F.3d at 934, confronted a similarly

"incomprehensible" agency decision that "lack[ed] coherence."  *Cf.* Pet'rs Br. 21.

*Farrell*, 4 F.4th at 139, concerned an agency that had "communicated multiple

inconsistent requirements" to the plaintiff—contradictory requirements that made

"it impossible" for the plaintiff to determine what he had to do.  *Cf.* Pet'rs Br. 25.

And *Mid-Tex Electric Cooperative, Inc. v. FERC*, 773 F.2d 327, 359 (D.C. Cir.

1985), concerned a Commission order that failed to "offer even a hint" as to how

to meet the relevant standard.  *Cf.* Pet'rs Br. 24.

These cases stand in stark contrast to this one.  The Commission articulated the good-faith standard.  JA004-005 [R34, Extension Order P 8].  It then explained how Cheniere met that standard, including by citing agency precedent.  JA006-007 [*Id.* PP 11-13].  That is far more than a "hint."  *Mid-Tex Elec. Coop.*, 773 F.3d at 359.  Moreover, the order is internally consistent, coherent, and comprehensible.  It is miles from "unintelligible," *Select Specialty-Hospital*, 757 F.3d at 314; "incomprehensible," *Coburn*, 679 F.3d at 934; or "haphazard," *Farrell*, 4 F.4th at 139.  The Commission reasonably and adequately explained itself.

**B.**  It ultimately turns out that Petitioners' disagreement is not with the Commission's explanation, but with its standard.  Pointing to a few of the Commission's cited pre-pandemic cases, Petitioners contend that the Commission can grant an extension on a certificate only if it is practically or legally impossible for a certificate holder to complete a project in a timely fashion.  Pet'rs Br. 19-20 (citing *Constitution Pipeline Co.*, 165 FERC ¶ 61,081 (2018), and *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149).

The Commission explains why Petitioners misread those cases; under Commission precedent, impossibility has never been the standard.  *See* FERC Br. 29-30.  But even with Petitioners' gloss, the pre-pandemic cases do not tell the whole story.  The Commission considers good cause "on a case-by-case basis,"

21

*Adelphia Gateway*, 178 FERC ¶ 61,030, at P 15, and neither of Petitioners' cases concerned the COVID-19 pandemic.

The more-relevant cases are *LA Storage* and *Delfin LNG*, both of which the Commission cited and both of which make clear that unforeseen commercial difficulties can be sufficient to prevent a certificate holder whose project remains commercially viable from meeting its Commission-set deadline.  JA006-007 & n.32 [R34, Extension Order P 12 & n.32].  In *LA Storage*, a pre-pandemic-era case, the Commission "grant[ed] a certificate holder a second extension of time due to changing market conditions and difficulty in finding customers."  *Delfin LNG*, 178 FERC ¶ 61,031, at P 22 n.61 (summarizing *LA Storage*).  And in the pandemic-era *Delfin LNG*, the Commission recognized that the difficulty a pipeline faced in "enter[ing] into long-term LNG . . . contracts" with "potential buyers" in light of the pandemic's effect on the LNG market constituted an unforeseeable circumstance preventing the pipeline from meeting its scheduled in-service date. *Id.* at P 21.  The Commission's pandemic-era good-cause precedent is extensive and consistent.  *See, e.g.*, *Midship Pipeline Co., LLC*, 173 FERC ¶ 61,255, 62,712 (2020) (granting extension because certificate holder "has been unable to fully commercialize its project," in part because of the COVID-19 pandemic); *Magnolia LNG, LLC*, Docket Nos. CP14-347-000, CP19-19-000, and CP14-511-

000 (Oct. 7, 2020) (delegated order) (granting extension in light of global market conditions impacting applicants' ability to secure contracts).[1]

Petitioners address only *Delfin LNG*, and only then in a footnote, contending that the case "does not fill any of the gaps" in the Commission's extension order. Pet'rs Br. 19-20 n.9. Petitioners are mistaken; *Delfin LNG* amply explains why the Commission's extension for Cheniere was justified. *Delfin LNG* demonstrates that FERC's good-cause standard—including the "prevention" gloss that the Commission has put on it in in-service-deadline cases—is more capacious than Petitioners contend. A pipeline can show it has good cause for an extension without showing it is impossible to complete the project as scheduled; after all, a pipeline need only make good-faith efforts, not extraordinary ones. *See Delfin LNG*, 178 FERC ¶ 61,031, at P 23 (granting extension because the pipeline "continues to make efforts to secure long-term offtake contracts with prospective customers").

That makes sense. "Good cause" is a modest burden, one that is laced throughout the Federal Rules of Appellate and Civil Procedure. Parties must show

---

[1] The Commission has continued to conclude that the pandemic's effect on the global LNG market warrants in-service-deadline extensions. *See Trunkline Gas Co.*, 179 FERC ¶ 61,086, at P 21 (2022); *Freeport LNG Dev., L.P.*, 181 FERC ¶ 61,023, at P 12 (2022); *Port Arthur LNG, LLC*, 181 FERC ¶ 61,024, at P 9 (2022); *Rio Grande LNG, LLC*, 181 FERC ¶ 61,032, at P 13 (2022).

good cause for this Court to extend the briefing schedule or file a reply brief later than seven days before argument.  *See* Fed. R. App. P. 26(b), 28.1(f)(4), 31(a).  At the district-court level, parties must show good cause to extend the time to serve the defendant, Fed. R. Civ. P. 4(m), and to extend most other deadlines, Fed. R. Civ. P. 6(b)(1).  Good cause also governs whether district courts can delay issuing the scheduling order after a certain point.  *See* Fed. R. Civ. P. 16(b)(2).  In these contexts, good cause does not require an attorney to prove that it is absolutely impossible to meet a deadline.  It is enough that the attorney's other commitments prevented meeting the deadline despite making good-faith efforts to do so.  So too at the Commission.

Retreating, Petitioners argue that if the good-cause standard captures both impossibility and less-extreme circumstances, the standard is fatally "ambiguous[ ]."  Pet'rs Br. 24.  Petitioners mistake breadth for vagueness.  And as Article III courts well know, good cause's breadth does not make it unadministrable.  At the Commission, good cause exists *both* when it is impossible for a certificate holder to meet the original deadline *and* in the less-extreme circumstance of when the certificate holder encounters unforeseen difficulties in fully commercializing the project.  This wide spectrum reflects that the projects before the Commission are often large, complicated, and deeply enmeshed with the global economy—and can accordingly be delayed by any number of unforeseeable

circumstances.  That is why the Commission considers good cause "on a case-by-case basis."  *Adelphia Gateway*, 178 FERC ¶ 61,030, at P 15.  Again, in the judicial system, "good cause" governs a wide array of determinations in both the courts of appeals and district courts.[2]  Yet Petitioners presumably do not believe that "good cause" is too ambiguous a standard for judges to apply, despite its many facets.

To be sure, the Commission noted that "an extension of time to construct a project *may* be denied where the record indicates that a project is no longer commercially viable."  JA006 [R34, Extension Order P 11] (emphasis added).  The Commission denies extension orders in these circumstances for the same reason it sets deadlines in the first place: to ensure that "the information supporting" the

---

[2] *See* Fed. R. App. P. 41(d)(2) (staying mandate pending the filing of a petition of certiorari); Fed. R. Civ. P. 4(d)(2) (failing to waive service); Fed. R. Civ. P. 5(d)(3) (allowing nonelectronic filing); Fed. R. Civ. P. 5.2(e) (entering protective order); Fed. R. Civ. P. 6(c)(1)(C) (seeking different time for hearing); Fed. R. Civ. P. 16(b)(4) (modifying scheduling order); Fed. R. Civ. P. 26(a)(3), (b)(2)(B), (c)(2) (various discovery procedures); Fed. R. Civ. P. 32(b)(4) (excusing waiver for certain objection); Fed. R. Civ. P. 32(c) (form of deposition); Fed. R. Civ. P. 35(a)(2) (order for physical or mental examination); Fed. R. Civ. P. 43(a) (permitting testimony from different location); Fed. R. Civ. P. 44(a)(2)(C) (proving a foreign record); Fed. R. Civ. P. 45(e)(1)(D) (ordering electronic discovery); Fed. R. Civ. P. 47(c) (excusing a juror); Fed. R. Civ. P. 55(c) (setting aside an entry for default); Fed. R. Civ. P. 65(b)(2) (extending temporary restraining order); Fed. R. Civ. P. 71.1(h)(2)(C) (objecting to prospective commissioners); Fed. R. Civ. P. 73(b)(3) (vacating referral to magistrate judge); Fed. R. Civ. P. 77(c)(2) (rescinding clerk's authority to issue certain orders).

Commission's "public convenience and necessity" does not grow "stale with the passage of time." *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, at P 8.  But as the Commission explained, "the record in this case does not support" a finding that the Stage 3 project is no longer commercially viable.  JA006 [R34, Extension Order P 11].  The record showed instead that Cheniere "continue[d] to pursue the project and remain[ed] optimistic that the COVID-19 pandemic's impact on LNG market conditions is waning." *Id.*  Indeed, the Commission found that "there has been evidence of an increase in demand for LNG, demonstrated, for example, by the recently announced partnership with the European Union seeking to seeking to ensure additional LNG volumes for the E.U. import market of at least 15 billion cubic meters in 2022, with expectations of increased demand going forward." *Id.*  But Petitioners never even mention this finding.

**C.**  Petitioners also argue that the Commission did not have enough facts to conclude that the pandemic prevented Cheniere from meeting the original deadline.  Pet'rs Br. 21-22.  But Petitioners' substantial-evidence argument fails largely because it seeks evidence sufficient to satisfy the wrong standard.  Cheniere did not have to show "that it was unable to procure material that it needed" or prove that "backers would not release funds until Cheniere had received contracts for sale of a certain percentage of the Stage 3 project's output."  Pet'rs Br. 22-23.  It was instead enough for Cheniere to explain that the pandemic's effects on global

demand for LNG prevented it from making a timely final investment decision. *See* JA026-027 [R1, Extension Letter at 1-2].

In any event, that the COVID-19 pandemic disrupted the global LNG market is so undisputed—and so within the Commission's wheelhouse—that not much more is needed. The Commission has an intimate understanding of the energy market. *Cf. Constellation Energy Commodities Grp., Inc. v. FERC*, 457 F.3d 14, 24 (D.C. Cir. 2006) ("[I]t is within the scope of the agency's expertise to make . . . a prediction about the market it regulates.") (citation omitted). The Commission knew that Stage 3 would be "export[ing] natural gas to foreign countries." JA117 [Authorization Order P 18]. And Commission precedent provides that market-related delays in reaching full commercialization can be unforeseeable circumstances that prevent a certificate holder from meeting its deadline. *See supra* pp. 21-22. In light of FERC's comprehensive knowledge of the Stage 3 project and the energy market, Cheniere's application did not need to be overly detailed to provide a factual basis for the Commission's decision.

Finally, to the extent Petitioners contend (at 22-23) that the Commission's decision is unsupported because some of the facts found come from Cheniere's application, that argument is meritless. Under the Commission's regulations, an applicant's signed filing is a representation that "[t]he contents are true as stated, to the best knowledge and belief of the signer," 18 C.F.R. § 385.2005(a)(2)(ii)

27

(2022), and "[t]he facts alleged in any filing need not be verified" unless otherwise required by statute, rule, or order, *id.* § 385.2005(b)(1). Cheniere's representations were therefore adequate for the Commission to find those representations as facts. *See, e.g.*, *Columbia Gas Transmission, LLC*, 170 FERC ¶ 61,246, at P 14 n.32 (2020) (finding that there was "no basis in the record to question" an applicant's statements, citing § 385.2005, and basing a finding of market need on those statements); *Equitrans, L.P.*, 147 FERC ¶ 61,032, at P 20 n.14 (2014) (rejecting complaint that applicant's surveys were "biased" because of § 385.2005's requirement that all filings be true to the best knowledge of the signer).

\*     \*     \*

As Petitioners' meager brief illustrates, this case is unusually straightforward. Bottom line: The Commission reasonably explained why, under its longstanding good-cause standard, Stage 3's in-service deadline should be extended by two-and-a-half years to account for the COVID-19 pandemic.

## CONCLUSION

For the foregoing reasons and those in the Commission's brief, this Court should deny the petitions for review.

Respectfully submitted,

/s/ Catherine E. Stetson

| | |
|---|---|
| JANNA ROMAINE CHESNO | CATHERINE E. STETSON |
| CHENIERE ENERGY, INC. | SEAN MAROTTA |
| 701 8th Street, N.W. | MICHAEL J. WEST |
| Suite 810 | HOGAN LOVELLS US LLP |
| Washington, D.C. 20001 | 555 Thirteenth Street, N.W. |
| (202) 442-3050 | Washington, D.C. 20004 |
| | (202) 637-5600 |
| | cate.stetson@hoganlovells.com |

April 11, 2023

*Counsel for Corpus Christi Liquefaction, LLC, and*
*Cheniere Corpus Christi Pipeline, L.P.*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,123 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.


                                        /s/ Catherine E. Stetson
                                        Catherine E. Stetson

## CERTIFICATE OF SERVICE

I certify that on April 11, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson